# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**GREENWAY NUTRIENTS, INC.,** a Colorado corporation,

        Plaintiff,

    v.

**DAVID SELAKOVIC**, an individual; **STEVEN BLACKBURN**, an individual; **FULFILLMENT SOLUTIONS SERVICES, INC.,** a Florida corporation; **NEW EPIC MEDIA, LLC**, a Florida limited liability company; **VEGALAB S.A.**, a Swiss company; **VEGALAB LLC**, a Delaware limited liability company; **VEGALAB INC., F/K/A HPC ACQUISITIONS, INC.,** a Nevada corporation; **THE RYAN LAW GROUP, LLC**, a Florida limited liability company; **JAMES D. RYAN**, an individual; **MICHAEL J. RYAN**, an individual; **SUPREME GROWERS LLC**, a Tennessee limited liability company; **ECOWIN CO., LTD.**, a South Korean company; and **DOE ENTITIES 1-10**, inclusive,

        Defendants.

Case No. _____

<u>**JURY TRIAL DEMANDED PURSUANT TO RULE 38 OF THE FEDERAL RULES OF CIVIL PROCEDURE**</u>

## <u>COMPLAINT</u>

    Plaintiff, Greenway Nutrients, brings this Complaint against David Selakovic; Steven Blackburn; Fulfillment Solutions Services, Inc.; New Epic Media, LLC;

1

Vegalab S.A.; Vegalab LLC; Vegalab Inc., formerly known as HPC Acquisitions, Inc.; The Ryan Law Group, LLC; James D. Ryan; Michael J. Ryan; Supreme Growers LLC; Ecowin Co., Ltd.; and Doe Entities 1 through 10, inclusive; and alleges as follows.

## NATURE OF THE ACTION

1.      This lawsuit seeks damages for the tortious and unethical usurpation of Greenway Nutrients, Inc.'s ("Greenway") lucrative business opportunities by the Defendants, and for the gross and flagrant breach of fiduciary duty by Greenway's attorneys, Michael J. Ryan, James D. Ryan, and The Ryan Law Group, LLC. Greenway seeks all actual and compensatory damages that it has suffered, as well as punitive/exemplary damages for gross and flagrant conduct by the Defendants, whose misconduct was engaged in with callous disregard for the interests of Greenway, in an amount sufficient to keep such wrongful conduct from being repeated.

2.      Greenway is a manufacturer and distributor of plant-based fungicides and pesticides, and is the holder of a registered trademark in the name "Greenway Nutrients."  In 2011, Greenway's attorneys, Michael J. Ryan and James D. Ryan of The Ryan Law Group, LLC (the "Ryan Firm") introduced Greenway's principal, Gustavo Escamilla, to individual Defendants Steven Blackburn ("Blackburn") and David Selakovic ("Selakovic").  Greenway established a relationship with Selakovic, Blackburn, and various business entities associated with Blackburn and/or Selakovic.

3.      Soon after, Blackburn and Selakovic improperly seized Greenway's inventory, and sold it as a counterfeit Greenway product bearing Greenway's trademarked name, without authorization and at deeply discounted prices.

4.      Blackburn and Selakovic then went behind Greenway's back to one of its primary suppliers, Ecowin Co., Ltd. ("Ecowin"), and convinced Ecowin to breach its contract with Greenway in favor of using Selakovic's company Vegalab S.A. as a distributor instead.  Greenway's business was grievously injured.

5.     Worse yet, Blackburn and Selakovic did so with the connivance of the Ryan Firm, along with James and Michael Ryan, who provided closely-guarded information on Greenway's suppliers to Selakovic in contravention of their duties as Greenway's attorneys.  The Ryan Firm now represents Selakovic.

6.     Greenway now seeks damages for breach of contract, trademark infringement, and other wrongful acts by Blackburn, Selakovic, their various shell companies, the Ryan Firm, its attorneys, and Ecowin.

# I.     PARTIES, JURISDICTION AND VENUE

## NATURE AND CITIZENSHIP OF THE PARTIES

7.     Plaintiff Greenway is a Colorado corporation with its primary place of business in Los Angeles, California.

8.     Defendant Steven Blackburn is an individual residing in Palm Beach Gardens, Florida.

9.     Defendant David Selakovic is a citizen and resident of Singapore.

10.     Defendant Fulfillment Solution Services, LLC ("FSS") was a Florida limited liability company with its primary place of business in Palm Beach Gardens, Florida.  According to the website of the Florida Division of Corporations, FSS was voluntarily dissolved on January 12, 2017.  Greenway was not notified of this dissolution.  Upon information and belief, FSS' only member at all relevant times was Selakovic.

11.     Defendant New Epic Media, LLC ("New Epic") was a Florida limited liability company with its primary place of business in Palm Beach Gardens, Florida.  According to the website of the Florida Division of Corporations, New Epic was administratively dissolved on September 23, 2016.  Greenway was not notified of this dissolution.  Upon information and belief, New Epic's only member at all relevant times was Selakovic.

12.     Defendant Vegalab S.A. is a Swiss company with its primary place of business in Geneva, Switzerland.

13.     Defendant Vegalab LLC is a Delaware limited liability company with its primary place of business in North Palm Beach, Florida.  Upon information and belief, Vegalab LLC's only member at all relevant times was Selakovic.

14.     Defendant Vegalab, Inc., formerly known as HPC Acquisitions, Inc., is a publicly-traded Nevada corporation with its primary place of business in North Palm Beach, Florida.  HPC Acquisitions, Inc. changed its name to Vegalab, Inc. in December 2017.

15.     Defendant Michael J. Ryan is an individual residing in North Palm Beach, Florida.

16.     Defendant James D. Ryan is an individual residing in North Palm Beach, Florida.

17.     Defendant The Ryan Law Group, LLC is a Florida limited liability company with its primary place of business in North Palm Beach, Florida and engaged in the practice of law in the state of Florida.

18.     Defendant Supreme Growers, LLC ("Supreme") is a Tennessee limited liability company with its principal place of business in Tennessee.  According to the website of the Tennessee Secretary of State, Supreme Growers LLC was administratively dissolved on August 6, 2016.  Greenway was not notified of this dissolution.  Upon information and belief, the sole member of Supreme at all relevant times was Tony Kornrumpf, an individual residing in Tennessee.  Upon information and belief, at all relevant times Selakovic has been an officer of Supreme.

19.     Greenway is presently unaware of the true names of the Defendants identified in this Complaint under the fictitious names Doe Entities 1-10.  On information and belief, Doe Entities 1 through 10 are legal entities by and through which Selakovic, Blackburn, FSS, New Epic, Vegalab S.A. and/or Vegalab LLC

perpetrated the wrongful seizure and sale of Greenway's inventory and unauthorized sales of such inventory bearing Greenway's trademarked name.

