**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 18-cv-81104-BLOOM/Reinhart**

GREENWAY NUTRIENTS, INC.,

     Plaintiff,

v.

DAVID SELAKOVIC, *et al.*,

     Defendants.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendants Vegalab, LLC, Vegalab, Inc., the Ryan Law Group, LLC, James D. Ryan, Michael J. Ryan's Motion to Dismiss (the "Motion"), ECF No. [23]. Defendant Vegalab S.A. has joined in the Motion. *See* ECF No. [77].[1] Also before the Court is Defendants Steven Blackburn, Fulfillment Solutions Services, Inc., and New Epic Media, LLC's Joint Motion to Dismiss or Quash Substitute Service of Process ("Motion to Quash"), ECF No. [75]. The Court has reviewed the Motions and the Notice of Joinder in Joint Motion to Dismiss [23] with Supplementation and Memorandum of Law (the "Notice of Joinder"), ECF No. [77], all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendants' Motion to Dismiss, ECF No. [23], is granted in part and denied in part, the Notice of Joinder, ECF No. [77], is denied as moot, and the Motion to Quash, ECF No. [75], is denied as moot.

---

[1] For ease of reference, the Defendants represented in the Motion to Dismiss, ECF No. [23] and the Notice of Joinder, ECF No. [77], shall collectively be referred to as "Defendants."

## I.   BACKGROUND

On August 17, 2018, Plaintiff Greenway Nutrients, Inc. ("Plaintiff" or "Greenway") filed the instant suit against Defendants David Selakovic, Steven Blackburn, Fulfillment Solutions Services, Inc., New Epic Media, LLC, Vegalab S.A., Vegalab, LLC, Vegalab, Inc., the Ryan Law Group, LLC, James D. Ryan, Michael J. Ryan, Supreme Growers, LLC and Ecowin Co., Ltd.  *See* ECF No. [1].

### a.  *Greenway's Relationship to the Parties*

Greenway is a manufacturer and distributor of plant-based fungicides and pesticides.  *Id.* at ¶ 2.  At all relevant times, Greenway claims it has owned all rights, title, and interest in and to the mark "GREENWAY NUTRIENTS."  *Id.* at ¶ 41.

From 2010-2011, Plaintiff alleges that James D. Ryan, Michael J. Ryan, and the Ryan Law Firm, LLC (collectively referred to as the "Ryan Defendants"), performed legal work for Greenway.  *Id.* at ¶ 30.  Plaintiff claims that the Ryan Defendants were given "access to the innermost information regarding Greenway's operations."  *Id.*

In February of 2011, the Ryan Defendants introduced Greenway's principal, Gustavo Escamilla, to Defendants Steven Blackburn ("Defendant Blackburn") and David Selakovic ("Defendant Selakovic").  *Id.* at ¶ 32.  Defendants Selakovic and Blackburn offered various services to Greenway, including product bottling, order fulfillment, and web design and marketing.  *Id.*

In May of 2011, Greenway contracted Defendant New Epic Media, LLC ("Defendant New Epic"), a company owned by Defendants Selakovic and Blackburn, to design and manage Greenway's website and conduct internet marketing.  *Id.* at ¶ 33-34.  In connection with these services, Defendant New Epic executed a non-disclosure agreement (the "New Epic NDA"). *Id.* at ¶ 35.

In June 2011, Greenway contracted Fulfilment Solution Services, Inc. ("Defendant FSS"), another company owned by Defendant Selakovic and managed by Defendant Blackburn, to bottle and distribute some of Greenway's products, including an anti-pest spray for houseplants and

crops called *No Spider Mites*. *Id.* at ¶¶ 35-37. Defendant FSS also executed a non-disclosure agreement (the "FSS NDA") in connection with its services for Greenway. *Id.* at ¶ 38.

The Complaint alleges that both the New Epic NDA and the FSS NDA required the Defendants "to treat the Confidential Material which is furnished to it by [Greenway]" confidentially. *Id.* at ¶ 39. Both NDAs defined "Confidential Material" broadly to "include all information concerning [Greenway]." *Id.* Both NDAs also required Defendants FSS and New Epic to

> use the Confidential Material solely for the purpose described [within the agreements] . . . and that it and its Representatives will keep such information confidential and not use it for any other purpose, publish it or disclose it to any other party or assist any other party to obtain any benefit from the Confidential Material or to use the Confidential Material to solicit business from or to provide any services or products to any other party.

*Id.*

Sometime in late 2011 and early 2012, the Ryan Defendants introduced Escamilla to Eric Hanson, an investor who was a part of a group that owned a publicly-traded company called HPC Acquisitions, Inc. ("HPC"). *Id.* at ¶ 40. Together, Hanson, Escamilla, and Defendants James Ryan and Michael Ryan allegedly discussed the possibility that Greenway would merge into a publicly-traded shell like HPC to create a publicly-traded company selling eco-friendly pesticides. *Id.* This arrangement was apparently contemplated in the discussions between the Ryan Defendants and Greenway in a "private placement memorandum." *Id.*

### b. The Alleged Disclosure of Confidential Company Information and the Sale of the Greenway Inventory.

Greenway's products contain a chemical concentrate that is shipped from overseas, which is then mixed into a formula developed by Greenway to form a finished product. *Id.* at ¶ 43. In 2011 and 2012, shipments of concentrate from Greenway's suppliers typically did not bear markings that would identify their source. *Id.* at ¶ 45. On the few occasions when Greenway suspected that the shipment packaging might be labeled with its supplier's name, Greenway claims it would receive the shipments itself, alter the packaging or labeling (in order to conceal the identity

of the suppliers), before sending it out to Greenway service providers.  *Id.*  Except where Greenway intercepted the shipments itself, orders of concentrate would otherwise be delivered directly to Defendant FSS.   *Id.* at ¶ 46.  Defendant FSS would then fill orders by packing and shipping out the product.  *Id.*

Plaintiff alleges that the only individuals not directly affiliated with Greenway who had access to the names of Greenway's suppliers in 2011 and 2012 were the Ryan Defendants.  *Id.* at ¶ 107.  Greenway allegedly "impressed on James and Michael Ryan the necessity of keeping the identity of Greenway's suppliers secret in the competitive business environment in which Greenway operated."  *Id.* at ¶ 109.    The Complaint alleges that Defendant Michael Ryan, on behalf of the Ryan Firm, also agreed to the terms of a non-disclosure agreement similar to the ones executed by Defendants FSS and New Epic.  *Id.*