## JURISDICTION AND VENUE

20.     Jurisdiction for this action is proper in this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C.A § 1332.  The parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

21.     This Court also has subject matter jurisdiction over the Lanham Act claims in this lawsuit as codified in 15 U.S.C.A. § 1125(a), consistent with 28 U.S.C.A. §§ 1331, 1332, and 1367.  Subject matter jurisdiction over related common law and statutory claims is also provided pursuant to 28 U.S.C.A. §§ 1338 and 1367.

22.     Greenway is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over all of the Defendants who are party to this action, pursuant to Florida Statutes §§ 48.193(1)(a)(1), (2), (6), (7), and because: (1) they conduct and/or have conducted substantial business in this District; (2) they have taken actions that have given rise to the causes of actions that are contained in this Complaint, which actions took place in this Southern District of Florida; and/or (3) they have sufficient contacts within the State of Florida and within this judicial district to subject them to the Court's personal jurisdiction.  These contacts include but are not limited to the following, which statement of the Defendants' contacts Greenway makes on information and belief:

        a.      Blackburn is an individual residing in Palm Beach Gardens, Florida.

        b.      Selakovic has substantial contacts with Florida, including conducting substantial and not isolated business at all relevant times in Palm Beach County.

        c.      FSS was a Florida limited liability company with its principal place of business in Florida.  Upon information and belief, the only members

of FSS were Selakovic, a citizen of Singapore, and Blackburn, a citizen of Florida.

      d.    New Epic was a Florida limited liability company with its principal place of business in Florida. Upon information and belief, the only members of New Epic were Selakovic, a citizen of Singapore, and Blackburn, a citizen of Florida.

      e.    Vegalab S.A. has substantial contacts with Florida, including the sales of Ecowin and Greenway products giving rise to this action.

      f.    Vegalab LLC has its principal place of business in North Palm Beach, Florida, and is engaged in substantial business activities in Florida, including the sales of Greenway products described above.  Upon information and belief, the only members of Vegalab LLC were Selakovic, a citizen of Singapore, and Blackburn, a citizen of Florida.

      g.    Vegalab, Inc. has its principal place of business in North Palm Beach, Florida and is engaged in substantial business activities in Florida, including the sales of Ecowin products described above.

      h.    Michael J. Ryan is an individual residing in North Palm Beach, Florida and is engaged in the practice of law in Florida.

      i.    James D. Ryan is an individual residing in North Palm Beach, Florida and is engaged in the practice of law in Florida.

      j.    The Ryan Law Group, LLC has its principal place of business in North Palm Beach, Florida and is engaged in the practice of law in Florida.

      k.    Supreme Growers, LLC has substantial contacts with Florida, including the sales of Greenway products at issue in this action.

      l.    Ecowin is a South Korean company with substantial contacts with Florida. Ecowin products are regularly shipped to, distributed, and sold

in, Florida.  Further, Ecowin's agreement with Vegalab, Inc., which has its principal place of business in Florida, gives rise, in part, to this action.

23.     Venue is proper in this judicial district under 28 U.S.C.A. §§ 1391(b) and (c) because the acts and transactions alleged herein were made, conducted, or performed by the parties in this judicial district.  Several of the entity Defendants have their principal offices in this judicial district, and individual Defendant Blackburn has his residence in this judicial district.

<u>ALTER EGO ALLEGATIONS</u>

24.     Greenway is informed and believes and thereon alleges that FSS, New Epic, Vegalab S.A., Vegalab LLC, and Vegalab, Inc. (hereinafter occasionally collectively referred to as the "Alter Ego Entities"), and each of them, were at all relevant times the Alter Ego Entities of individual Defendant Selakovic.

25.     Greenway is informed and believes and thereon alleges that Selakovic at all relevant times dominated, influenced, and controlled each of the Alter Ego Entities and the officers thereof, as well as the business, property, and affairs of each of the Alter Ego Entities.

26.     Greenway is informed and believes and thereon alleges that at all relevant times there existed, and there now exists, a unity of interest and ownership between Selakovic and each of the Alter Ego Entities, such that the individuality and separateness of Selakovic and each of the Alter Ego Entities ceased.

27.     Greenway is informed and believes and thereon alleges that at all relevant times since the incorporation of each, each of the Alter Ego Entities was a mere shell which Selakovic used as a conduit for the conduct of his personal business, property, and affairs.

28.     Greenway is informed and believes and thereon alleges that at all relevant times, each of the Alter Ego Entities was created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by Selakovic whereby

the income, revenue, and profits of each of the Alter Ego Entities was diverted to himself.

29.     By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the Alter Ego Entities would, under the circumstances, sanction a fraud and promote injustice in that Greenway would be unable to realize any judgment in its favor.

## II.   FACTUAL ALLEGATIONS

### GREENWAY GOES INTO BUSINESS WITH SELAKOVIC AND BLACKBURN

30.     James D. Ryan, Michael J. Ryan, and The Ryan Law Firm, LLC, performed legal work for Greenway in 2010 and 2011, including but not limited to the preparation of a private placement memorandum to solicit investment in Greenway. During this period, James and Michael Ryan, as Greenway's attorneys, toured a Greenway facility in Colorado and were given access to the innermost information regarding Greenway's operations.

31.     James and Michael Ryan are brothers whose family has been personally acquainted with Mr. Escamilla for years.

32.     In or about February 2011, James and Michael Ryan introduced Mr. Escamilla, the principal of Greenway, to David Selakovic and Steven Blackburn for the first time.  Selakovic and Blackburn were involved in several businesses and offered various services to Greenway, including bottling, order fulfillment, and web design/marketing.

33.     In or about May 2011, Greenway contracted New Epic Media, LLC ("New Epic") to design and manage Greenway's website and internet marketing.

34.     Upon information and belief, at all relevant times before its dissolution, New Epic was owned by Selakovic, and managed by Selakovic and Blackburn.

35.     In connection with New Epic's marketing services for Greenway, New Epic executed a Non-Disclosure Agreement for Greenway Nutrients and No Spider

Mites (the "New Epic NDA"). A copy of the New Epic NDA is attached hereto as Exhibit 1.

36. In or about June 2011, Greenway contracted Fulfilment Solution Services, Inc. ("FSS"), to bottle and distribute certain of Greenway's products, including but not limited to No Spider Mites, an anti-pest spray for houseplants and crops.

37. Upon information and belief, at all relevant times before its dissolution, FSS was owned by Selakovic, and managed by Selakovic and Blackburn.

38. In connection with FSS' bottling and distribution services for Greenway, FSS also executed a Non-Disclosure Agreement for Greenway Nutrients and No Spider Mites (the "FSS NDA"). A copy of the FSS NDA is attached hereto as Exhibit 2.