Plaintiff claims that in order "[t]o effectuate FSS' bottling and distribution of Greenway products," Greenway and Defendant Selakovic agreed that Greenway would be permitted to use an American Express credit card in Defendant Selakovic's name for purchasing orders of concentrate.  *Id.* at ¶ 47.  Greenway would then  repay the amounts charged to the card.  *Id.*

In November 2011, Greenway purchased $50,000.00 worth of a concentrated chemical solution, which was the key ingredient in Greenway's No Spider Mites product.  *Id.* at ¶ 48.  The purchase was made using the American Express credit card.  *Id.*  In January 2012, Plaintiff claims that Defendant Selakovic revoked Greenway's authorization to use the American Express credit card, citing an alleged $85,000.00 unpaid debt.  *Id.* at ¶ 49.   Plaintiff alleges that Defendant Selakovic's claim that Greenway had failed to pay its debt to Defendant FSS was "false and pretextual."  *Id.* at ¶ 50.  Defendants Selakovic and Blackburn then allegedly seized Greenway's concentrate and began selling the inventory on their own without Greenway's authorization or involvement.  *Id.* at ¶¶ 51-52.

In addition to seizing the $50,000.00 shipment of concentrate relating to the billing dispute, Defendants Selakovic and Blackburn also allegedly seized additional concentrate, which Greenway had previously purchased and which they had on hand for FSS' fulfillment services.  *Id.* at ¶ 52.  Defendants Selakovic and Blackburn then made product from Greenway's concentrate

4

inventory by "reverse-engineer[ing] Greenway's formula to create counterfeit Greenway products." *Id.* at ¶¶ 52-53. The alleged counterfeit Greenway product was initially sold under Greenway Nutrients labels using the labels Defendant Selakovic and Blackburn "had on hand" as part of Defendant FSS' bottling and distribution activities. *Id.* at ¶ 54. When Defendants Selakovic and Blackburn ran out of the Greenway-branded labels, the Plaintiff alleges that they "printed more . . . [and] then affixed those counterfeit labels on counterfeit Greenway products." *Id.* at ¶ 54. The sales of these Greenway-labeled products were allegedly made through a separate entity called Vegalab LLC. Vegalab LLC is the U.S. subsidiary of Vegalab S.A., a Swiss company of which Defendant Selakovic is President. *Id.* at ¶ 57.

Plaintiff claims that "[as] part of [the Defendants'] scheme" to sell Greenway's inventory and use Greenway's name without authorization, Defendants Blackburn, Selakovic, and/or Vegalab LLC used Greenway's confidential material, including its customer distribution lists and product labels, and caused Defendants New Epic and FSS to breach the NDAs. *Id.* at ¶¶ 59-60. In the course of their services for Greenway, Defendants FSS and New Epic came to possess information about Greenway's distributors. *Id.* at ¶ 54. Using this access, Defendants Blackburn and Selakovic contacted Greenway distributors and offered to sell a large inventory of purported Greenway product at a deep discount. *Id.* at ¶¶ 61-63.

In the fall of 2012, Escamilla learned that the Defendants had been reselling its product when it was contacted by Greenway distributors and customers and was notified that Greenway products were being sold at extremely low prices. *Id.* at ¶ 65. The distributors and customers also allegedly claimed that "they were confused as to which products with a Greenway label actually had originated with Greenway." *Id.*

### c. *The Ecowin Agreement*

On March 1, 2012, Greenway entered into a U.S. distribution agreement with Ecowin Co., Ltd ("Defendant Ecowin"), a Korean manufacturer of natural biopesticides and other products (agreement referred to herein as the "Ecowin Agreement"). *Id.* at ¶ 69. Under the Ecowin Agreement, Greenway allegedly had exclusive rights to market Defendant Ecowin's indoor hydroponics products and non-exclusive rights to distribute other Ecowin products in

the U.S.  *Id.* at ¶ 71.   The Ecowin Agreement was valid for one year and stated that the parties would "sign again after one year."  *Id.* at ¶ 72.

In November 2012, Defendant Ecowin informed Greenway that it would no longer be providing products to Greenway.  *Id.* at ¶ 74.  Defendant Ecowin stated that the reason for the termination of the relationship was because "Greenway's contact person, David Park, had left Ecowin."  *Id.* at ¶ 75.  Plaintiff alleges that this reasoning was untrue.  *Id.*  Greenway later learned that "Vegalab was Ecowin's new U.S. distribution partner for the products No More Mildew and No More Spores."  *Id.* at ¶ 77.

### d.  *Vegalab S.A. Purchases a Controlling Interest in Ecowin*

In August 2014, Defendant Vegalab S.A. purchased a controlling interest in Defendant Ecowin.  *Id.* at ¶ 78.  On March 29, 2016, Vegalab, Inc. (at that time known as HPC Acquisitions, Inc.) filed its annual report with the S.E.C.  *Id.* at ¶ 80.  In that filing, HPC Acquisitions, Inc. disclosed that Defendant Selakovic had purchased 12,011,000 shares of the company.  *Id.* at ¶ 81.  This purchase was allegedly "subject to Selakovic's agreement to assign to HPC Acquisitions, Inc. exclusive rights to distribute natural chemicals manufactured by Ecowin in the Western Hemisphere, certain state permits for the sale of Ecowin agrichemicals, and the trademark Vegalab."  *Id.*  HPC Acquisitions, Inc. also attached a distribution agreement between Defendants Ecowin and Vegalab, S.A., dated October 19, 2012, as an exhibit to the S.E.C. filing.  *Id.* at ¶ 82.  Plaintiff claims that this filing demonstrates that in 2012, Vegalab S.A. had come to earn Defendant Ecowin's distribution rights by displacing Greenway's binding contract with Ecowin.  *Id.* at ¶ 85.  Plaintiff claims that it was unaware of the distribution agreement between Defendants Ecowin and Vegalab S.A. until March 2016.