39. The New Epic NDA and the FSS NDA contained substantially similar provisions. Specifically:

    a. The FSS NDA requires FSS, and the New Epic NDA requires New Epic, "to treat the Confidential Material which is furnished to it by [Greenway] prior to, on or after the date of this agreement, together with letters, memoranda, analyses, compilations, studies, business plans, financial projections and records and other documents or records (whether written, electronic, voice or any other form of media) prepared by the Receiving Party, its Representatives or others which contain or reflect or are generated from the Confidential Material, confidentially in accordance with the provisions of this agreement."

    b. Both the FSS NDA and the New Epic NDA define Confidential Material broadly to "include all information concerning [Greenway]." Each NDA goes on to enumerate several categories of information that fall within that broad definition, including, without limitation, "the identity of, and

information held by [Greenway] about its customers and prospects, including without limitation, contact information, financial dealings, and personal information"; "[Greenway's] vendors, sources and strategic partners, including, but not limited to identity, contact information, credit and history, transaction terms, decision makers, contracts, and financial and legal dealings"; and "information entrusted to [Greenway] by [Greenway] customers or other third parties."

      c.    The FSS NDA and New Epic NDA also require FSS and New Epic, respectively, to "use the Confidential Material solely for the purpose described above and that it and its Representatives will keep such information confidential and not use it for any other purpose, publish it or disclose it to any other party or assist any other party to obtain any benefit from the Confidential Material or to use the Confidential Material to solicit business from or to provide any services or products to any other party."

40.    In late 2011 and early 2012, James and Michael Ryan introduced Mr. Escamilla to Eric Hanson, a Minnesota-based investor who was part of a group that owned a publicly-traded shell company called HPC Acquisitions, Inc. Mr. Hanson, Mr. Escamilla, and James and Michael Ryan discussed the possibility that Greenway would merge into a publicly-traded shell like HPC Acquisitions, Inc. to create a publicly-traded company selling eco-friendly pesticides. This arrangement had been contemplated in the discussions between the Ryan Firm and Greenway concerning a private placement memorandum.

41.    Greenway owns, and has owned at all relevant times, all rights, title, and interest in and to the mark GREENWAY NUTRIENTS, including but not limited to a U.S. federal trademark registration, Reg. No. 4,007,591, class 1, covering the word mark GREENWAY NUTRIENTS. The registration covers a "House mark for a

full line of chemical and organic fertilizer mixes and compounds." This registration was issued to Greenway on August 2, 2011.

42. At all relevant times, each Defendant was aware of Greenway's registered trademark rights for the mark GREENWAY NUTRIENTS.

## SELAKOVIC AND BLACKBURN BETRAY GREENWAY'S TRUST AND STEAL ITS INVENTORY

43. Greenway's products begin with chemical concentrate shipped from overseas, which is then mixed with other elements according to a formula developed by Greenway to form a finished Greenway product.

44. Greenway, in addition to requiring its service providers such as FSS and New Epic to execute non-disclosure agreements, took steps to conceal the identities of its suppliers at all relevant times.

45. In 2011 and 2012, shipments of concentrate from Greenway's suppliers typically did not bear markings that would identify their source. On the few occasions when Greenway suspected that the packaging of such shipments might be labeled with its suppliers' names, Greenway would receive the shipments itself, alter the packaging or labeling so as to conceal the identities of its suppliers, and then send it along to service providers such as FSS, or Greenway's distributors.

46. Except where Greenway intercepted the shipments so as to keep the identities of its suppliers confidential, orders of concentrate would be delivered to FSS which would, in turn, fill orders by packing and shipping product. FSS was to collect a sales commission for doing so.

47. To effectuate FSS' bottling and distribution of Greenway products, Greenway and Selakovic agreed that Greenway would be permitted to use an American Express credit card in Selakovic's name for purchase orders of concentrate, with Greenway then to repay amounts charged to the card.

48.     In November 2011, Greenway purchased $50,000.00 worth of a concentrated chemical solution which is the key ingredient in Greenway's No Spider Mites product.  The purchase was from Spider Mite Control, a UK supplier, using Selakovic's American Express card.  Per the supplier's terms, Greenway was to pay half up front and half upon delivery.

49.     In January 2012, Selakovic revoked Greenway's authorization to use the FSS American Express card, citing an alleged $85,000.00 unpaid debt. The revocation of the credit card authorization for Greenway forced Greenway to immediately pay all $50,000.00 to No Spider Mites from its corporate funds.

50.     Selakovic's claim that Greenway had failed to pay its debt to FSS was false and pretextual.  Greenway had paid off its expenditures on Selakovic's American Express card to that point.

51.     Nevertheless, purporting to act on Selakovic's false claim that Greenway had failed to pay bills to FSS, Selakovic and Blackburn seized the concentrated product Greenway had ordered and which FSS had in its possession as part of its distribution activities for Greenway.  Selakovic and Blackburn then began selling that inventory on their own without Greenway's authorization or involvement.

52.     Selakovic and Blackburn's seizure, however, was not limited to the disputed shipment.  In addition to the $50,000.00 shipment of concentrate from Spider Mite Control subject to the billing dispute, Selakovic and Blackburn also seized additional concentrate which Greenway had previously purchased and which they had on hand for FSS' fulfillment services.

53.     Selakovic and Blackburn made product from this concentrate inventory without Greenway's input.  Greenway believes that Selakovic, Blackburn, and/or others working with them reverse-engineered Greenway's formula to create counterfeit Greenway products, and intends to uncover more information on this subject in discovery.

54. This counterfeit Greenway product, made from Greenway's concentrate, was initially sold under Greenway Nutrients labels that Selakovic and Blackburn had on hand as part of FSS' bottling and distribution activities. However, when Selakovic and Blackburn ran out of Greenway-branded labels on the Greenway products they had seized, they simply printed more, and Selakovic and Blackburn then affixed those counterfeit labels on counterfeit Greenway products.

55. Upon information and belief, the additional Greenway labels were copied from labels sent by Greenway to FSS for use in FSS' legitimate bottling and distribution.

56. The Greenway inventory that FSS seized and sold without authorization had a retail value of at least $500,000.00 when made into Greenway's No Spider Mites product.

57. Upon information and belief, Selakovic and Blackburn's sales of these Greenway-labeled products were made through a separate entity called Vegalab LLC. Vegalab LLC is the U.S. subsidiary of Vegalab S.A., a Swiss company of which Selakovic is President.

58. Upon information and belief, Selakovic and Blackburn's sales of Greenway-branded products through Vegalab LLC began in or about November 2012 and continued into at least October 2016.

59. As part of their scheme to sell Greenway's inventory and use Greenway's name without authorization, Blackburn, Selakovic, and/or Vegalab LLC used Confidential Material covered by the New Epic NDA and the FSS NDA, causing New Epic and FSS to breach those agreements.

60. This Confidential Material included, without limitation, Greenway's customer and distributor lists, and its product label designs.

61. As one example, in the course of their services for Greenway, FSS and New Epic came to possess information about the identities of Greenway's distributors,

and about Greenway's relationships with those distributors. Using that access, Blackburn contacted Sunlight Supply Inc., a distributor of Greenway's No Spider Mites and No Powdery Mildew products, and offered to sell a large inventory of purported Greenway product at a discount.