Plaintiff claims that Defendant Vegalab S.A. then "bought out Ecowin and granted the distribution rights to Selakovic personally."  *Id.*  Defendant Selakovic then in turn assigned those rights to HPC Acquisitions, Inc. (now Vegalab, Inc.).  *Id.*  Plaintiff claims that Defendant Selakovic "created an international company at Greenway's expense."  *Id.* at ¶ 86.  This was the same type of merger Greenway had discussed with Hanson and the Ryan Defendants in 2011 and 2012.  *Id.*

####    *e.  The Parties' Numerous Lawsuits Revolving Around this Matter*

The instant action is not the first lawsuit filed by the Plaintiff.  In fact, both the Plaintiff

and/or certain Defendants have initiated lawsuits relating to the facts at issue in the present case,

***no less than seven times***, in both state and federal court for the past six years.  Pursuant to

Federal Rule of Evidence 201, the Court judicially noticed these actions.  *See* ECF No. [51].

###    i.  The 2013 Colorado Federal Court Action

In April 2013, Greenway first filed suit against Defendants Selakovic, Blackburn, Ecowin,

Vegalab LLC, FSS and others in the United States District Court for the District of Colorado.  *See*

*Greenway Nutrients Inc. v. David Selakovic, et al.*, Case No. 13-cv-01088-MSK-KMT, ECF No.

[1].  Like the instant action, the suit concerned allegations that Defendants Selakovic and

Blackburn seized Greenway's inventory, and that Defendant Selakovic interfered with Greenway's

relationship with Defendant Ecowin.  *See Greenway Nutrients Inc. v. David Selakovic, et al.*, Case

No. 1:13-cv-01088-MSK-KMT, ECF No. [1].  The case was subsequently dismissed without

prejudice for Greenway's failure to prosecute and failure to obtain counsel.  *See Greenway*

*Nutrients Inc. v. David Selakovic, et al.*, Case No. 1:13-cv-01088-MSK-KMT, ECF No. [146].

###    ii.  Florida State Case I

On March 4, 2014, David Selakovic initiated a lawsuit against Greenway and its

principal, Gustavo Escamilla, in the Circuit Court of the Fifteenth Judicial Circuit in and for

Palm Beach County, Florida, asserting a claim for defamation ("State Case I").  *See David*

*Selakovic v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*, Case No. 50-2014-CA-

002578, at ECF No. [6].  On August 13, 2014, the Circuit Court entered a Partial Final Judgment

Granting Permanent Injunction against Greenway and Escamilla, enjoining the Defendants

from disseminating defamatory statements and content concerning David Selakovic and

Vegalab, LLC.  *See David Selakovic v. Greenway Nutrients, Inc., Greenway Nutrients, LL*C,

Case No. 50-2014-CA-002578, at ECF No. [25].  The case was subsequently dismissed on

October 21, 2016.  *See David Selakovic v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*,

Case No. 50-2014-CA-002578, at ECF No. [29].

Case No. 18-cv-81104-BLOOM/Reinhart

### iii. **Florida State Case II**

On March 6, 2014, Fulfillment Solution Services, LLC sued Greenway in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, seeking damages related to the unpaid credit card debt ($85,000.00) referenced in the above-styled cause ("State Case II"). *See Fulfillment Solution Services, LLC v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*, Case No. 50-2014-CA-002733, at ECF No. [5]. When Greenway did not appear in the lawsuit, the Court entered a default judgment in the amount of $94,077.73 on October 7, 2014. *See Fulfillment Solution Services, LLC v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*, Case No. 50-2014-CA-002733, at ECF No. [26].

### iv. **Florida State Case III**

On April 1, 2014, Steve Blackburn initiated a lawsuit against Greenway and its principal Gustavo Escamilla, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, asserting a claim for defamation ("State Case III"). *See Steve Blackburn v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*, Case No. 50-2014-CA-003895, at [D.E. 6]. On August 14, 2014, the Circuit Court entered an Order of Default against Greenway and Escamilla. *See Steve Blackburn v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*, Case No. 50-2014-CA-003895, at ECF No. [17]. The case was subsequently dismissed on August 25, 2016, for lack of prosecution. *See Steve Blackburn v. Greenway Nutrients, Inc., Greenway Nutrients, LLC*, Case No. 50-2014-CA-003895, at ECF No. [19].

### v. **The 2017 California Federal Court Action**

On October 24, 2017, Greenway filed suit against the Department of Homeland Security ("DHS") in the Central District of California, asserting federal and state law claims for violations of civil rights, due process and equal protection relating to a trademark infringement investigation centered around some of the conduct complained of in the instant action (the "2017 California Federal Action"). *See Greenway Nutrients Inc. v. Dept. of Homeland Security, et al.*, Case No. 17-cv-07748-ODM-MRW, ECF No. [1]. The Complaint claimed that DHS had failed to carry out its duties and protect the interests Greenway. The action was dismissed with prejudice on April 14, 2018. *See Greenway Nutrients Inc. v. Dept. of Homeland Security, et al.*, Case No. 17-cv-

07748-ODM-MRW, ECF No. [13].

### vi.  The 2017 Florida Federal Court Action

In addition to the instant action, Greenway also previously filed another suit in the Southern District of Florida on June 7, 2017, against Defendants FSS, New Epic, Vegalab LLC, Blackburn, Selakovic and others.  *See Greenway Nutrients Inc. v. David Selakovic, et al.*, Case No. 17-cv-80714-KAM, (the "2017 Florida Federal Action").  This case involved the same nucleus of facts and issue as the instant action (i.e., the seizure of Greenway's inventory and the relationship with Ecowin).  The Court dismissed the action *sua sponte* on October 31, 2017, for substantially the same reasons as the 2013 Colorado Federal Action—Greenway's failure to obtain counsel and its noncompliance with several court orders.  *See Greenway Nutrients Inc. v. David Selakovic, et al.*, Case No. 17-cv-80714-KAM, ECF No. [44].  Plaintiff claims that it was unaware of the Ryan Defendants involvement with the instant action until the Ryan Firm, entered an appearance on behalf of HPC Acquisitions, Inc. in the 2017 Florida Federal Action on July 7, 2017.  ECF No. [1], at ¶ 110; *see also Greenway Nutrients Inc. v. David Selakovic, et al.*, Case No. 17-cv-80714-KAM, ECF No. [25].

Defendants now move to dismiss the Complaint in the instant action for failing to state claims under Federal Rules of Civil Procedure 8(a) and 12(b)(6).