62.     Moreover, for at least a substantial portion of Vegalab LLC's sales of Greenway-branded products, Supreme was a conduit to Greenway's wholesale customer base.

63.     Selakovic and Blackburn used customer information gathered from New Epic's internet marketing activities and provided it to Supreme, which contacted those customers and offered purported Greenway product at a deep discount.

64.     Other entities may have served similar purposes to Supreme, *i.e.* a go-between for Vegalab LLC to sell counterfeit Greenway products at deep discounts, or otherwise assisted Selakovic, Blackburn, FSS, New Epic, Vegalab LLC, and/or Supreme in these purposes. These entities are represented herein as Doe Entities 1 through 10.

65.     Distributors and customers began contacting Mr. Escamilla from the fall of 2012 through the spring of 2013, communicating that Greenway products were being sold at extremely low prices, and that they were confused as to which products with a Greenway label actually had originated with Greenway. Greenway received communications to this effect as late as October 2016.

66.     Vegalab LLC sold FSS' misappropriated Greenway inventory through interstate channels, including but not limited to Amazon.com and eBay.

67.     One of Blackburn's employees during this period, David Heller, communicated to Mr. Escamilla that Blackburn had told his employees that unauthorized sales of Greenway's products and imitation of the Greenway label "did not matter since Greenway Nutrients was going to go out of business."

## SELAKOVIC AND BLACKBURN USURP GREENWAY'S ECOWIN DISTRIBUTORSHIP

68.    Not satisfied to illicitly sell off Greenway's inventory and use Greenway's name on counterfeited product without permission, Selakovic and Blackburn proceeded to induce one of Greenway's primary suppliers to breach its contract with Greenway.

69.    Ecowin Co., Ltd ("Ecowin") is a Korean manufacturer of natural biopesticides and other products.   Greenway entered into a U.S. distribution agreement with Ecowin titled "Initial Contract" on March 1, 2012 (the "Ecowin-Greenway Agreement").   The Ecowin-Greenway Agreement is attached hereto as Exhibit 3.   The Ecowin-Greenway Agreement was Ecowin's first foray into the U.S. market.

70.    The Ecowin-Greenway Agreement was drafted by Michael J. Ryan and James D. Ryan during their representation of Greenway.

71.    Under the Ecowin-Greenway Agreement, Greenway had exclusive rights to market Ecowin's indoor hydroponics products, and non-exclusive rights to distribute other Ecowin products, in the U.S.  Ecowin promised in the contract to "sell the products to Greenway Nutrients on their order and deliver within five weeks."

72.     The Ecowin-Greenway Agreement stated that it was "valid for one year. Both parties shall sign again after one year."

73.    Greenway purchased Ecowin products for resale several times between March 2012 and November 2012 pursuant to the terms of the Ecowin-Greenway Agreement.

74.    In or about November 2012, Ecowin personnel informed Mr. Escamilla that Ecowin would no longer be providing products to Greenway.

75.    When pressed, Ecowin personnel explained this by stating that Greenway's contact person, David Park, had left Ecowin, which was untrue.

76.    Ecowin failed to provide any satisfactory explanation for its discontinuation of shipments to Greenway despite Greenway's requests.

77.    Frustrated, Mr. Escamilla, posing as a purchaser, solicited information from Ecowin regarding its U.S. distribution in March 2013.   To Mr. Escamilla's surprise, David Park wrote back, informing him that Vegalab was Ecowin's new U.S. distribution partner for the products No More Mildew and No More Spores.

78.    Later, in August 2014, Vegalab S.A. purchased a controlling interest in Ecowin itself, unbeknownst to Greenway at the time.

79.    However, it was not until 2016 that Greenway discovered the full extent of the misconduct by Ecowin, Vegalab S.A., and Selakovic.

80.    On March 29, 2016, Vegalab, Inc. (at that time known as HPC Acquisitions, Inc.) filed its Form 10-K annual report with the S.E.C., disclosing its results for the fiscal year ending December 31, 2015.

81.    In that filing, HPC Acquisitions, Inc. disclosed that Selakovic had purchased 12,011,000 shares of the company.   This purchase was subject to Selakovic's agreement to assign to HPC Acquisitions, Inc. exclusive rights to distribute natural chemicals manufactured by Ecowin in the Western Hemisphere, certain state permits for the sale of Ecowin agrichemicals, and the trademark Vegalab.   HPC Acquisitions further indicated that its new plan of operation was essentially to promote Ecowin products to large agriculture businesses in North America under the brand name Vegalab.

82.    The HPC Acquisitions, Inc. 2015 10-K attached as an exhibit a Distribution Agreement between Ecowin and Vegalab, S.A., dated October 19, 2012. This Distribution Agreement was accompanied by another document granting Selakovic personally Vegalab, S.A.'s rights under the Distribution Agreement.   This grant of rights to Selakovic expressly contemplated that Selakovic would assign these rights to a corporate vehicle such as HPC Acquisitions, Inc.

83.     The Distribution Agreement between Ecowin and Vegalab, S.A., and the grant of rights to Selakovic, were attached to the HPC Acquisitions, Inc. 2015 10-K filed March 29, 2016 as Exhibit 10.4.  That Exhibit 10.4 is attached in its entirety as Exhibit 4 hereto.

84.     Greenway had no knowledge of the October 2012 Ecowin-Vegalab S.A. Distribution Agreement, or the grant of rights to Selakovic, before it was filed publicly in March 2016.  Specifically, Mr. Escamilla discovered the March 2016 public filing in mid-2017, and until that time was ignorant of its existence and terms.

85.     Essentially, this 2016 filing demonstrated that back in 2012, Vegalab S.A. had come to Ecowin distribution rights by displacing Greenway's binding contract with Ecowin.  Then, Vegalab S.A. had bought out Ecowin, and granted the distribution rights to Selakovic personally.  Selakovic in turn assigned those rights to his newly-purchased, publicly-traded vehicle, HPC Acquisitions, Inc. (now Defendant Vegalab, Inc.).

86.     Selakovic had created an international company at Greenway's expense. He had done so using HPC Acquisitions, Inc. – a publicly-traded vehicle previously owned by the group including Eric Hanson, with whom Greenway had discussed this type of merger in 2011 and 2012.

87.     The 2016 revelation of the Ecowin-Vegalab S.A. Distribution Agreement was the first time Greenway learned that Ecowin had granted Vegalab, S.A. rights to "over 100 eco-safe all natural agrochemical products."  The Distribution Agreement thus demonstrated to Greenway for the first time that Vegalab, S.A. had usurped Greenway's contractual right to distribute Ecowin's entire product line, beyond the No More Mildew and No More Spores products Greenway had attempted to order from Ecowin previously.