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  In the same vein, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (*quoting*

*Twombly*, 550 U.S. at 557 (alteration in original)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  These elements are required to survive a motion brought under Rule 12(b)(6), which requests dismissal for "failure to state a claim upon which relief can be granted."

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 682).

## III.   DISCUSSION

Defendants argue that the Complaint and its claims must be dismissed for a multitude of reasons. These arguments include: 1) it is an impermissible shotgun pleading; 2) the Complaint is barred by the doctrine of res judicata; 3) factual discrepancies and inconsistencies warrant dismissal; 4) the tortious interference claim cannot lie where is it premised on an unenforceable contract; 5) the tortious interference of an advantageous business relationship claim cannot lie where it is applied to a contract at will; 6) the unjust enrichment claim is inadequately plead and

is barred by the doctrine of collateral estoppel; and 7) the Lanham Act claims, Counts Eight and Nine, are barred by the statute of limitations.  The Court will address each argument in turn.

### a. *Shotgun Pleading*

Defendants argue that Plaintiff's Complaint constitutes an impermissible "shotgun pleading," because each count "incorporates by reference all 115 of the allegations made before the beginning of Count I" and because there are "numerous parties named as defendants and none of the ten counts make allegations as to all of them."  ECF No. [23], at 8.  While it is true that each count incorporates every factual allegation asserted in the Complaint, the Court finds that "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increase the burden of understanding the factual allegations underlying each count."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015). Importantly, Plaintiff has identified the particular Defendant it asserts is liable for each count and lists its legal theories in ten separate sections.  It is therefore possible for the Defendants "to know which allegations of fact are intended to support which claims for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) (internal alteration omitted).  As in *Weiland*, the Court does not "retreat[ ] from this circuit's criticism of shotgun pleadings."  792 F.3d at 1326.  Rather, the Court finds that under the specific circumstances of this case, the Motion will be adjudicated on the merits.

### b. *Res Judicata*

Defendants also argue that this case, as it relates to Defendant Vegalab, LLC, is barred by the doctrine of *res judicata*.  ECF No. [23], at 14-16.  The doctrine of res judicata bars a subsequent action when the prior decision: (1) was rendered by a court of competent jurisdiction; (2) was a final judgment on the merits; (3) involved the same parties or their privies; and (4) involved the

same causes of action. *Trustmark Ins. Co. v. ESLU, Inc.,* 299 F.3d 1265, 1269 (11th Cir. 2002) (citing *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1296 (11th Cir. 2001)). The bar does not require that the literal causes of action be identical; rather, it encompasses those claims that could have been raised previously. *Id; see also Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1187 (11th Cir. 2003). As such, a court's focus is whether the prior and present actions "arise out of the same nucleus of operative fact, or [are] based upon the same factual predicate," such that the two cases are essentially the same "claim." *In re Piper,* 244 F.3d at 1297 (citation omitted).

Plaintiff disputes in its Opposition to Defendants' Motion that there was a final judgment on the merits in the 2017 Florida Federal Action.  ECF No. [29], at 6-7.  Specifically, Plaintiff argues that although the Dismissal Order was silent as to whether it was with or without prejudice that the District Court had previously "expressed his intent that an eventual dismissal for failure to find counsel would be without prejudice."  *Id.* at 7.

The Court has carefully reviewed the record in the 2017 Florida Federal Action and finds that the dismissal operates as a dismissal with prejudice.  On July 21, 2017, the District Court granted Plaintiff's counsel's Motion to Withdraw and ordered the Plaintiff to retain new counsel within thirty days of the entry of the Order.  *Greenway Nutrients, Inc. v. Fulfillment Solution Services, LLC, et al.*, Case No. 9:17-cv-80714, at ECF No. [31].  The order warned the Plaintiff that failure to comply would "result in this action being dismissed without prejudice."  *Id.* at 2. The Plaintiff failed to comply by the deadline and instead filed numerous filings *pro se* for the court's consideration.  *See* generally, *Greenway Nutrients, Inc. v. Fulfillment Solution Services, LLC, et al.*, Case No. 9:17-cv-80714, ECF Nos. [32], [35], [36], [37], [38], [39], and [40].  On October 6, 2017, the court entered an order striking the improper filings, and ordering Plaintiff to retain counsel no later than October 27, 2017.  *Greenway Nutrients, Inc. v. Fulfillment Solution*

*Services, LLC, et al.*, Case No. 9:17-cv-80714, ECF No. [41].   The October 6, 2017 Order cautioned the Plaintiff that "Failure [to retain counsel] may result in the dismissal of the case." *Id.* at 2.  This order, unlike the orders entered before it, was silent as to whether the court intended the dismissal to be with or without prejudice. *See Generally Id.*

In direct contravention with the court's order, ECF No. [41], Plaintiff again filed two additional filings *pro se*.  *See Greenway Nutrients, Inc. v. Fulfillment Solution Services, LLC, et al.*, Case No. 9:17-cv-80714, ECF Nos. [42] and [43].  On October 31, 2017, the District Court dismissed the 2017 Florida Federal Action, citing Plaintiff's failure to comply with the Court's order requiring new counsel be retained as the basis for dismissal.  *Greenway Nutrients, Inc. v. Fulfillment Solution Services, LLC, et al.*, Case No. 9:17-cv-80714, ECF No. [44].  Notably, the dismissal order cited to the court's October 6, 2017 Order, ECF No. [41], which was the order that was silent as to whether the dismissal would be with or without prejudice.  *See Greenway Nutrients, Inc. v. Fulfillment Solution Services, LLC, et al.*, Case No. 9:17-cv-80714, ECF No. [44].

Neither party contests that the District Court's dismissal constituted an involuntary dismissal governed by Federal Rule of Civil Procedure 41(b), which permits an involuntary dismissal of an action if a plaintiff fails to comply with a court order.  *See* Fed. R. Civ. P. 41(b). The plain language of Rule 41(b) is clear. A dismissal under Rule 41(b) or any other dismissal "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19— operates as an adjudication on the merits" unless "the dismissal order states otherwise."  Id.

The dismissal order was silent as to whether the dismissal was with or without prejudice. Therefore, by operation of rule, that dismissal "operates as an adjudication on the merits."  *Id.* Further, courts have consistently held that a court's dismissal for failure to prosecute operates as

an adjudication on the merits.  *Johnson v. Alabama Dep't of Human Res.*, 546 F. App'x 863, 867–

68 (11th Cir. 2013) ("[T]he district court's dismissal of Johnson's Title VII complaint for failure to

prosecute was a "final judgment on the merits."); *Costello v. United States,* 365 U.S. 265, 286-287

(1961) (explaining that "a *sua sponte* dismissal by the Court for failure of the plaintiff to comply

with an order of the Court" constitutes "a bar to another suit").