88.     The 2016 revelation of the Distribution Agreement was the first time Greenway learned that its contemplated arrangement to create a publicly-traded

17

company through merger with a shell like HPC Acquisitions, Inc. had also been delivered to Selakovic, rather than to Greenway.

89.     The 2016 revelation of the Distribution Agreement was also the first time Greenway learned that Vegalab, S.A. had been granted exclusive rights within a territory consisting of the entire world except Korea.  This showed Greenway that Vegalab, S.A. had secured exclusive distribution rights in Greenway's U.S. territory.

90.     Finally, the 2016 revelation of the Distribution Agreement was the first time Greenway learned that Vegalab, S.A. had granted to Selakovic personally all of its rights to distribute Ecowin products.  It was also the first time Greenway learned that Selakovic had in turn assigned those rights to Vegalab, Inc. (then known as HPC Acquisitions, Inc.).

91.     At the time that these contracts were signed in October 2012, Ecowin's distribution agreement with Greenway was still in effect.  Ecowin, Vegalab S.A., and Selakovic did not inform Greenway of these contracts, nor did any other party. Greenway only discovered them in 2017, when Mr. Escamilla first discovered the 2016 HPC Acquisitions, Inc. S.E.C. filing containing the Distribution Agreement.

92.     When Ecowin discontinued shipments to Greenway in November 2012, it breached its distribution agreement with Greenway, which obligated Ecowin to deliver products to Greenway on Greenway's order within five weeks.

93.     Vegalab S.A. and Selakovic induced Greenway to discontinue its relationship with Ecowin and, instead, sell products in the U.S. through Vegalab entities.  In doing so, Vegalab S.A. and Selakovic intentionally and unjustly interfered with Greenway's business relationship with Ecowin.  Upon information and belief, Vegalab S.A. and Selakovic did so with the assistance of James and Michael Ryan, and the Ryan Firm, as discussed further below.

94.     The loss of the distribution agreement with Ecowin cost Greenway at least five more months of a contractual and/or partnership relationship with Ecowin.

Ecowin ceased doing business with Greenway approximately seven months into a contract with a one-year term.

95.    Moreover, the loss of the distribution agreement with Ecowin cost Greenway an additional twelve months of partnership with Ecowin beyond the remaining five-month term of the distribution agreement.  That agreement expressly contemplated that the parties "shall" renew the contract for an additional one-year term.

96.    Until Ecowin stopped shipping Greenway products in November 2012, Greenway had been profitably selling Ecowin products.

97.    Greenway was injured by Ecowin's breach of its contract with Greenway, and Greenway was further injured by Selakovic's and Vegalab, Inc.'s intentional interference with Greenway's contractual relationship with Ecowin.

98.    The loss of a major supplier devastated Greenway. Despite its best efforts to find a replacement supplier, Greenway was unable to recover due to the significant monetary losses suffered by it as a result of Ecowin's breach of contract and as a result of Selakovic's and Vegalab, Inc.'s intentional interference with Greenway's contractual relationship with Ecowin.  Although Greenway continues to operate today, its commercial position was greatly reduced.

<u>GREENWAY SEEKS TO ENFORCE ITS RIGHTS</u>

99.    Greenway has not slept on its rights nor unduly delayed in enforcing its rights as against the Defendants.  To the contrary, Greenway has sought on multiple occasions to obtain redress for the Defendants' conduct.

100.    Greenway filed suit against Selakovic, Blackburn, Ecowin, Vegalab LLC, FSS and others in the U.S. District Court for the District of Colorado in April 2013 (Index No. 1:13-cv-01088-MSK-KMT).   The suit concerned Selakovic and Blackburn's seizure of Greenway's inventory, and Selakovic's interference with Greenway's relationship with Ecowin.  However, after Greenway's attorney withdrew

from the case due to a conflict of interest, the Colorado suit was discontinued without prejudice by the court in August 2015 due to Greenway's inability to obtain replacement counsel.

101.   Greenway also filed suit in this Court on June 7, 2017, against FSS, New Epic, Vegalab LLC, Blackburn, Selakovic and other defendants (Index No. 17-80714-CIV-MARRA) (the "2017 Action").  Again, the seizure of Greenway's inventory and its Ecowin relationship were at issue.  This case was dismissed *sua sponte* by Judge Kenneth A. Marra on October 31, 2017, for the same reason as the Colorado action: Greenway's difficulties in obtaining counsel.

102.   Defendants have been on notice since at least April 2013 that Greenway would continue to contest their use of Greenway's trademarks, their false designation of origin of goods, and their other tortious acts.

103.   No Defendant has been prejudiced by any delay by Greenway in filing this suit.

104.   No Defendant has failed to generate goodwill or otherwise changed its position based on any delay by Greenway.

## THE RYANS' INVOLVEMENT IS REVEALED

105.   In 2011 and 2012, Greenway was one of only a few U.S. companies in the business of environmentally-friendly plant-based pesticides and fungicides.  To maintain its competitive advantage, Greenway guarded its confidential material, especially the identities of its suppliers, closely.

106.   As discussed above, during 2011 and 2012, Greenway took steps to conceal the identities of its suppliers, including removing or altering packaging and labeling of shipments of concentrate headed to Selakovic, Blackburn, and/or their companies FSS and New Epic.

107.   The only individuals not directly affiliated with Greenway who had access to the names of Greenway's suppliers in 2011 and 2012 were James and Michael Ryan of the Ryan Firm.

108.   Michael J. Ryan originally drafted the Ecowin-Greenway Agreement, giving him and the Ryan Firm unique knowledge of the relationship between Ecowin and Greenway.

109.   In 2010 and 2011, as the Ryan Firm performed legal work for Greenway, Mr. Escamilla impressed on James and Michael Ryan the necessity of keeping the identity of Greenway's suppliers secret in the competitive business environment in which Greenway operated.  To that end, in addition to the Ryan Firm's duties as Greenway's attorneys not to disclose such sensitive information, at Mr. Escamilla's urging, Michael J. Ryan, on behalf of the Ryan Firm, also agreed to the terms of a non-disclosure agreement similar to the ones executed by FSS and New Epic.

110.   On July 7, 2017, James D. Ryan, acting for the Ryan Firm, entered an appearance on behalf of HPC Acquisitions, Inc. in Greenway's 2017 Action.

111.   Until this appearance was entered, Greenway did not know that James D. Ryan or the Ryan Firm represented HPC Acquisitions, Inc. (now Vegalab, Inc.).

112.    Moreover, it appears from public filings that the Ryan Firm (and James and Michael Ryan) are actively engaged in legal work for Vegalab, Inc.  According to the website of the Florida Division of Corporations, Michael J. Ryan is the registered agent for service in Florida for HPC Acquisitions, Inc., and the principal and mailing addresses for HPC Acquisitions, Inc. are the same as the address of the Ryan Firm (636 U.S. Highway 1, Suite 110, North Palm Beach, FL 33408).