As noted*,* res judicata applies when: "(1) there is a final judgment on the merits; (2) the

decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with

them, are identical in both suits; and (4) the same cause of action is involved in both

cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir.1999).

Here, each element is satisfied. First, the dismissal of the 2017 Federal Action operated as

an adjudication on the merits.  Second, the 2017 Federal Action was rendered by a court of

competent jurisdiction.  Third, privity exists between the defendants in the 2017 Federal Action

and the same Defendants named in the instant case, which include Defendants David Selakovic,

Steven Blackburn, Fulfillment Solutions, Inc., New Epic Media, LLC, and Supreme Growers,

LLC.  Finally, the same causes of action are involved in both cases, as the 2017 Federal Action

and the instant action clearly arise from the "same nucleus of operative fact," and is "based upon

the same factual predicate as the instant matter."   *Trustmark Ins. Co.,* 299 F.3d at 1269.

The Court also notes that the doctrine of res judicata bars the instant case from proceeding

against Defendant Vegalab S.A. While the 2017 Florida Federal Action did not specifically name

Defendant Vegalab S.A., res judicata bars claims that could have been raised previously.

*Trustmark Ins. Co.,* 299 F.3d at 1269.  The Complaint in the instant action makes clear that the

parties were aware of Vegalab S.A.'s involvement at the time Plaintiff filed the 2017 Florida

Federal Action.  *See* ECF No. [1], at ¶ 79 (". . . it was not until 2016 that Greenway ***discovered the***

*full extent of the misconduct* by Ecowin, *Vegalab S.A.*, and Selakovic.") (emphasis added).

Accordingly, the Plaintiff could have brought the action against Defendant Vegalab S.A. in 2017

but chose not to.  Additionally, Defendant Vegalab S.A. sits in privity with Defendant Vegalab

LLC.  "Privity exists where the nonparty's interests were adequately represented by the party in

the original suit or 'where a party to the original suit is so closely aligned to a nonparty's interest

as to be his virtual representative.'" *Armstrong v. City of Conyers*, No. 04-11355, 2005 WL

1415993, at *1 (11th Cir. June 17, 2005) (citing *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560-61 (11th

Cir.1990)).  Here, it is evident that the Plaintiff knew the Defendants' interests were closely aligned

because the Complaint explicitly states "Vegalab LLC is the U.S. subsidiary of Vegalab S.A., a

Swiss company of which Selakovic is President."  ECF No. [1], at ¶ 57.

Accordingly, the Court finds that the doctrine of res judicata bars this action from

proceeding against any of the Defendants named in the 2017 Federal Action or "those who sit in

privity with them."  This includes Defendants David Selakovic, Steven Blackburn, Fulfillment

Solutions, Inc., New Epic Media, LLC, Vegalab, LLC, Vegalab S.A.[2] and Supreme Growers,

LLC.[3]  Accordingly, the above-styled cause is dismissed as it relates to those Defendants.

### c. Defendants' Denials of Greenway's Factual Allegations Regarding the Ryan Defendants.

Defendants make several arguments that the Complaint should be dismissed due to

"conflicting statements" within the factual allegations regarding the Ryan Defendants.  ECF No.

[23], at 8-9.  The Defendants contend that the Complaint should be dismissed because 1) it contains

---

[2] On February 5, 2019, Defendant Vegalab S.A. filed a Notice of Joinder in Joint Motion with Supplementation and Memorandum of Law, ECF No. [77].  Because the Court finds that this case is barred by the doctrine of *res judicata* against Defendant Vegalab S.A. that Motion, ECF No. [77], is denied as moot.

[3] On January 22, 2019, Defendants David Selakovic, Steven Blackburn, Fulfillment Solutions, Inc., and New Epic Media, LLC, filed a Motion to Quash Service and Dismiss, ECF No. [75].  Because the Court finds that this case is barred by the doctrine of *res judicata* against those Defendants and that the above-styled action shall be dismissed as it relates to the Defendants represented in the Motion to Quash, ECF No. [75], that motion shall be denied as moot.

conflicting and inconsistent statements (*Id.* at 8-9); 2) it fails to attach the non-disclosure agreement allegedly entered into by the Ryan Defendants (*Id.* at 9-10); and 3) it fails to detail the scope of the attorney-client relationship between Plaintiff and the Ryan Defendants and the information alleged to have been distributed was not confidential. (*Id.* at 8-9).  The Court first notes that after a close evaluation, these arguments amount to, at most, mere denials of the factual allegations. As such, they are inappropriate for consideration on a motion to dismiss.  In reviewing a "Rule 12(b)(6) [motion] for failure to state a claim, [courts] accept[] the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiffs." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).

As to Defendants' first factual denial of the Complaint, Defendants argue that the counts relating to the Ryan Defendants (Counts Three, Four and Five) should be dismissed because they all assume the "keystone allegation" that the Ryan Defendants disclosed Ecowin's identity to Defendant Selakovic, and such allegation is contradicted by other allegations found in the Complaint.  ECF No. [23], at 8-9.  Defendants argue that the Complaint is not "well pleaded" regarding this allegation because "it stands to reason" that Defendant Selakovic would have learned the source of GREENWAY's concentrate, ECOWIN, by reviewing his credit card billing statement."  *Id.* at 8.  Plaintiff responds that "Defendants' dispute as to whether an individual knew information at a given time is necessarily a fact issue to be resolved at a later stage.  ECF No. [29], at 21.  The Court agrees with the Plaintiff.  While it may be true that there is another explanation for how the identity of Plaintiff's suppliers was discovered, this conclusion does not warrant dismissal.  Here, Plaintiff asserts that Greenway took steps to keep Ecowin's name confidential.  ECF No. [1], at ¶ 106. Moreover, the Ryan Defendants were "[t]he only individuals not directly affiliated with Greenway who had access to the names of Greenway's suppliers in 2011 and 2012."

*Id.* at ¶ 107.  Accordingly, the Court takes these allegations as true, as it must, for the purposes of analyzing a motion to dismiss and finds that dismissal is not warranted on this ground.