113.   Until shortly after discovering that the Ryan Firm was representing Vegalab, Inc., Greenway did not know how Selakovic and Blackburn had come to discover that Ecowin was Greenway's supplier.  Greenway had never given Selakovic, Blackburn, or anyone working with them this information.

21

114.   Because (a) James and Michael Ryan of the Ryan Firm had knowledge of Greenway's relationship with Ecowin, derived from their attorney-client relationship with Greenway, including drafting the Ecowin-Greenway Agreement; (b) James and Michael Ryan of the Ryan Firm were the only individuals outside Greenway itself to have this knowledge; (c) David Selakovic came to know of Ecowin's existence, and the opportunity to supplant Greenway as Ecowin's U.S. partner; (d) Greenway did not give Selakovic this information, and took steps to conceal this information from Selakovic and his companies; and (e) the Ryan Firm, and James and Michael Ryan, introduced Greenway to Selakovic and are now attorneys for Selakovic's company Vegalab, Inc., the only reasonable inference is that James and/or Michael Ryan informed Selakovic that Ecowin was Greenway's supplier.

115.   Moreover, because (a) James and Michael Ryan of the Ryan Firm had knowledge of Greenway's discussions with Eric Hanson and other investors to create a publicly-traded firm through merger into a publicly-traded shell company such as HPC Acquisitions, Inc.; (b) James D. Ryan entered an appearance on behalf of HPC Acquisitions, Inc. in 2017; (c) as revealed in the 2016 Distribution Agreement, Selakovic purchased an interest in HPC Acquisitions, Inc. and used it as a vehicle to create a publicly traded eco-friendly pesticide company similar to Greenway's plan to do so; and (d) Michael J. Ryan is the registered agent for service in Florida for HPC Acquisitions, Inc., the only reasonable inference is that James and/or Michael Ryan provided Selakovic information on this opportunity which was originally tabbed for Greenway.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Ecowin Co., Ltd.)

116.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

117.   The Ecowin-Greenway Agreement gave Greenway the right to distribute Ecowin products in the United States for one year, and expressly contemplated that it would be re-executed for a second year's term.  This right was exclusive with respect to indoor hydroponics products.

118.   The Ecowin-Greenway Agreement stated that "ECOWIN will sell the products to GREENWAY NUTRIENTS on their order and deliver within FIVE weeks. If this term cannot be kept, GREENWAY NUTRIENTS is immediately to be informed."

119.   Ecowin's unjustified refusal to sell its products to Greenway after November 2012 breached the Ecowin-Greenway Agreement.

120.   Ecowin abandoned its contract with Greenway in order to form a distribution relationship with Selakovic and Vegalab S.A. instead.

121.   Greenway did not discover the extent and nature of Ecowin's breach of contract, *i.e.* that it had granted an exclusive distributorship to Vegalab S.A., worldwide except Korea, on over 100 of its products, until 2016.

122.   As a result of Ecowin's breach of the Ecowin-Greenway Agreement, Greenway suffered substantial harm.

123.   Greenway is informed and believes, and thereon alleges, that these actual and compensatory damages include the loss of substantial profits which Greenway would have earned in distributing Ecowin products but for Ecowin's breach.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against Ecowin Co., Ltd.)

124.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

23

125.    The Ecowin-Greenway Agreement was subject to the implied covenant of good faith and fair dealing.

126.    Ecowin acted in bad faith, and in violation of the covenant of good faith and fair dealing inherent in its contract with Greenway.  Ecowin secretly agreed with Ecowin's former business associate Selakovic to replace Greenway as Ecowin's U.S. distributor with entities controlled by Selakovic.

127.    Ecowin sought to deprive Greenway of the benefits of the Ecowin-Greenway Agreement by making this covert agreement with Selakovic and/or Blackburn.

128.    As a result of Ecowin's acts of bad faith, Greenway suffered substantial harm.

129.    Greenway is informed and believes, and thereon alleges, that these actual and compensatory damages include the loss of substantial profits which Greenway would have earned in distributing Ecowin products but for Ecowin's breach.

## THIRD CAUSE OF ACTION

### (Tortious Interference with Contract Against David Selakovic, Vegalab LLC, Vegalab S.A., Vegalab Inc., James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC)

130.    Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

131.    The Ecowin-Greenway Agreement represented an established, advantageous, contractual relationship.

132.    James D. Ryan and Michael J. Ryan informed Selakovic of the Ecowin-Greenway Agreement so that Selakovic could supplant Greenway as Ecowin's U.S. partner.

133.   Selakovic, on behalf of, and for the benefit of, his companies Vegalab Inc., Vegalab LLC and Vegalab S.A., intentionally induced Ecowin to breach its contract with Greenway Nutrients.  In particular, as Greenway discovered in 2016, Selakovic had proposed Vegalab, Inc. (then known as HPC Acquisitions, Inc.) in 2012 as a suitable U.S. distributor replacement of Greenway for Ecowin's products.

134.   In the act of, and immediately after, signing over U.S. distribution rights to Vegalab S.A., David Selakovic, and HPC Acquisitions, Ecowin breached its contract with Greenway as alleged above. Ecowin only breached its contract with Greenway as a result of Defendants' wrongful interference with the contractual relationship.

135.   As a result of James and Michael Ryan and the Ryan Firm's disclosures to Selakovic, and as a result of Selakovic, Vegalab Inc., Vegalab LLC, and Vegalab S.A.'s inducement of Ecowin's breach, and as a result of losing a major supplier and losing the right to market Ecowin products, including the exclusive right to market Ecowin indoor hydroponics products, Greenway suffered substantial harm.

136.   Greenway is informed and believes, and thereon alleges, that these actual and compensatory damages include the loss of substantial profits which Greenway would have earned in distributing Ecowin products but for Ecowin's breach.

137.   Greenway is also entitled to disgorgement of profits from Selakovic, Vegalab S.A., Vegalab LLC, and Vegalab Inc. as a result of their tortious interference with Greenway's contractual relationship with Ecowin.

138.   On the basis of the gross and flagrant conduct by the Defendants, whose misconduct was engaged in with callous disregard for the interests of Greenway, Greenway also seeks punitive/exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

## FOURTH CAUSE OF ACTION

**(Tortious Interference with Prospective Economic Advantage Against David Selakovic, Vegalab LLC, Vegalab Inc., James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC)**

139.    Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

140.    The Ecowin-Greenway Agreement expressly contemplated that "[b]oth parties shall sign again after one year."

141.    James D. Ryan and Michael J. Ryan informed Selakovic of the Ecowin-Greenway Agreement so that Selakovic could supplant Greenway as Ecowin's U.S. partner.

142.    Selakovic, on behalf of and for the benefit of, his companies Vegalab Inc., Vegalab LLC, and Vegalab S.A., intentionally induced Ecowin to abandon its relationship with Greenway.  This deprived Greenway not only of the remaining term of the Ecowin-Greenway Agreement, but also of the contemplated additional twelve-month term.