Next, Defendants argue that the Complaint fails to physically attach a NDA relating to the Ryan Defendants and "[t]o the extent the existence of such an agreement is an aspect of any of the counts pleaded against the RYANS," those counts should be dismissed because they "lack adequate specificity."  ECF No. [23], at 9-10.  The Court first notes that Plaintiff has not alleged a breach of contract claim related to the NDA against the Ryan Defendants.[4]  Accordingly, despite the Defendants directly denying that an NDA was entered into by the Ryan Defendants, the Plaintiff is not required to physically attach the NDA to substantiate this factual allegation. Therefore, the Court disagrees with the Defendants that "[t]o the extent the existence of such an agreement is an aspect of any of the counts pleaded against the RYANS, or any of them, it lacks adequate specificity," and should be dismissed on this ground.[5]  *Id.* at 9.

Third, Defendants argue that Count Five, a claim for breach of fiduciary duty asserted against the Ryan Defendants, is not well pleaded because Plaintiff has "falsely alleged an attorney-client relationship," or its scope that existed between the Ryan Defendants and the Plaintiff. *Id.* at 13- 14.  Defendants also claim that when taking the factual allegations as true, they actually support the notion that the "RYANS disclosed [the HPC] opportunity to GREENWAY, not the other way around."  *Id.*  Plaintiff responds that the issues raised by the Defendants are "fact issues inappropriate for the motion-to-dismiss stage," and that it has "sufficiently plead that the Ryan Parties breached their fiduciary duties to Greenway by disclosing confidential client information

---

[4] The only claims asserted against the Ryan Defendants are 1) Tortious Inference with a Contract (Count Three), 2) Tortious Inference with Prospective Economic Advantage (Count Four), and a claim for Breach of Fiduciary Duty (Count Five).

[5] Defendants also argue that the applicable statute of limitations would bar a claim for a breach of the NDA.  As stated above, Plaintiff has not asserted a breach of contract claim relating to the NDA.  Accordingly, the Court will not address such argument, as it clearly does not apply.

and taking business opportunities away from their client." ECF No. [29], at 17-19.  The Court

agrees with the Plaintiff.

A fiduciary or confidential relationship exists where "confidence is reposed by one party

and a trust is accepted by the other, or where confidence has been acquired and abused." *Id.* The

origin of the confidence is immaterial. *See Id.* Thus, "[t]he term 'fiduciary or confidential relation'

is a very broad one." *Am. Honda Motor Co. v. Motorcycle Info. Network*, Inc., 390 F. Supp. 2d

1170, 1179 (M.D. Fla. 2005) (quoting *Quinn v. Phipps*, 113 So. 419, 420 (Fla. 1927)).  To state a

claim for breach of a fiduciary or confidential relationship, "a party must allege some degree of

dependency on one side and some degree of undertaking on the other side to advise, counsel, and

protect the weaker party." *Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla.

3d DCA 1993) (quoting *Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla.

1989)).  "[A]n attorney breaches the duty of loyalty when the attorney obtains a personal advantage

from the client or when there are circumstances that create adversity to the client's interest."

*Resolution Trust Corp. v. Holland & Knight*, 832 F.Supp. 1528, 1531 (S.D. Fla. 1993).

The Complaint asserts that Plaintiff entered into an attorney-client relationship with the

Ryan Defendants sometime in 2010 and 2011.  ECF No. [1], at ¶ 30.  In their capacity as attorneys

for the Plaintiff, the Ryan Defendants owed Plaintiff a fiduciary duty of loyalty to Greenway.  *Id.*

at ¶ 153.  The Complaint also alleges that during the course of their attorney-client relationship

with the Plaintiff, the Ryan Defendants learned confidential information about the Plaintiff's

business, and that such information was improperly disclosed to the Plaintiff's competitors, which

"callously disregarded" the interest of their client.  *Id.* at ¶¶ 154-156, 160.  Plaintiff claims it

suffered injury as a result of the Ryan Defendants' alleged improper disclosures of confidential

information.  *Id.* at ¶¶ 157-159.  Based on these allegations, the Court finds that the Plaintiff has sufficiently asserted a claim for breach of fiduciary duty against the Ryan Defendants.

The Court also notes that unless the relationship is formed through an express agreement, whether a fiduciary relationship exists is necessarily fact-specific to a particular case. "Therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)' because it 'is often impossible to say that [a] plaintiff will be unable to prove the existence of a fiduciary relationship.'"  *Hansen v. Premier Aviation Holdings, LLC*, No. 17-CV-61025, 2017 WL 8893119, at *4 (S.D. Fla. Nov. 21, 2017) (quoting *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1304 (M.D. Fla 2015) (quoting *Childers v. N.Y. Presbyterian Hosp.*, 36 F. Supp. 3d 292, 300 (S.D.N.Y. 2014))).  Further, contrary to Defendants' assertions, the Plaintiff was not required to detail the scope of the Ryan Defendants' attorney-client relationship with Plaintiff to maintain a claim for breach of fiduciary duty.

Lastly, the Court finds that the Defendants' claim that Count Five should be dismissed because the Complaint "establish[es] the RYANS disclosed an opportunity to GREENWAY, not the other way around" is also without merit.  Such argument, which amounts to a denial of the allegations in the Complaint, is inappropriate at this stage.  Regardless of whether there is an alternative explanation for the injury that occurred to a party, the Court is required to accept the "the factual allegations in the complaint as true" and to construe them in the light most favorable to the plaintiff.  *Adinolfe*, 768 F.3d at 1169.  Accordingly, taking the factual allegations as true, the Court finds that the Plaintiff has adequately asserted a claim for breach of fiduciary duty against the Ryan Defendants.

### d. *Enforceability of the Ecowin Agreement*

Next, Defendants argue that Greenway did not have a binding contract with Ecowin because Ecowin did not countersign the contract attached to the Complaint.  ECF No. [23], at 10. Plaintiff responds that this is a fact issue which cannot be determined at this stage, and that California law recognizes situations in which contracts are enforceable despite one or both parties not having signed the contracts.  ECF No. [29], at 15 (citing *E.O.C. Ord, Inc. v. Kovakovich*, 246 Cal. Rptr. 456 (Cal. Ct. App. 1988).  In their Reply, Defendants contest that California law applies, but do not offer which state law they contend should apply to the contract at issue.  See ECF No. [37], at 4-5.