143.    Moreover, had Selakovic not sabotaged Greenway's relationship with Ecowin in 2012, Greenway would have continued to enjoy its lucrative distribution arrangement with Ecowin for years, even beyond the year after the Ecowin-Greenway Agreement.

144.    Ecowin only cut off its business relationship with Greenway as a result of Defendants' wrongful interference.

145.    James and Michael Ryan of the Ryan Firm also disclosed the opportunity to create a publicly-traded firm through merger with a publicly-traded shell like HPC Acquisitions, Inc.

146.    As a result of James and Michael Ryan and the Ryan Firm's disclosures to Selakovic, as a result of Selakovic, Vegalab Inc., Vegalab LLC and Vegalab S.A.'s

inducement of Ecowin's breach, and as a result of losing a major supplier and losing the right to market Ecowin products, including the exclusive right to market Ecowin indoor hydroponics products, Greenway suffered substantial harm.

147.   Greenway is informed and believes, and thereon alleges, that these actual and compensatory damages include the loss of substantial profits which Greenway would have earned in distributing Ecowin products but for Ecowin's breach.

148.   Greenway is also entitled to disgorgement of profits from Selakovic, Vegalab S.A., Vegalab LLC, and Vegalab Inc. as a result of their tortious interference with Greenway's prospective economic relations with Ecowin.

149.   On the basis of the gross and flagrant conduct by the Defendants, whose misconduct was engaged in with callous disregard for the interests of Greenway, Greenway also seeks punitive/exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duty Against James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC)

150.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

151.   James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC formed an attorney-client relationship with Greenway.

152.   In addition to their duty as attorneys not to disclose Greenway's confidential information, Michael D. Ryan, on behalf of The Ryan Law Group, LLC, also agreed to the terms of a non-disclosure agreement similar to the ones executed by FSS and New Epic.

153.   In their capacity as attorneys for Greenway, James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC owed a fiduciary duty of loyalty to Greenway.

27

154.    In the course of their attorney-client relationship with Greenway, James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC, learned confidential information concerning the identity of Greenway's suppliers.

155.    Greenway is informed and believes, and thereon alleges, that James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC disclosed confidential information concerning the identity of Greenway's suppliers, and the opportunity to create a publicly-traded firm through merger with HPC Acquisitions, Inc. (now known as Vegalab, Inc.) to David Selakovic.

156.    Greenway is informed and believes, and thereon alleges, that this disclosure enabled David Selakovic to interfere with Greenway's relationship with Ecowin.

157.    Greenway is informed and believes, and thereon alleges, that if James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC did not disclose confidential information concerning the identity of Greenway's suppliers to David Selakovic, Selakovic could not, and/or would not have induced Ecowin to abandon its relationship with Greenway.

158.    Greenway is informed and believes, and thereon alleges, that as a result of the disclosure of Greenway's confidential information to Selakovic by James D. Ryan, Michael J. Ryan, and The Ryan Law Group, LLC, Greenway suffered substantial actual and compensatory damages.

159.    Greenway is informed and believes, and thereon alleges, that these damages include the loss of substantial profits which Greenway would have earned in distributing Ecowin products but for Ecowin's breach.

160.    On the basis of the gross and flagrant conduct by the Defendants Michael J. Ryan, James D. Ryan, and The Ryan Law Group, LLC, Greenway also seeks punitive/exemplary damages against these three Defendants, whose misconduct was engaged in with callous disregard for the interests of their client,

28

Greenway, in an amount sufficient to keep such wrongful conduct from being repeated.

## SIXTH CAUSE OF ACTION

### (Breach of Contract Against David Selakovic and New Epic Media LLC)

161.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

162.   In connection with its services for Greenway, and in consideration for access to Greenway's confidential information, Blackburn, on behalf of New Epic, executed a Non-Disclosure Agreement for Greenway Nutrients and No Spider Mites (a copy of which is attached as Exhibit 1).

163.   As discussed and alleged above, New Epic is the alter ego of Selakovic.

164.   The New Epic NDA required New Epic to keep information concerning Greenway confidential, and stated that New Epic was not permitted to use it for any purpose other than discussions with Greenway, including to solicit business from or to provide any services or products to any other party.

165.   Selakovic and New Epic breached the New Epic NDA by disclosing Confidential Material, as that term is defined in the New Epic NDA, and by using Confidential Material to solicit business and provide services and products.

166.   In particular, without limitation, New Epic disclosed Greenway's customer, distributor, and supplier information to Vegalab LLC, FSS, Supreme Growers, and Doe Entities 1 through 10 for the sale of Greenway inventory that FSS seized.  New Epic also disclosed Greenway's label information to print Greenway labels for use in those sales.

167.   As a result of FSS' breach of the FSS NDA, Greenway suffered substantial harm.

168.   Greenway is informed and believes, and thereon alleges, that these damages also include the loss of at least $500,000.00 in retail revenue that Greenway

would have received if FSS had not used Confidential Material to facilitate the sale of seized Greenway inventory.


## SEVENTH CAUSE OF ACTION

### (Breach of Contract Against David Selakovic and Fulfillment Solutions Services LLC)

169.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

170.   In connection with its services for Greenway, and in consideration for access to Greenway's confidential information, Blackburn, on behalf of FSS, executed a Non-Disclosure Agreement for Greenway Nutrients and No Spider Mites (a copy of which is attached as Exhibit 2).

171.   As discussed and alleged above, FSS is the alter ego of Selakovic.

172.   The FSS NDA required FSS to keep information concerning Greenway confidential and stated that FSS was not permitted to use it for any purpose other than discussions with Greenway, including to solicit business from or to provide any services or products to any other party.

173.   Selakovic and FSS breached the FSS NDA by disclosing Confidential Material, as that term is defined in the FSS NDA, and by using Confidential Material to solicit business, and provide services and products.

174.   In particular, FSS used Greenway's customer, distributor, and supplier information to sell Greenway inventory that it seized.

175.   As a result of FSS' breach of the FSS NDA, Greenway suffered substantial harm.

176.   Greenway is informed and believes, and thereon alleges, that these damages also include the loss of at least $500,000.00 in retail revenue that Greenway

would have received if FSS had not used Confidential Material to facilitate the sale of seized Greenway inventory.

## EIGHTH CAUSE OF ACTION

**(Trademark Infringement Under 15 U.S.C.A. §§ 1114 and 1125(a) as to GREENWAY NUTRIENTS, Against David Selakovic, Steven Blackburn, Fulfillment Solutions Services LLC, Vegalab LLC, Vegalab S.A., Supreme Growers LLC, and Doe Entities 1 Through 10)**

177.    Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

178.    The actions of Selakovic, Blackburn, FSS, Vegalab LLC, and Vegalab S.A. described above constitute trademark infringement in violation of 15 U.S.C.A. §§ 1114 and 1125(a).