Contract interpretation is typically inappropriate at the motion to dismiss stage.  *See Geter v. Galardi S Enterprises, Inc.*, 43 F.Supp.3d 1322, 1328, 2014 WL 4290550, at *5 (S.D. Fla. Aug. 29, 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") (citations omitted); *Larach v. Standard Chartered Bank Int'l (Americas) Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla. 2010) (denying motion to dismiss because plaintiff had "sufficiently alleged the required elements for claims of breach of contract" and the differing interpretations of the contract was not yet ripe for ruling).

While it is true that the Ecowin Agreement attached to the Complaint has not been signed by a representative of Ecowin, the Court agrees with the Plaintiff that dismissal on this ground would be premature.  Both California and Florida law provide that contract acceptance may be offered in writing or through other parol evidence, or by other acts.  *Martini E Ricci Iamino S.P.A. - Consortile Societa Agricola v. Trinity Fruit Sales Co.*, 30 F. Supp. 3d 954, 973 (E.D. Cal. 2014) ("A defendant's acceptance may be proven in various ways, including by evidence of words

spoken, evidence of a particular act other than signing, or evidence that the party to be charged prepared the written document and offered to perform its terms."); *see also generally Turton v. Singer Asset Fin. Co.*, 120 So. 3d 635, 639 (Fla. Dist. Ct. App. 2013) ("[T]he acceptance of an offer may be in writing, by parol, or by acts."). Even if discovery proves that Ecowin did not physically countersign the agreement, which it may, the Plaintiff may still be able to prove that Plaintiff and Defendant Ecowin entered into a contract by other means. Accordingly, the Court finds that dismissal of the tortious interference claim, Count Three, is unwarranted at this time.

### e. *Tortious Interference with an Advantageous Business Relationship*

Defendants next argue that Count Four, a claim for tortious interference with an advantageous business relationship, should be dismissed because such a claim cannot stand where it relates to a contract terminable at will. ECF No. [23], at 11-12. The Court first notes, with much disappointment, that the Defendants have flagrantly misquoted the caselaw that they contend supports the dismissal of Count Four. In the Motion, Defendants state that "the general rule is that an action for tortious interference will ***not*** lie where a party tortiously interferes with a contract terminable at will." ECF No. [23], at 11 (citing *Perez v. Rivero*, 534 So. 2d 914, 916 (Fla. 3d DCA 1988) (*emphasis added*). The Court has reviewed *Perez v. Rivero*, and notes that the opinion states the exact opposite holding than the one represented by Defendants. *See Perez*, 534 So. 2d at 916 ("[a]lthough the general rule is that an action will lie where a party tortiously interferes with a contract terminable at will . . . [however] it is only direct and unjustified interference that is actionable."). Contrary to the Defendants assertions, an at-will relationship can satisfy the first element of a claim for tortious interference with a business relationship. *See Knight v. Palm City Millwork and Supply,* 78 F.Supp.2d 1345, 1347 (S.D. Fla. 1999)("the mere fact that a contract is terminable at will is not a defense to an action for tortious interference."); *see also Tamiami*

Case No. 18-cv-81104-BLOOM/Reinhart

*Trail Tours, Inc. v. J.C. Cotton,* 432 So. 2d 148 (Fla. 1st DCA 1983) (finding elements of tortious interference with business relationship present where no enforceable contract existed); *Unistar Corp. v. Child,* 415 So.2d 733, 734 (Fla. 3rd DCA 1982)("The general rule is that an action will lie where a party tortiously interferes with a contract terminable at will.").

In the Complaint, Greenway asserts that the Ryan Defendants improperly interfered with its agreement with Ecowin and its prospective business relationship with HPC by informing Defendant Selakovic of the "Ecowin-Greenway Agreement so that Selakovic could supplant Greenway as Ecowin's U.S. partner." ECF No. [1], at ¶ 132. The Complaint further alleges that Defendant Selakovic "intentionally induced Ecowin to breach its contract with Greenway Nutrients" (*Id.* at ¶ 133), and that the Ryan Defendants in violation of their fiduciary duties "disclosed the opportunity to create a publicly-traded firm through merger with a publicly-traded shell like HPC Acquisitions, Inc" (*Id.* at ¶ 145). Those allegations are all that are required to plead a claim for tortious interference with an advantageous business relationship at the pleading stage.

Additionally, Defendants argument that their conduct was "lawful competition" is also misplaced. To establish "intentional" or "justified" interference with a business relationship, "a plaintiff must show that the defendant acted without justification . . . [t]his is a fact intensive inquiry that requires an examination of the defendant's conduct, its motive, and the interests it sought to advance." *Christian Tennant Custom Homes of Fla., Inc.*, 2017 WL 4102458, at *8 (internal citation and quotation marks omitted). While Defendants assert that they were engaged in lawful competition, and this may be a valid defense, the Plaintiff has adequately plead the necessary elements. Accordingly, the Court finds that the Plaintiff has adequately asserted a claim for tortious interference.

### f.   Unjust Enrichment

Defendants also argue that Plaintiff's unjust enrichment claim, Count Ten, should be dismissed because it is precluded by the showing that an express contract exists between the Plaintiff and Defendant FSS.  ECF No. [23], at 16.  Defendants claim there is a "showing of actual contracts between GREENWAY and FSS and / or SELAKOVIC," which is "established by application of the doctrine of collateral estoppel and by the allegations to that effect in the Complaint."  ECF No. [23], at 17.  Regarding its "collateral estoppel" argument, Defendants contend that Florida State Case II evidences the contract between the Plaintiff and Defendant FSS.[6] Defendants argues that "[u]nder Florida law an action for unjust enrichment fails upon a showing that an express contract exists." Id. at 16 (citing *Williams v. Bear Stearns & Co.*, 772 So. 2d 397, 400 (Fla. 5th DCA 1998)).  Plaintiff responds that its unjust enrichment claim stands because it "does not arise" under the contract with the parties, but rather is "well beyond the scope of the contract."  ECF No. [29], at 12-13.