179.    By selling Greenway products under Greenway labels, including Greenway labels that they themselves printed, Selakovic, Blackburn, FSS, Vegalab LLC, and Vegalab S.A. intentionally used Greenway Nutrients' registered trademark to make a profit.

180.    Upon information and belief, in the course of selling products with infringing Greenway labels on them, Selakovic, Blackburn, FSS, Vegalab LLC, and Vegalab S.A. acted by and through, and/or had the aid and participation of additional entities, the identities of which are not presently known to Greenway.  Those entities are named herein as Doe Entities 1 through 10.

181.    This use created a high likelihood for confusion, as customers are likely to assume such a label means the product was sold by Greenway Nutrients.

182.    Certain of Greenway's distributors and customers have contacted Mr. Escamilla and informed him that they were, in fact, misled.

183.    As a result of the foregoing acts of trademark infringement, Greenway suffered substantial actual and compensatory harm.

184.   Greenway is entitled to an accounting of profits; actual damages; and/or a reasonable royalty.

185.   Further, Greenway is informed and believes, and on that basis alleges, that the actions of Selakovic, Blackburn, FSS, Vegalab LLC, Vegalab S.A., and Doe Entities 1 thorough 10 were undertaken willfully and with the intention to cause confusion, mistake, or deception, making this an exceptional case entitling Greenway to recover additional treble damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C.A. § 1117.

## NINTH CAUSE OF ACTION

### (False Designation of Origin Under 15 U.S.C.A. § 1125(a) Against David Selakovic, Steven Blackburn, Fulfillment Solutions Services LLC, Vegalab LLC, Vegalab S.A., Supreme Growers LLC, and Doe Entities 1 Through 10)

186.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

187.   The actions of Selakovic, Blackburn, FSS, Vegalab LLC, and Vegalab S.A. described above constitute false designation of origin in violation of 15 U.S.C.A § 1125(a).

188.   Specifically, without limitation, David Selakovic, Steven Blackburn, Vegalab S.A., Vegalab LLC, and Fulfillment Solutions Services LLC sold seized Greenway inventory in interstate commerce using Greenway Nutrients labels, indicating that the products originated with, were sponsored by, or were approved by Greenway, which was untrue.

189.   As a result of the foregoing acts of false designation of origin, Greenway suffered substantial harm, resulting in substantial actual and compensatory damages.

190.   Greenway is entitled to an accounting of profits; actual damages; and/or a reasonable royalty.

191.   Further, Greenway is informed and believes, and on that basis alleges, that the actions of Selakovic, Blackburn, FSS, Vegalab LLC, Vegalab S.A., and Doe Entities 1 through 10 were undertaken willfully and with the intention to cause confusion, mistake, or deception, making this an exceptional case entitling Greenway to recover additional treble damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C.A. § 1117.

## TENTH CAUSE OF ACTION

### (Unjust Enrichment Against All the Defendants Other than Michael J. Ryan, James D. Ryan, and The Ryan Law Group, LLC)

192.   Greenway repeats and realleges each and every allegation of Paragraphs 1 through 115 above as though fully set forth herein.

193.   The Defendants, other than Michael J. Ryan, James D. Ryan, and The Ryan Law Group, LLC, were unjustly enriched by their improper sales of Greenway's inventory and their interference with the Ecowin-Greenway Agreement.

194.   As a result of their sales of Greenway's inventory, Selakovic, Blackburn, FSS, New Epic, Vegalab LLC, Vegalab S.A., and Doe Entities 1 through 10 received the economic benefit of Greenway's inventory without providing compensation to Greenway.  This resulted in a windfall for those Defendants.

195.   Ecowin replaced Greenway with Selakovic, Vegalab S.A., and Vegalab Inc. as Ecowin's distribution partners, based upon the Defendants' knowledge of Greenway's relationship through their interactions with Greenway.  Consequently, those Defendants received the benefit of Greenway's effort and knowledge without providing compensation to Greenway.   This resulted in a windfall for those Defendants.

196.   Greenway is entitled to restitution for the unjust enrichment of the Defendants.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Greenway Nutrients, Inc., respectfully prays for relief as set forth below:

As to the First, Second, Third, Fourth, Fifth, Sixth, Seventh and Tenth Causes of Action:

1. Compensatory damages in an amount to be proven at trial.

2. For the Third, Fourth, and Fifth Causes of Action, on the basis of the gross and flagrant conduct by the Defendants as stated above in the Third, Fourth, and Fifth Causes of Action, Greenway also respectfully requests punitive/exemplary damages in an amount sufficient to keep such wrongful conduct from being repeated.

3. Pre-judgment and post-judgment interest on such monetary relief.

4. The costs incurred in bringing this suit, including reasonable attorneys' fees.

5. All other relief as the Court may deem reasonable.

As to the Eighth and Ninth Causes of Action:

1. Actual damages for the Defendants' trademark infringement and false designation of origin in an amount to be proven at trial.

2. Trebling of actual damages for the Defendants' trademark infringement and false designation of origin.

3. An accounting of profits resulting from the Defendants' trademark infringement and false designation of origin.

4. Pre-judgment and post-judgment interest on such monetary relief.

5. The costs incurred in bringing this suit, including reasonable attorneys' fees.

6. All other relief as the Court may deem reasonable.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Greenway demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

Dated this 17th day of August, 2018.                    Respectfully submitted,

                                                         s/ Ronald S. Nisonson
                                                        Ronald S. Nisonson, Esq.
                                                        Florida Bar No. 79405
                                                        rnisonson@warddamon.com
                                                        Ana P. Moretto, Esq.
                                                        Florida Bar No. 126347
                                                        amoretto@warddamon.com
                                                        **Ward Damon Posner**
                                                        **Pheterson & Bleau**
                                                        4420 Beacon Circle
                                                        West Palm Beach, Florida 33407-3281
                                                        Telephone:   (561) 842-3000
                                                        Facsimile:   (561) 842-3626

 s/ John M. Pierce                                       s/ Jonathan A. Sorkowitz
John M. Pierce, Esq.                                    Jonathan A. Sorkowitz, Esq.
(*pro hac vice* to be requested)                       (*pro hac vice* to be requested)
jpierce@piercebainbridge.com                           jsorkowitz@piercebainbridge.com
600 Wilshire Boulevard, Suite 500                      20 West 23rd Street, Fifth Floor
Los Angeles, California 90017                           New York, New York 10010
Telephone:   (213) 262-9333 x101                       Telephone:   (213) 262-9333 x115
Facsimile:   (213) 262-9333                            Facsimile:   (213) 262-9333
**Pierce Bainbridge Beck**                             **Pierce Bainbridge Beck**
**Price & Hecht LLP**                                  **Price & Hecht LLP**

*Attorneys for Plaintiff Greenway Nutrients, Inc.*