The general rule in Florida is a plaintiff cannot pursue an equitable remedy, such as unjust enrichment, "where an express contract exists concerning the same subject matter." *Kovtan v. Frederiksen*, 449 So. 2d 1 (Fla. 2d DCA 1984).  But a plaintiff may plead unjust enrichment when the alleged matter falls outside of the scope of the contract.  *See Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236 (S.D. Fla. 2015) (denying dismissal of plaintiffs' unjust enrichment claim where the allegations, at least as pled, were beyond the scope of the insurance policy.).  The "general rule [that plaintiff cannot pursue quasi-contractual claims when an enforceable express

---

[6] The Court has taken Judicial Notice of Florida State Case II.  *See* ECF No. [51].  The Court also notes that Florida State Case II, was resolved after the entry of a final default judgment.  *See Fulfillment Solutions Services, LLC v, Greenway Nutrients, Inc.*, Case No. 50-2014-CA-002733, Final Default J. (Fla. Cir. Ct. Oct. 7, 2014).  As conceded by the Defendants, the doctrine of collateral estoppel requires that an "issue was 'actually litigated' in the prior action." ECF No. [23], at 17.  Thus, while the Court has taken judicial notice of Florida State Case II, the doctrine of collateral estoppel would not apply to a ministerial act, such as a final default judgment.

contract exists] does not apply when the quasi-contractual claims concern matters which are outside the scope of the contract." *AutoNation, Inc. v. GAINSystems, Inc.*, No. 08-61632-CIV, 2009 WL 1941279, at *4 (S.D. Fla. July 7, 2009) (denying motion to dismiss because although a contract between the parties addressed the same matter at issue, the unjust enrichment claim fell outside the contract); *see also Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1365–66 (S.D. Fla. July 24, 2009) (refusing to dismiss an unjust enrichment claim when "reasonable inferences drawn from the Complaint demonstrate there may be an inadequate remedy at law as to some of Defendant's alleged misconduct"). The party seeking dismissal bears the burden of showing an express contract governs the issue in dispute. *See Mobil Oil Corp. v. Dade Cty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997). "[I]t is not upon the allegation of the existence of a contract, but upon a showing that an express contract exists that the unjust enrichment count fails." *Martorella v. Deutsche Bank Nat'l Trust Co.*, 931 F. Supp. 2d 1218, 1228 (S.D. Fla. 2013) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)). "Until an express contract is proven, a motion to dismiss a claim for unjust enrichment on these grounds is premature." *Id.* Further, the Eleventh Circuit Court of Appeals has stated the existence of an adequate legal remedy does not preclude a plaintiff from pleading unjust enrichment. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 Fed. Appx. 714, 722 (11th Cir. 2011), *abrogated on other grounds* by *State Farm Mut. Auto. Ins. Co. v. Williams*, 563 Fed. Appx. 665 (11th Cir. 2014).

Plaintiff's Complaint alleges that certain Defendants were unjustly enriched by the "improper sales of Greenway's inventory and their interference with the [Ecowin Agreement]." ECF No. [1], at ¶¶ 193-195. The Complaint further alleges that

In addition to the $50,000.00 shipment of concentrate from Spider Mite Control subject to the billing dispute, Selakovic and Blackburn also seized additional

> concentrate which Greenway had previously purchased and which they had on hand
> for FSS' fulfillment services. Selakovic and Blackburn made product from this
> concentrate inventory without Greenway's input. Greenway believes that
> Selakovic, Blackburn, and/or others working with them reverse-engineered
> Greenway's formula to create counterfeit Greenway products

*Id.* at ¶¶ 52-53.  Accordingly, Plaintiff argues that this "tortious conduct" goes "well beyond the scope of the contract."  ECF No. [29], at 8.

While neither party disputes the existence of a contract between Plaintiff and Defendant, the Court finds that the unjust enrichment claim does not warrant dismissal, as the Defendants have failed to meet their burden to establish that an express contract exists governing the dispute at issue.[7]  *See State Farm*, 427 Fed. Appx. at 1227 (stating although "no party contests the existence of the contract" plaintiff may "maintain an equitable unjust enrichment claim" because defendant failed to meet its burden of proving an express contract existed).

Moreover, based on the Complaint's allegations, as plead, the claim appears to fall outside the scope of the express contract at issue.  As such, the Court will decline dismissal of the unjust enrichment claims at this time.

### g. *The Lantham Act Claims*

Lastly, Defendants also argue that the claims asserted under the Lantham Act (Counts Eight and Nine) are barred by a "four (4) year statute of limitations."  ECF No. [23], at 17-18.  Plaintiff responds that these claims are not barred because no "express statute of limitations" governs such claims.  ECF No. [29], 8.  Rather, Plaintiff claims that the four-year statutes of limitations relied upon relates to a "guideline for the application of the equitable laches doctrine," which it contends the Defendants have not alleged.  *Id.*

---

[7] The Court notes that the Defendants have not attached the purported contract between Plaintiff and Defendant FSS to the instant Motion.

"Generally, whether a claim is barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss . . . However, if facts ***on the face*** of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss." *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1328 (S.D. Fla. 2012) (citing Cabral v. City of Miami Beach, 76 So.3d 324, 326 (Fla. 3d DCA 2011) (emphasis added)). "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations and quotations omitted). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time barred." *Id.*

Defendants concede that "the Complaint lacks adequate specificity to know when the alleged infringement occurred." ECF No. [23], at 18. Accordingly, because Defendants acknowledge that it is not "apparent from the face" of the Complaint when the alleged infringement is to have occurred, dismissal on this basis is not warranted at this stage of the proceedings. *See Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (stating that statute of limitations defect can be raised in motion for summary judgment where failure to comply with statute of limitations does not appear on face of complaint).

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss, **ECF No. [23],** is **GRANTED in part and DENIED in part**.

Case No. 18-cv-81104-BLOOM/Reinhart

2. Defendant Vegalab, S.A.'s Notice of Joinder in Joint Motion to Dismiss with Supplementation and Memorandum of Law, **ECF No. [77]**, is **DENIED AS MOOT**.

3. Defendants' Motion to Quash and Dismiss, **ECF No. [75]**, is **DENIED AS MOOT**.

4. Defendants David Selakovic, Steven Blackburn, Fulfillment Solutions, Inc., New Epic Media, LLC, Vegalab LLC, Vegalab S.A., and Supreme Growers, LLC are **DISMISSED** from the above-styled case.

5. The remaining Defendants must answer the Complaint **no later than February 28, 2019**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of February, 2019.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

27