## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

### WEST PALM BEACH DIVISION

#### Case No. 18-cv-81104-BB (BLOOM)

FILED BY_____D.C.

APR 1 8 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**GREENWAY NUTRIENTS, INC.,**
**a Colorado corp.**

**Plaintiff, v.**

**ECOWIN CO., LTD.;**
**JAMES D. RYAN;**
**MICHAEL J. RYAN;**
**THE RYAN LAW GROUP, LLC.**


**PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' PLEADINGS FOR FRAUD ON THE COURT, SPOLIATION, AND AND ALTERNATIVE MOTION FOR OTHER SANCTIONS PURSUANT TO RULES 26(g)(1),(3) AND 1.540 (a),(b),(1),(2),(3),(4),(5) RELIEF FROM JUDGMENT, DECREES, OR ORDERS AND A MOTION TO BE RELIEVED OF PLAINTIFF'S COUNSEL' MOTION TO WITHDRAW**


COME NOW the Plaintiffs, GREENWAY NUTRIENTS, INC. ("GREENWAY") by and through

its undersigned principal move this Honorable Court for an order striking Defendant's pleadings,

entering default, striking defenses, or such other relief as the Court deems appropriate for fraud

upon the Court, pursuant to federal rules of civil procedure 26(g)(1),(3) AND 1.540 (a),(b),(1),

(2),(3),(4),(5) and a motion to be relieved of Plaintiff's counsel' motion withdraw as counsel of

record on behalf of Greenway on the grounds therefore state as follows:

## INTRODUCTION

Plaintiffs moves to seek an evidentiary hearing and sanctions against Ward, Damon, Posner, Pheterson & Bleau ("Ward Damon") and Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge") (collectively, "Plaintiff's Counsel") Defendants James D. Ryan ("JAMES RYAN"), Michael J. Ryan ("MIKE RYAN"), and The Ryan Law Group, LLC. ("THE RYAN FIRM") on the grounds that the Plaintiff's former attorneys and defendant James Ryan and The Ryan Firm have engaged in deception, and attempted fraud upon the Court, intentional omissions, and the deliberate concealment of material evidence central to the plaintiff's claims. The Plaintiff's counsel, in conjunction with the accused Defendant's misconduct includes, but is not limited to, the following;

- Failure to investigate, and well as intentional omissions of material evidence,

- Knowingly providing the court with false and misleading pleadings or filings,

- Withholding as well as concealing material evidence, failure to communicate, as well as abandoning the Plaintiff's for refusing to agree to release defendants James Ryan, Mike Ryan, and The Ryan Firm, from this action entirely contradicting this courts prior rulings.

- Failure by Plaintiff's counsel to follow through on the promise to provide the Plaintiff's with an expert witness to prepare a report as to the Plaintiff's uncontested motion for default judgement against defendant Ecowin CO. LTD. ("ECOWIN") in a deliberate effort to undermine as well as minimize the plaintiff's damage award again Ecowin by this court.

- Fraud upon the court, pursuant to federal rules of civil procedure 26(g)(1),(3) and 1.540 (a), (b),(1),(2),(3),(4),(5)

- Client abandonment

Florida courts have maintained that if a party files a motion pursuant to rule 1.540(b)(3), pleads fraud or misrepresentation with particularity, and shows how that fraud or misrepresentation affected the judgment, the trial court is ***required*** to conduct an evidentiary hearing to determine whether the motion should be granted. *Robinson v. Weiland, 936 So.2d 777 (Fla. 5th DCA Sep 01, 2006)*.

Rule 1.540(b) provides for relief through an "independent action" and "this rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order or proceeding or to set aside. *Yohanan v. DeClaire, 421 So. 2d 551 (Fla. Dist. Ct. App. 1982)*

Rule 1.540 protects due process by allowing aggrieved parties to dispute and potentially obtain reversal of "final" judicial actions, either because of innocent mistakes, such as clerical errors, or because of culpable misconduct, such as negligence or deliberate fraud. You don't have to be a party to benefit from Rule 1.540. *Anyone* adversely affected by a judicial action, may file a petition for reversal of a judicial action under Rule 1.540.

Moreover, Rule 26(g)(3) includes **NO** *"safe harbor"* allowing a lawyer to correct an offending document further stating that the cour*t **must*** sanction a lawyer for filing an improper certification.

Rule 26(g)(3) does not require a showing of *"bad faith"* either. A lawyer can run into mandatory sanctions, without any safe harbor, for an inadequate investigation of their client's documents. *Brown v. Tellermate Holdings Ltd., 2014 U.S. Dist. LEXIS 90123 (S.D. Ohio July 1, 2014)*

## BACKGROUND AND SUMMARY OF PLAINTIFF'S CLAIMS

Prior to engaging Plaintiff's counsel, Plaintiff's counsel was repeatedly provided with evidence that on or about March 3, 2015, Greenway was first contacted and later met face to face with federal law enforcement officials with the United Staes Department of Homeland Security ("DHS") who were referred to Greenway by Adobe Systems ("ADOBE") and The Microsoft Corporation ("MICROSOFT"). **As evidenced as Exhibit #1**

Plaintiff's counsel was provided with evidence that DHS officials had previously advised Greenway that defendants David Dragan Selakovic ("SELAKOVIC") and Steven Blackburn ("BLACKBURN"), and others closely affiliated with Selakovic and Blackburn, were the primary targets of a massive ongoing federal criminal investigation surrounding the unlawful theft, manufacturing, and distribution of several billion dollars worth of counterfeit, grey market, or unauthorized versions of Adobe', Microsoft' and now Greenway' brand name products illegally bearing each of the aforementioned companies valid US trademarks.  **As evidenced as Exhibit #2**

Plaintiff's counsel was provided with evidence that DHS officials had informed Greenway senior management that Greenway would be the lead victim in the governments criminal case against Selakovic, Blackburn, and other unnamed suspects at that time.

Plaintiff's counsel was provided with evidence that DHS officials had informed Greenway that Greenway would be able to receive compensatory damages and restitution from the more than twenty million dollars ("$20,000,000.00") that DHS, in conjunction with United States

Department of Justice ("USDOJ") had successfully seized during federal civil asset forfeiture proceedings from several other accused suspects affiliated with defendants Selakovic and Blackburn who had already pled guilty to criminal charges in the US government' ongoing criminal investigation entitled "*Operation Software Slashers*".

Plaintiff's counsel advised that on or about October 28, 2016,  DHS officials later informed Greenway that DHS and USDOJ officials would be unable to file criminal charges against Selakovic citing that Greenway would need to return to a federal civil court of law to obtain a favorable decision over Selakovic, before DHS or USDOJ officials would consider further investigating or filing criminal charges against Selakovic, Blackburn, and others affiliated with Selakovic as it related to DHS' criminal investigation surrounding the theft of Greenway' products and business model by the same accused defendants in this action.

Plaintiff's counsel was provided with evidence that defendant James Ryan is in fact, still currently representing and defending David Selakovic' initial default judgement and eventual permanent injunction that was issued against David Selakovic, Blackburn, and others in separate federal civil-theft and trademark infringement related proceedings that are currently still in progress and being conducted by Adobe Systems regarding the same type of accusations against the most of the same accused Defendants in this action. *See Adobe Systems Incorporated v. Bea's Hive LLC, David Selakovic, Steve Blackburn civil case number 9:14-cv-81102*

Plaintiff's counsel was also provided with evidence that this is **NOT** the very first time that Defendant James Ryan and The Ryan Firm have defended Selakovic, Blackburn, or their related alter-ego corporate entities tied to the unlawful theft, manufacturing, and distribution of other companies brand name companies products for years.

Plaintiff's counsel was provided with evidence that Defendant James Ryan had previously
defended Steve Blackburn in no less than two (2) separate and massive federal trademark
infringement proceedings wherein Blackburn had already received two (2) <u>separate permanent
federal injunctions that the Microsoft Corporation</u> was able to obtain over Blackburn. *See No.
04-4017 Microsoft Corporation vs. MBC Enterprises, Steve Blackburn civil case number* (D.C.
No. 2:00-CV-217-PGC), and *Microsoft Corp. v. Big Boy Distribution LLC, 589 F. Supp. 2d
1308 (S.D. Fla. 2008)*

On or about August 17, 2018, Plaintiff's attorneys Ward, Damon, Posner, Pheterson & Bleau
("Ward Damon") and Pierce Bainbridge Beck Price & Hecht LLP ("Pierce Bainbridge")
(collectively, "Plaintiff's Counsel") filed suit on behalf of Plaintiff' Greenway.

Shortly thereafter, on or about September 5, 2018, Plaintiffs' Counsel served Defendant(s) James
Ryan, Mike Ryan, The Ryan Firm., Vegalab, Inc., and Vegalab, LLC.

That same day, on or about September 5, 2018, Defendant James Ryan responded to Plaintiff's
Counsel sending a scathing email threatening to file a Rule 11 motion for sanctions for attorneys
fees and costs if the Plaintiff's Counsel did not immediately agree to withdraw its complaint
against the accused defendants that was replete with the first of many of  James Ryan', Mike
Ryan' and The Ryan firm' misleading statements, deliberate omissions, ad well as untruths to
counsel and this court by stating, in part, the following below; **As evidenced as exhibit #3**

*"**Your allegation that my brother Michael, my firm or I ever represented Greenway Nutrients,
Inc., (Greenway) is false. That never happened. <u>Nor did we ever receive any confidential
information from Greenway or any other entity operated by Mr. Escamilla.</u>"***

6

***For what it's worth,  <u>My brother Tom has never been a member or associate of my firm.</u>"***

On or about September 14, 2018, Plaintiff's Counsel requested that the Plaintiff's provide additional evidence of an attorney-client relationship existing between Defendants James Ryan, Mike Ryan, and The Ryan Firm.

On or about September 14, 2018, Greenway' principal Gustavo Escamilla immediately provided Plaintiff's Counsel with an additional fourteen (14) exhibits in the form of email communications by and between Greenway and James Ryan, Mike Ryan, and their brother Thomas F. Ryan ("TOM RYAN") who also served as Greenway Nutrients, Inc.' general counsel from on or about November 2010 through November of 2012. **As evidenced as exhibit #4**

Greenway' September 14, 2018, email and exhibits to Plaintiff's Counsel included further evidence demonstrating that an attorney-client relationship did, in fact, exist by and between James Ryan, Mike Ryan, The Ryan Firm, as well as James and Mike Ryan' brother Tom Ryan as further described below;

1.  Copy of Greenway' Private Placement Memorandum ("PPM") listing Mike Ryan as attorney of record for Greenway' PPM.

2.  Copy of an email dated May 26, 2011, that was sent to Steve Blackburn with Greenway' attorney Mike Ryan who was also copied regarding a potential investment in Greenway' business model.

3.  Mike Ryan sending Greenway a draft copy of the companies PPM as well as advising Greenway of the United States Securities and Exchange Commissions ("SEC'") regulations as far as making any public announcements.

4.  Email from Greenway to Mike Ryan on or about June 11, 2010, receiving Greenway' confidential business information that Mike Ryan, James Ryan, and Tom Ryan later used to determine that Greenway' entire business model was valued at approximately twenty-five million dollars ($25,000,000.00) at that time.

5.  A solicitation letter that Defendant James Ryan sent to his clients gushingly touting Greenway' PPM and publicly traded entity formation strategy as an extraordinary investment and opportunity and proceeded to offer James Ryan', Mike Ryan', and Tom Ryan' clients a seventeen and a half (17.5%) percent equity stake for four and a half million dollar ($4,500,000.00) investment in Greenway' PPM.

6.  An email that James Ryan sent to his brother Tom Ryan regarding Greenway' PPM and that if any investment was made in Greenway as a result of James Ryan' or The Ryan Firm' efforts to assist Greenway raise capital, that James Ryan and The Ryan Firm were to receive a ten percent (10%) commission and ten percent (10%) in stock ownership in Greenway.

7.  An email dated on or about on or about October 21, 2010, demonstrating Mike Ryan working in conjunction with Greenway' CPA for the preparation of Greenway' audited financials that Greenway intended on later utilizing to take Greenway Nutrients, Inc' business model public.

8.  A copy of an email that Tom Ryan sent to Greenway indicating that Tom Ryan and Mike Ryan had received Greenway' initial fifty thousand dollar ($50,000.00) deposit and five thousand dollar ($5,000.00) wire transfer.

Plaintiff's Counsel was also repeatedly provided with evidence demonstrating that Defendant James Ryan' law partner and brother named Tom Ryan, had also lived as a guest in the home of the Plaintiff's owners from on or about November 2010 through November 2012, while also serving as General Counsel on behalf of Greenway Nutrients, Inc.

## James Ryan, Mike Ryan, and the Ryan Firm File Sham
## Pleadings In An Attempt To Deliberately Mislead This Court

Curiously, after Defendant James Ryan was presented with material evidence that entirely contradicted James Ryan' earlier September 5, 2018, email statements to Plaintiff's Counsel, James Ryan abruptly changed his story of supposedly never having previously represented or received any confidential information from Greenway or one of its principals Gustavo Escamilla.

On or about October 1, 2018, James Ryan and The Ryan Firm filed a motion to dismiss Greenway' claims on behalf of Defendants Vegalab, LLC, Vegalab, Inc., Mike Ryan, James Ryan, and The Ryan Firm. (DE 23).

Included in Defendant James Ryan' motion to dismiss (DE 23), James Ryan proceeded to engage in a pattern of dishonest behavior by filing sham pleadings omitting material facts that any reasonable person should have known was being presented for an improper purpose such as to increase the costs of litigation, harass, and delay proceedings stating in part, the following, as described in more detail below;

"*Ryan Law Group, PLLC was formed in June of 2012 and began doing business in October 2012. **This was the first time Michael Ryan and James Ryan began practicing law together.**"

In doing so, James Ryan intentionally failed to disclose to this court that on or about **October 21, 2010, a full two (2) years prior to** that James and his brother Mike Ryan had previously formed the legal entity, practiced law together, and were equal partners and shareholders in the law firm named Ryan & Ryan Lawyers, LLC during the same time period in question. **As evidenced as exhibit #5**

Even worse, Plaintiff's counsel was made of aware of James and Mike Ryan having previously practiced law together as Ryan & Ryan Lawyers, LLC, yet failed to protect the Plaintiff's best interests by allowing Defendant James Ryan to brazenly mislead and advise the court of the following;

"Count IV also states in allegation 145 the RYANS " disclosed the opportunity to create a publicly-traded firm through merger with a publicly-traded shell like HPC Acquisitions,…There is no allegation that HPC had ever agreed to be acquired by GREENWAY, **that the RYANS knew HPC had agreed to an acquisition by GREENWAY, that the RYANS alleged effort to help SELAKOVIC acquire HPC was unjustified or the GREENWAY suffered any damage by not purchasing the company for itself**."

"It (Greenway) also attempts to claim it was a breach of a duty by telling SELAKOVIC about an opportunity to create a "publicly-traded firm through merger with HPC Acquisitions, Inc." This count incorporates paragraph 42 wherein GREENWAY alleges "James and Michael Ryan introduced Mr. Escamilla to Eric Hanson, a Minnesota-based investor who was part of a group that owned a publicly-traded shell company called HPC Acquisitions, Inc." (HPC) who discussed "the possibility" of a merger."

"More importantly, the allegations, if taken as true, establish the **RYANS disclosed an opportunity to GREENWAY, not the other way around. The alleged opportunity to merge with HPC is not alleged to have been owned or pursued by GREENWAY or that this particular opportunity was somehow more advantageous than any other "shell company"**. GREENWAY has not pleaded facts from which the court could conclude the information about HPC was confidential or damages arising from the disclosure of HPC's availability to another."

**Plaintiff's Counsel Was Once Again, Provided With Material Evidence Entirely Contradicting James Ryan', Mike Ryan', And The Ryan Firm' Ongoing Deception, Unethical Conduct, As Well As Sham Pleadings Before This Court.**

On or about January 9, 2019, Plaintiff's counsel was once again, provided with material evidence entirely contradicting James Ryan' false assertions that James Ryan and Mike Ryan both presented to this court in defendant James Ryan' initial motion to dismiss (DE 23) that Plaintiff's Counsel intentionally concealed from being disclosed that included, but was not limited to, the following evidence below;

On or about January 11, 2011, prior to Greenway Nutrients, Inc. ever holding any discussions regarding a potential reverse merger with Eric Hanson and defendant Vegalab, Inc. (then HPC), Tom Ryan and Mike Ryan had drafted and prepared a non-disclosure/non-circumvent ("GREENWAY-HPC NDNCA") agreement that was executed by and between Greenway Nutrients, Inc. and Eric Hanson who was representing Vegalab, Inc. (then HPC) at that time. **As evidenced as exhibit #6**

Plaintiff's Counsel was in possession of the Greenway-HPC NDNCA and knew that Defendant James Ryan, Mike Ryan, and The Ryan Firm continued to engage in dishonesty, yet defense counsel failed to recall and Plaintiff's Counsel deliberately failed to disclose this material evidence that is central to the Plaintiff's claims to this court.

The Greenway-HPC NDNCA further stated that Eric Hanson or anyone affiliated with Vegalab, Inc (then HPC) was not permitted to use Greenway Nutrients, Inc' confidential business information for any purpose other than discussions with Greenway Nutrients, Inc, including to solicit business from or to provide any services or products to any other party.

The Greenway-HPC NDNCA demonstrated that Eric Hanson while also acting on behalf of Vegalab, Inc (then HPC) and with the knowledge and assistance of James and Mike Ryan, proceeded to intentionally move Greenway' opportunity into a potential reverse merger deal with Vegalab, Inc (then HPC) away from Greenway and delivered Greenway' confidential and attorney-client business relationships and information to Vegalab, SA, David Selakovic, and defendant Ecowin instead.

The Greenway-HPC NDNCA also demonstrated Greenway' intentions to create a publicly traded entity through a reverse merger with Vegalab, Inc. (then HPC) that manufactured, developed, and distributed organic plant-based pesticides and fungicide products much like Defendants James Ryan, Mike Ryan, and the Ryan Firm later completed with Eric Hanson, Defendant Selakovic, and Ecowin instead.

Moreover, Vegalab SA and Ecowin' unlawful exclusive distribution dated October 19, 2012, specifically identified Vegalab, Inc. (then HPC) as a suitable corporate vehicle that James Ryan,

Mike Ryan, and The Ryan Firm were fully aware of yet, have proceeded to embezzle Greenway' confidential attorney-client business information for their own personal financial gain and use.

To compound the Plaintiff's ongoing malfeasance concerns, Plaintiff's counsel was also provided with evidence that James Ryan purposely failed to disclose that James Ryan' brother Tom Ryan was in fact, an equal partner and shareholder in the law firm and entity of Ryan and Ryan Attorneys, P.A. during the same time period that Tom Ryan served as General counsel on behalf of Greenway Nutrients, Inc. that entirely contradicted James Ryan' September 5, 2018, email statements to Plaintiff's Counsel and more importantly, this court.

As one of many examples, not only did James Ryan and The Ryan Firm intentionally mislead your honor, James Ryan has at best, attempted to also hoodwink Plaintiff's Counsel and this court as to the true facts surrounding James Ryan' brother Tom Ryan having supposedly never been associated or a member of the law firm and entity of Ryan and Ryan Attorneys, PA., in whereas James Ryan stated:

> *"For what it's worth,  My brother Tom has never been a member or associate of my firm."*

Notwithstanding, Plaintiff's Counsel also repeatedly being made aware of Tom Ryan practicing law with his brother James Ryan while Tom Ryan served as General counsel of behalf of Greenway Nutrients, Inc., yet, Plaintiff's Counsel failed to disclose the existence of the Greenway-HPC-NDNCA while continuing to allow James Ryan and The Ryan Firm to file multiple sham pleadings all throughout these proceedings cavalierly making a full mockery of this court.

### PLAINTIFF'S COUNSELS PROCEEDS TO ADVISE GREENWAY THAT IF GREENWAY DID NOT AGREE TO RELEASE JAMES RYAN, MIKE RYAN, AND THE RYAN FIRM FROM THIS ACTION THAT PLAINTIFF'S COUNSEL WOULD BE ABRUPTLY WITHDRAWING AS COUNSEL OF RECORD ENTIRELY CONTRADICTING THIS COURTS PRIOR RULINGS

Notwithstanding the fact that at **NO TIME** did James Ryan, Mike Ryan, or The Ryan Firm, **ever once provide Plaintiff' Counsel with any physical evidence** that contradicted or refuted any of Greenway' more than one hundred (100+) plus individual exhibits in the form of email communications, distribution agreements, and most importantly the Greenway-HPC NDNCA agreement that Tom Ryan, as well as Mike Ryan did, in fact, draft and prepare on behalf of Greenway Nutrients, Inc.

On our about March 29, 2019, Plaintiff's Counsel filed its motion to withdraw as counsel of record on behalf of Greenway (DE 99) stating in part:

*"Following the March 4, 2019 mediation in this case and this Court's March 6, 2019 Order on Default Judgment Procedure and on Motion to Stay (DE 92), ordering Plaintiff to either file for default final judgment against Ecowin or file a notice of joint liability, Pierce Bainbridge has communicated extensively with Plaintiff regarding strategy going forward against Ecowin and/or the Ryan Defendants...*

*In the course of those communications, it has become clear that professional considerations require termination of Plaintiff's Counsel's representation of Plaintiff...*

*Further, withdrawal is permitted here under Rule 4-1.16(b). First, withdrawal does not materially adversely affect the interests of Plaintiff"*

**The true circumstances** surrounding Plaintiff's Counsel deciding to inexplicably withdraw as counsel of record on behalf of Greenway could not possibly ever be further from the truth.

On or about March 5, 2019, for reasons still yet to be explained to the Plaintiffs and this court, Plaintiff's Counsel emailed Greenway advising Greenway that if Greenway did not agree to immediately release defendants James Ryan, Mike Ryan, and The Ryan Firm from this action that Plaintiff's Counsel would be inexplicably notifying this court of Plaintiff's Counsel' intentions to withdrawal as attorneys of record on behalf of Greenway. **As evidenced as exhibit #7**

Curiously, just a few weeks prior to, on or about February 14, 2019, the court issued an Omnibus Order (DE 81) finding that Defendants James Ryan, Mike Ryan, and The Ryan Firm could be held accountable as to the Plaintiff's tortious interference and breach of fiduciary duty claims further noting that Defendant James Ryan had *"flagrantly misquoted the law"*.

Plaintiff's Counsel were also in possession of the Greenway-HPC NDNCA that entirely undermined Defendants James Ryan' fraudulent admissions before this court as it relates to James and Mike Ryan' representing Defendant Vegalab, Inc. (then HPC), in direct violation of Greenway' NDNCA with Eric Hanson, that James Ryan' law partners and brothers Tom and Mike Ryan themselves, had in fact, drafted on behalf of Greenway Nutrients, Inc.

More importantly, Plaintiff's Counsel knew or should have known that Plaintiff' Counsel failure to disclose James Ryan' fraudulent admissions before this court or ever properly advising the court of the existence of the Greenway-HPC NDNCA prior to requesting to withdrawing as

counsel and abandoning Greenway **WOULD IN FACT**, materially and adversely affect the interests of Greenway.

Plaintiff's Counsel were also made aware of the fact that defendant James Ryan, Mike Ryan, and their brother Tom Ryan, are all now practicing law out of Vegalab, Inc.' corporate offices located at 636 US-1 #110, North Palm Beach, FL 33408.

Plaintiff' Counsel knew that James Ryan, Mike Ryan, and The Ryan Firm admitted to taking part in discussions regarding a potential reverse merger between Greenway and Eric Hanson and Vegalab, Inc., (then HPC) as evidenced in a email from Tom Ryan to Eric Hanson stating in part, as described more in detail below: **As evidenced as exhibit #8**

>  *"Eric and Nance, I enjoyed discussing what our company, Greenway Nutrients is doing...*
>  *2012 is going to be a great year... Tom Ryan"*

Plaintiff' Counsel were provided with evidence that James Ryan' law partners Tom and Mike Ryan had drafted and prepared the Greenway- HPC NDNCA agreement yet, continued to allow James Ryan and The Ryan Firm to represent Vegalab, Inc. in the process of filing numerous sham pleadings egregiously riddled with false and misleading statements before this court.

## PLAINTIFF'S COUNSELS FIRST PROMISES, THEN INEXPLICABLY REFUSES TO PROVIDE GREENWAY WITH AN EXPERT WITNESS WITHOUT PROPER INVESTIGATION OR CONSIDERATION PROVIDED TO PLAINTIFF'S COUNSEL BY THE ACCUSED DEFENDANTS THAT  REFUTED ANY OF GREENWAY' UNCONTESTED MATERIAL EVIDENCE AGAINST DEFENDANT ECOWIN

Plaintiff's Counsel would like to mislead your honor and this court to believe that there is some mysterious evidence that would somehow be detrimental or prejudice the Plaintiff's interests that **is a blatant falsehood that the Plaintiff's wholeheartedly welcomes this court to immediately conduct an evidentiary hearing to review**.

On or about March 5, 2019, after receiving attorney Plaintiff's counsels email demanding Greenway release James Ryan, Mike Ryan, and The Ryan Firm from this suit, Plaintiff's senior management met face to face with attorney John M. Pierce who is Greenway' lead attorney, and the companies original contact with Pierce Bainbridge.

During Greenway' meeting with John Pierce, Pierce explained that if Greenway would consider entertaining releasing Defendants James Ryan, Mike Ryan, and The Ryan Firm from this action, that Pierce Bainbridge would hire "*one of the best expert witnesses*" to assist Greenway prepare a report to properly asses the companies multi-million dollar uncontested motion for default judgement against Ecowin.

Greenway initially agreed to entertain potentially releasing James Ryan, Mike Ryan, and The Ryan Firm, pending the review of the proposed release, and more importantly, Pierce Bainbridge acquiring an expert witness to assist Greenway assess the companies damages against Ecowin.

On or about March 12, 2019,  Pierce Bainbridge attorney Jonathan A. Sorkowitz, emailed Greenway requesting that Greenway supply Plaintiff's counsel with evidence to support Greenway' damages against Ecowin.

On or about March 13, 2019, Greenway did in fact, supply Plaintiff's counsel with copies of the companies 2011 and 2012 corporate tax returns, Greenway' CPA contact information, Greenway'

2012 national distribution catalog evidencing the companies already well-established national retail, wholesale, and distributor pricing in the market.

Greenway also supplied Plaintiff's counsel with evidence of Greenway' proprietary trade secret dilution and mixing ratios demonstrating that after Greenway reformulated Ecowin' highly concentrated products into Greenway' bottles bearing Greenway' trademark and No Powdery Mildew ("NPM") product label, was valued at approximately eleven thousand four hundred fifty six dollars ($11,456.00) per each gallon of Ecowin' NPM base concentrate product to Greenway in the market.

On or about March 11, 2019, Greenway was able to demonstrate that each gallon of Ecowin' base powdery mildew product made approximately one hundred and twenty eight (128) bottles of NPM product that retailed for eighty nine dollars and fifty cents ($89.50) each totaling eleven thousand four hundred and fifty six dollars ($11,456.00) per gallon to Greenway. **As evidenced as exhibit #9**

To compound the Plaintiff's confusion, on or about March 13, 2019, Greenway also supplied Plaintiff's counsel with Greenway' newly discovered international shipping records demonstrating that during the same time period that Ecowin was contractually obligated to continue to deliver products to Greenway, that Ecowin had unlawfully shipped and delivered approximately eight thousand eight hundred and eighty nine gallons (8,889) of Ecowin' valuable base powdery mildew product to Selakovic' company Fulfillment Solutions Services, LLC. ("FSS") instead.

The value of Ecowin' unlawful shipments to FSS instead of Greenway was worth approximately one hundred one million eight hundred thousand three hundred and eighty four dollars ($101,832.384.00) that the accused defendants have unlawfully profited off of.

Greenway had previously supplied Plaintiff's Counsel with evidence that the accused defendants proceeded to continue to illegally profit off of the unlawful sales of Greenway' NPM products by continuing to illegally manufacture, distribute, and sell copious amounts of Greenway' NPM as well as counterfeit versions of Greenway No Spider Mites ("NSM") products bearing Greenway' trademark through at least October 2016 and without any compensation to Greenway.  **As evidenced as exhibit #10**

On or about March 13, 2019, the Plaintiff's also questioned Plaintiff's Counsel as to the status of Greenway' expert witness that Greenway' lead attorney John M. Pierce had promised to provide to Greenway.

It was at that time that Plaintiff's counsel explained that Greenway **would not** have ample time to secure an expert witness to assist Greenway assess the companies damages given the court' limited timeframe that Greenway' had to file its uncontested motion for default judgement against Ecowin that was initially due on or about March 20, 2019, in spite of attorney John Pierce' prior promise to do so. **As evidenced as exhibit #11**

In furtherance of Plaintiff's counsel misleading and deliberate omissions from being disclosed to this court, from on or about March 14, 2019, through March 28, 2019, Greenway continued to respectfully desperately beg and plead for attorney John Pierce and Plaintiff's Counsel' to

provide Greenway with an actual dollar amount or award figure that Plaintiff's counsel intended on presenting to the court.

In another example of Greenway' confusion, is that on or about March 14, 2019, Greenway proceeded to question attorney John Pierce about Ecowin' uncontested motion for default judgement that John Pierce avoided responding to Greenway' inquiry by stating, in part:

***"Hey Gus. Sorry, I am traveling next few days, but if there is issue you need addressed right away that Jon S can't address, I am looping in our GC Carolynn Beck and head of our NY office David Hecht.***

On or about March 25, 2019, after still not receiving any dollar amount figures pertaining to Ecowin' unlawful shipment of more than 8,889 gallons of Ecowin' powdery mildew products to FSS instead of Greenway, the Plaintiff's once again, respectfully inquired as to the status of Ecowin' uncontested motion for default judgement award and specifically, how Ecowin' unlawful shipments of 8,889 gallons of its base concentrate powdery mildew product to FSS would potentially affect Greenway' damages against Ecowin. **As evidenced as exhibit #12**

On or about March 27, 2019, Plaintiff's counsel proceeded to request Greenway' 2013 corporate tax returns explaining that Plaintiff's counsel would be unable to provide Greenway with any dollar amount figure or damage award estimate against Ecowin until Greenway did so.

On or about March 27, 2019, Greenway immediately responded to Plaintiff's Counsel demonstrating that Plaintiff's Counsel was in fact, previously provided with Greenway' 2011 and 2012 tax records and CPA' contact information on or about March 13, 2019, and that if Plaintiff's Counsel needed this information immediately that Greenway' CPA indicated that Plaintiff's

Counsel could file and an IRS Form 8821 or 4506 to acquire those records on behalf of Greenway and why have Plaintiff's Counsel not simply contacted Greenway' CPA?

On or about March 25, after still not receiving any damage award figures from Plaintiff's counsel, Greenway once again, attempted to contact Greenway' lead attorney John Pierce respectfully begging for just a few moments of John Pierce' time, by stating in part, as described in more detail below: **As evidenced as exhibit #13**

"*Since on or about March 14, 2019, Liza and I have been repeatedly attempted to reach you regarding Greenway' uncontested motion for default judgment against defendant Ecowin that was originally due to be submitted to the court on March 20, 2019, and is now due on March 28, 2019, and we have we still have yet to hear from you regarding our confusion or receive your input and professional assessment.* "

"*Reason being, on or about March 7, 2019, when Liza and I met with you at your office, you were kind enough to promise us that Greenway would be acquiring the professional assistance of an expert witness to help assess the companies damages against defendant Ecowin going forward.*"

"*A few days later, on or about March 12, 2019, Jonathan Sorkowitz abruptly informed Greenway' senior management that Greenway would not have ample time to acquire the assistance of an expert witness and that Greenway would have to prove the companies uncontested damages against defendant Ecowin on our own.*"

"*This oversight could potentially cost Greenway millions of dollars in further damages, and since then, Greenway' senior management has been attempting to reach you to cure our obvious*

*confusion as it relates to Jonathan' fiduciary duty to properly assess and maximize Greenway'*

*uncontested damages that the company may be entitled to receive against Ecowin."*

*We were wondering how are we supposed to assess Greenway Nutrients, Inc' damages as a result*

*of Ecowin' bad faith conduct?*

On or about March 25, 2019, attorney John Pierce angrily responded to the Plaintiff's innocent

request for damages by stating, in part, as described in more detail below:

*"Carolynn or some partner you need to deal with this. I am closing massive deal this week.*

*Gus, litigation is a fluid process. It is intellectual combat. It is not conducted via CYA e-mails.*

*You need to stop."*

*"I assure you further threats will not receive such a warm response."*

*"I am not in the mood for your ten thousand word e-mails with multiple fonts bolded with*

*underlines and italics. It is juvenile."*

*"I cannot be the person dealing with default judgment prove-up hearings."*

Additionally, and most importantly, on or about March 27, 2019, Greenway advised Plaintiff's

Counsel that Greenway would **NOT AGREE TO CONSENT** to Plaintiff's Counsel

inexplicably abandoning Greenway and withdrawing as counsel of record requesting that

Plaintiff's Counsel immediately notify the the court to set an evidentiary hearing so that

Greenway may have the opportunity to apprise Judge Bloom of James Ryan and The Ryan Firm'

sham pleadings before this court. **evidenced as exhibit #14**

Once again, instead of simply responding to or answering the Plaintiff's questions, Plaintiff's leads attorney John Pierce proceeded to get abusive and angry by stating, in part., as described in more detail below; **As evidenced as exhibit #15**

*"Didn't I tell you to stop threatening me/us and to leave me off your emails? I do not "consent" to that. BTW, we will adhere to the ethical rules regardless of what you consent to. We will not pursue claims against parties without merit.*

*We are withdrawing due to your lack of cooperation and other issues. CB1, cite the relevant provisions of the engagement agreement. Until the withdrawal, we will continue to zealously represent your interests as required to do under the ethical rules.*

*Now leave me alone until you force me to be deposed and testify at trial. Othereise, I do not want to see you or hear your name even. This will not be a pleasant experience for you."*

On or about March 28, 2019, Greenway then proceeded to kindly respond to attorney John Pierce' unjustified angry childish outburst by stating in part, the following: **As evidenced as exhibit #16**

*"Good morning John,*

*We do not understand what you are attempting to convey or why you feel the need to get upset with your clients John.*

*Your responses to our inquiries are simply unacceptable.*

*You are Greenway Nutrients, Inc' lead attorney and why is it somehow okay for you to be too busy to make good on your promises, communicate, or respond to your client's inquiries about*

*the conduct of Mike Ryan, James Ryan, or The Ryan Law Group, LLC, in our case or Greenway'*

*questions as it relates to the motion for default judgment against defendant Ecowin Co. LTD?*

*Now we are feeling even more abandoned and even more confused because we are having a very*

*difficult time understanding* ***what prompted you to get so upset or with your clients that would***

***warrant your threatening to abandon your clients and withdraw as counsel of record?***

*"Please provide your legal reasoning to your in writing behind your wanting to abandon*

*Greenway Nutrients, Inc., and withdraw as counsel of record for refusing to release Greenway*

*Nutrients, Inc.' former attorneys James Ryan, Mike Ryan, or the Ryan Law Group, LLC from this*

*litigation. We want to know and are asking you to respond without getting angry to defensive. "*

*"Moreover, on or about September 5, 2018, when we initially served defendant James Ryan,*

*Mike Ryan, and The Ryan Law Group, LLC., James Ryan wrote you and Jonathan and a scathing*

*letter stating amongst other things, the following untruths below and attached for your*

*convenience."*

**"Your allegation that my brother Michael, my firm or I ever represented Greenway Nutrients,**

**Inc., (Greenway) is false. That never happened. Nor did we ever receive any confidential**

**information from Greenway or any other entity operated by Mr. Escamilla.**

**"For what it's worth,  My brother Tom has never been a member or associate of my firm."**

In spite of Greenway' former attorney James Ryan' obvious deceit, blatant conflicts of interests,

numerous sham pleadings, as well as egregious attorney misconduct that has continued to place

in this action, attorney John Pierce proceeded to **NOT COMMUNICATE OR RESPOND** to

the Plaintiff's March 28, 2019, email and has continued to fail to provide Greenway with any

reasonable explanation or justifiable legal basis as to why Greenway should be compelled to release Defendants James Ryan, Mike Ryan, and The Ryan Firm from this action that is in direct conflict with your Honor' rulings.

On or about March 29 2019, Plaintiff' Counsel proceeded to file its motion to withdraw as counsel of record on behalf of Greenway without James Ryan, Mike Ryan, and The Ryan Firm ever once providing Plaintiff's Counsel with any evidence whatsoever that contradicted any of the Plaintiff's more than one hundred plus (100+) individual exhibits that Plaintiff's Counsel is already in possession of and without performing any discovery or taking any depositions that was entirely adversarial and to the severe detriment of Greenway' best interests.

Included in Plaintiff's counsel' motion to withdraw, Plaintiff's counsel proceeded to mislead this court by stating the following;

*"Pursuant to Local Civil Rule 11.1(d)(3), Plaintiff's Counsel has provided advance notice of withdrawal to Plaintiff and opposing counsel. Additionally, per the Rule's requirement, Plaintiff's current mailing address is 405 South Platte River Drive, Denver, CO 80223."*

Plaintiff's counsel is entirely aware that Greenway' operates out of Burbank, California and has sent mail to the plaintiff's Burbank, California address as late as Wednesday, April, 3, 2019.

Plaintiff's counsel knows that Greenway no longer has offices located at 405 South Platte River Drive, Denver, CO 80223, and mysteriously provided this court with false address information that Plaintiff's counsel was aware that Greenway has not resided at that previous Colorado address since late 2011 that has baffled the Plaintiff's as to why.

Greenway has continued to suffer damages, be adversely affected, unduly prejudiced, as well as deprived of its rightful day in court, by Plaintiff's counsel who took advantage of and later abandoned Greenway while curiously omitting material evidence surrounding James Ryan and The Ryan Firm' egregious attorney misconduct that Plaintiff's counsel knew or should have known was presented for an improper purpose that has tainted these entire proceedings.

## THE WELL-ESTABLISHED CASE LAW SUPPORTS STRIKING DEFENDANTS' PLEADINGS IN THIS CASE AS A SANCTION FOR MISCONDUCT

Where a party deliberately frustrates the discovery process through deliberate omissions, false testimony, conscious concealment of information, and relevant evidence, the striking of pleadings and entry of a default is well within the trial court's discretion, even if the aggrieved party, through diligence or luck, eventually uncovers the truth. This is especially true where, as here, it is the party itself, who is to blame. In cases of a party's willfulness and bad faith, Florida courts have consistently affirmed the entry of the most severe sanctions.

While it is anticipated that Plaintiff's Counsel as well as Defendant James Ryan and The Ryan Firm will act in concert to contend the above described conduct was unintentional, accidental or otherwise excusable, an objective assessment of Plaintiff's counsel and Defendant's misconduct compels a finding that this misconduct was far from innocent and has been designed to obstruct Plaintiffs' discovery and ability to prove the elements of Plaintiffs' case. Worse, Defendant's misconduct appears intended to even lead Plaintiffs and the Court to believe that James Ryan, Mike Ryan, or The Ryan Firm never represented Greenway Nutrients, Inc was, in fact, false evidence.

Where a party gives false information central to its own claim or defense or a portion of that claim or defense, fraud permeates the entire proceedings and the court should strike the party's pleadings. *Hagner v. Allstate Ins. Co., 867 So. 2d 1202 (Fla. 5th DCA 2004); Brown v. Allstate Ins. Co., 838 So. 2d 1264 (Fla. 5th DCA 2003); Distefano v. State Farm, 846 So. 2d 572 (Fla. 1st DCA); Hogan v. Dollar Rent a Car, 783 So. 2d 1211 (Fla. 4th DCA 2001); Baker v. Myers Tractor Services, Inc., 765 So. 2d 149 (Fla. 1st DCA 2000); Carbrezio v. Fortune International Realty, 760 So. 2d 228 (Fla. 3d DCA 2000); Simmons v. Henderson, 745 So. 2d 1031 (Fla. 2d DCA 1999); Stavely v. Branton, 743 So. 2d 633 (5th DCA 1999); Desimone v. Old Dominion Ins. Co., 740 So. 2d 1233 (Fla. 4th DCA 1999); Tramel v. Bass, 672 So. 2d 78 (Fla. 1st DCA 1996); Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989). See Also Kolinski, Fraud on the Court as a Basis for Dismissal with Prejudice or Default, 78 Feb Fla.B.J. 16 (February 2004); and Blackwell, The "Big Lie" Contrary to what you may have Heard on the Evening News, False and Misleading Testimony by a Civil Litigant Can and Does have Serious Consequences, 73 – Aug Fla. B.J. 20.*

The decision to impose sanctions, and the choice of sanctions imposed, may be reversed only for abuse of discretion. *U.S. Fire Ins. Co. v. C & C Beauty Sales, Inc., 674 So. 2d 169 (Fla. 3d DCA 1996).* That means that an appellate court must affirm unless reasonable persons could not differ with the conclusion that the decision is unreasonable. *Mercer v. Raine, 443 So.2d 944, 946 (Fla. 1983); Mack v. National Constructors, Inc., 666 So. 2d 244 (Fla. 3d DCA 1996).*

Where a party lies under oath, consciously conceals discoverable information, and intentionally destroys relevant items, the sanction of default is necessary and proper even if diligence or luck permits the party seeking the discovery to proceed to trial without actual prejudice. *Mercer v. Raine, 443 So. 2d 944 (Fla. 1984). See Tramel v. Bass, 672 So. 2d 78 (Fla. 1st DCA 1996), rev.*

*denied, 680 So. 2d 426 (Fla. 1996). See also Mendez v. Blanco, 665 So. 2d 1149 (Fla. 3d DCA 1996).*

In *Mercer,* the Supreme Court rejected the Defendant's contention that it was an abuse of discretion to enter a default "in the absence of a finding ... that plaintiffs suffered any undue prejudice due to the defendant's noncompliance." *443 So. 2d at 945*. The Court held that the sanction was within the trial court's discretion based on evidence that the Defendant's violation was willful. Because of the willfulness, the Court did not require prejudice

In *Tramel,* the plaintiff sought discovery of a videotape of the event that gave rise to the lawsuit. The defendant produced a tape that it had intentionally altered to delete a damaging segment. The plaintiff could not have been prejudiced because he already had obtained an unedited tape from another source.

The trial court in *Tramel* found the alteration of the videotape was an intentional attempt to mislead the plaintiff, the defendant's own attorney, and the court. *Id*. at 82. Although no specific discovery order was violated, and although the plaintiff could not have been misled, the trial court held that it had the inherent authority to impose the severest of sanctions to remedy that fraud upon the court. *Id*. The First District agreed and affirmed the default judgment and order striking the answer and affirmative defenses. No prejudice was required.

Similarly, in U.*S. Fire Ins. Co. v. C & C Beauty Sales, Inc., 674 So. 2d 169* (Fla. 3d DCA 1996), the Court affirmed a default for persistent false denials that a document existed and refusals to produce it, even though the defendant finally produced the document. *See generally Mendez, 665 So. 2d at 1150* (affirming dismissal where the plaintiff "committed serious misconduct by repeatedly lying under oath during a deposition").

Courts recognize the goals of penalizing the offending party and of deterring others from future misconduct. "The more culpable Defendant's conduct, the greater the sanction that is required. If Defendant's conduct is highly culpable, *then prejudice to Plaintiff is not the focal point*. The judicial system must be vindicated and like-minded parties deterred." *BankAtlantic v. Blyth Eastman Paine Webber, Inc.*, 127 F.R.D. 224, 235 (S.D. Fla. 1989)(emphasis added), aff'd, 12 F. 3d 1045 (11th Cir. 1994).

In a case cited approvingly in *Mercer v. Raine, 443 So. 2d at 945-46*, the U.S. Supreme Court recognized the importance of the goals of punishment and deterrence. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639 (1976). NHL arose out of a dismissal for failure to timely answer interrogatories as ordered. The Supreme Court quashed the decision reversing that dismissal order and held: "the most severe in the spectrum of sanctions ... must be available ... in appropriate cases, *not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.*" Id. at 643 (emphasis added). Florida law is in accord. *Tramel v. Bass,* 672 So. 2d at 84 (Fla. 1st DCA), rev. denied, 680 So. 2d 426 (Fla. 1996) *citing NHL. See also Heimer v. Travelers Ins. Co.*, 400 So. 2d 771, 773 (Fla. 3d DCA 1981) (party was to be "punished for willful misconduct" by striking of answer).

Florida law as illustrated by *Tramel and U.S. Fire* permits defaults and sanctions in the absence of actual prejudice where the violation is willful.

It is settled that if a party submits materially false evidence in a civil proceeding, whether in discovery or at trial, the court has the discretion to strike the offending party's claim or defense as a sanction. See *Long v. Swofford,* 805 So. 2d 882 (Fla. 3d DCA 2001); *Leo's Gulf Liquors v. Lakhani*, 802 So. 2d 337 (Fla. 3d DCA 2001); *Rosenthal v. Rodriguez,* 750 So. 2d 703 (Fla. 3d

DCA 2000); *Metropolitan Dade County v. Martinsen,* 736 So. 2d 794 (Fla. 3d DCA 1999);

Hanono v. Murphy, 723 So. 2d 892 (Fla. 3d DCA 1998); *O'Vahey v. Miller,* 644 So. 2d 550 (Fla.

3d DCA 1994); *Young v. Curgil,* 358 So. 2d 58 (Fla. 3d DCA 1978). The sham pleading rule may

also be applicable. *See Fla. R. Civ. P. 1.150.*

In *Rosenthal v. Rodrigues,* 750 So. 2d 703 (Fla. 3d DCA 2000), a plaintiff's entire lawsuit was

dismissed with prejudice for concealing prior injuries in her deposition. The Appellate Court

concluded that the trial court did not abuse its discretion when it exercised its inherent authority

to strike her pleadings and dismiss her cause with prejudice. Courts throughout this state have

repeatedly held "'that a party who has been guilty of fraud or misconduct in the prosecution or

defense of a civil proceeding should not be permitted to continue to employ the very institution it

has subverted to achieve her ends.'" *Metropolitan Dade County v. Martinsen,* 736 So. 2d 794,

795 (Fla. 3d DCA 1999) *(quoting Hanono v. Murphy,* 723 So. 2d 892, 895 (Fla. 3d DCA 1998));

*see also Cox v. Burke,* 706 So. 2d 43, 47 (Fla. 5th DCA 1998); *O'Vahey v. Miller,* 644 So. 2d 550,

551 (Fla. 3d DCA 1994); *Kornblum v. Schneider,* 609 So. 2d 138, 139 (Fla. 4th DCA 1992).

Given Defendant's sham pleadings and false and misleading admissions in filings presently

before this court, Defendant's misconduct warrants sanctions by this Court. Fraud has permeated

these proceedings. Neither Plaintiffs Counsel nor this Court can rely upon the candor and

veracity of this Defendant that it has complied in good faith during these proceedings or that it

will do so in the future or at trial.

While Plaintiffs' counsel was provided with evidence of James Ryan' and the Ryan Firm' false

admissions before this court, that is precious little assurance that there is not even more material

evidence that has been falsified, omitted, discarded, destroyed or withheld by Plaintiff's counsel

and this Defendant. It would not be an abuse of discretion for this Court to use its inherent

authority to impose sanctions upon Plaintiff's and Defendants counsel under these

circumstances. Enough is enough.

## **PRAYER FOR RELIEF**

WHEREFORE,  Greenway move this Court to conduct an ***in-camera*** evidentiary hearing for a

determination of these issues, immediately reinstate Plaintiff's counsel as attorney of record on

behalf off the Plaintiff's with proper monitoring and under the same terms of Plaintiff's counsel

original retainer agreement,  or alternatively impose sanctions deemed appropriate by the Court.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, by e-mail, this 16th day of April, 2019, to: John M. Pierce, Esq. , 355 S. Grand Avenue, 44th Floor, Los Angeles, CA 90071, <u>jpierce@piercebainbridge.com</u>, Jonathan A. Sorkowitz, Esq. , 277 Park Avenue, 45th Floor, New York, NY 10172, <u>jsorkowitz@piercebainbridge.com</u>, Ronald S. Nisonson, Esq., 4420 Beacon Circle, West Palm Beach, Florida 33407-3281, <u>rnisonson@warddamon.com,</u> James D. Ryan, 636 US Highway One, Suite 110 North Palm Beach, Florida 33408, jdr@ryanlawgroup.net.

/s/ Gustavo Escamilla

---

Gustavo Escamilla
Greenway Nutrients, Inc.
Principal and adversely affected party to this
action
135 East Olive Ave, #4103
Burbank, CA. 91503
Phone: (818) 355-0062
Fax: (818) 263-1845
Email: gescamilla@ymail.com

# Exhibit 1

Case 2:17-cv-07453   Document 1   Filed 10/12/17   Page 30 of 73   Page ID #:30

---

**Bea's Hive conspiracy**                                          Thursday, February 26, 2015 9:49 AM · h

From:   "Suarez   Carlos" <Carlos.Suarez@ice.dhs.gov>

To:   "gescamilla@ymail.com" <gescamilla@ymail.com>

                                                              Full Headers Printable View

Mr. Escamilla,

I was given your information by representatives with Adobe Systems and the Microsoft Corporation.  If it all possible, I would like to conduct an interview with you either on 3/2/2015 or 3/3/2015, concerning the information you included in an email sent on October 5, 2014, to Michael A. Sink at his email address, MSink@perkinscoie.com.  We have a criminal investigation open out of the Kansas City Office and I will only be in town on the days I noted above.

I attempted to leave you a message on the phone listed on the email (818-355-0062), but when I tried it today, it seems to be disconnected.  My contact information is listed below.  Please reach out to me at your earliest convenience so we can set a time and date.

Thanks,

**Carlos Suarez**
Special Agent
Homeland Security Investigations
HSI Kansas City
Office (816) 802-8586
Cell (816) 914-4959
E-mail: Carlos.Suarez@dhs.gov

# Exhibit 2

On Monday, August 6, 2018 7:20 AM, Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com> wrote:


Gus:

We appreciate your enthusiasm to gather documentation for the case, but please leave the external communications to us.  There's an established procedure for getting documents from the federal government (through the Freedom of Information Act) that has to be followed (and it doesn't involve the Crime Victims' Act).  Also, our engagement with you doesn't cover representation regarding the DHS investigation; we only represent you in the civil case against Selakovic.  We'll launch a FOIA request at the appropriate time if it looks like the Adobe issues are going to be germane.

It's important that we present a united front to the outside world, so please don't contact opposing parties or counsel, other parties/witnesses involved in the case, or DHS without talking to us first.  I realize the gears of justice turn slowly and you want to move things forward, but it's essential to a functional attorney-client relationship that you let us handle this part.  In this vein, I'm going to send a very brief email to DHS just explaining our representation of you and putting them on the lookout for a potential FOIA request in the future.

Last week we left off with a discussion of the claim against the Ryans vis-à-vis the 2013 Colorado complaint.  We're still determining whether the Colorado complaint's allegations will be considered conclusive when we file our new claim, or if they're merely contrary evidence that'll be usable by the other side.  Should have an answer in the next day or two, which will clarify how we go forward in District Court in Florida against the Ryan brothers.  I hope to file the complaint this week after that decision is made.

Thanks,

Jon

**From:** Gustavo <gescamilla@ymail.com>
**Sent:** Monday, August 6, 2018 6:56 AM
**To:** shawn.gibson@dhs.gov
**Cc:** Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com>; John Pierce <jpierce@piercebainbridge.com>; Liza Haworth <azilcorp1@gmail.com>
**Subject:** Greenway Nutrients, Inc. - David Selakovic - Vegalab, email server evidence.

August 6, 2018

DHS – ICE | Homeland Security Investigations-Domestic Operations
Attn: Shawn Gibson Operations Manager
500 12th Street SW, 6th Floor MS-5106 (6161)
Washington D.C. 20536
email-shawn.gibson@dhs.gov

Re: Greenway Nutrients, Inc. - David Selakovic - Vegalab email server evidence.

Dear Mr. Gibson,

We hope that you are in good spirits and things are continuing to go very well for you sir.

We are very happy to report that Greenway Nutrients, Inc. ("GREENWAY") has recently engaged the high-stakes commercial litigation powerhouse in Pierce Bainbridge Beck Price & Hecht LLP, ("Pierce Bainbridge") in order to seek civil damages against a pair of West Palm Beach Florida area based businessman named David Selakovic ("SELAKOVIC") and Steve Blackburn ("BLACKBURN"), and Selakovic' related corporate entities that we were led to believe that your agency still currently has an active and ongoing felony criminal investigation still currently open on and underway.

Pierce Bainbridge Continues Explosive Growth with Addition of Elite Criminal Defense Lawyer

It is also our understanding that on or about sometime around **January - February 2015, Adobe Systems ("ADOBE") later turned over and provided your office and the United States Department of Homeland Security ("DHS - ICE") with several email servers as well as approximately fifty thousand (50,000) pages of email communication evidence** that were retrieved during a civil-raid that took place on or about sometime in late August or early September of 2014 by Adobe, in conjunction with US Federal Marshall's of suspects Selakovic' and Blackburn' West Palm Beach Florida warehouse facilities.  relevant evidence or information that you feel may assist Greenway with its upcoming civil suit against the accused defendants in our case accordingly.

**Pursuant to 18 U.S.C. § 3771 of The Crime Victims Rights Act,** Greenway respectfully requests that any and all email communication evidence that your office and DHS has previously received from Adobe or during your agencies criminal investigation of Greenway' asserted theft-related claims against suspects Selakovic, Blackburn, or Selakovic' related corporate entities that reference(s) Greenway, or any of Greenway' corporate officers in any capacity be immediately turned over to Pierce Bainbridge in order so that Greenway may be afforded to ability to utilize any email communication evidence that may assist Greenway to recover some of the millions of dollars in ongoing financial losses during the companies upcoming federal civil suit that Pierce Bainbridge will be initiated on the companies behalf in coming weeks.

Greenway is also respectfully requesting that any and all relevant eyewitness testimony, evidence, or information that you feel may assist the court to suss out any of the accused defendant's participation and overall culpability in our matter be turned over Pierce Bainbridge at your earliest convenience.

Going forward and because we are in a little over our heads and do not do this type of thing every day for a living Mr. Gibson we are honestly unaware as to precisely how the criminal complaint process works or differs from the civil complaint process , therefore Greenway did not want to ever trouble or involve Mr. Sorkowitz, Mr. Pierce, or Pierce Bainbridge with this side of things and only to the extent that Greenway and myself are seeking to acquire any relevant evidence or information that you feel may assist Greenway with its upcoming civil suit against the accused defendants in our case accordingly.

Pierce Bainbridge' contact information is below:

John M. Pierce
Managing Partner
tel: (213) 262-9333 x101
jpierce@piercebainbridge.com

Jonathan A. Sorkowitz
Partner
O: (213) 262-9333 x115
jsorkowitz@piercebainbridge.com

Thank you, Mr. Gibson, and we are very hopeful that our continued prayers and well wishes on your behalf continue to go well received.

Respectfully submitted,

Gustavo Escamilla
President
Greenway Nutrients, Inc.
135 East Olive Avenue #135
Burbank, CA. 91503
(818) 355-0062 direct
-------------------------------------------------------------
On Friday, October 28, 2016 6:38 AM, "Gibson, Shawn S"
<Shawn.S.Gibson@ice.dhs.gov> wrote:

Mr. Escamilla,

We have researched your claims and consulted with the United States Attorney's Office, Western District of Missouri and while we sympathize with your situation, we have been advised that on August 17, 2015 a District Court found in favor of Selakovic against Greenway Nutrients in regards to the assertion of the Greenway trademark.  While we understand that you may disagree with this judgement, our agency is bound by decision of the court and therefor are restricted on what we can do in regards to your claims that they continue to sell your products illegally.  My suggestion is to seek legal alternatives such as an appeal of the decision and if you should receive an affirmative decision we can revisit our involvement against the distribution of the Greenway products.  Regardless, we continue to investigate the alleged criminal activities in regards to his alleged distribution of counterfeit software.

Please let me know if you have any questions.

Shawn Gibson l Operations Manager
DHS – ICE l Homeland Security Investigations-Domestic Operations
500 12th Street SW, 6th Floor MS-5106 (6161) l Washington D.C. 20536
email-shawn.gibson@dhs.gov

With honor and integrity, we will safeguard the American people, our homeland, and our values.

# Exhibit 3

**From:** James Ryan
**Sent:** Wednesday, September 5, 2018 6:30 PM
**To:** 'rnisonson@warddamon.com'; 'amoretto@warddamon.com'
**Cc:** 'cdamon@warddamon.com'; 'jpierce@piercebainbridge.com';
'jsorkwitz@piercebainbridge.com'
**Subject:** Greenway v. Selakovic et al

Dear Messrs. Nisonson and Moretto,

I am in receipt of your complaint and I want to be clear I am going to be very short on the
curtesy I extend before I begin pursuing sanctions. You note in paragraph 101 of your complaint
you are aware of the dismissal of the 2017 Action. You should also know that because that order
does not day it is without prejudice, it is with prejudice. See Rule 41 (b).

If I am required to seek sanctions under Rule 11 on behalf of Messrs. Selakovic and / or
Blackburn; Vegalab LLC; Fulfillment Solutions Services, Inc. [sic] (Fulfillment); New Epic Media,
LLC; or, Supreme Growers, LLC it will be in part because your client's claims have been
adjudicated on the merits by reason of the involuntary dismissal and those claims are barred by
the doctrine of Res Judicata.

Your allegation that my brother Michael, my firm or I ever represented Greenway Nutrients, Inc.,
(Greenway) is false. That never happened. Nor did we ever receive any confidential information
from Greenway or any other entity operated by Mr. Escamilla.

The Ecowin "contract" attached to your complaint is not signed by Ecowin. I am informing you
that the allegation that Greenway had such contract is false.

Vegalab, Inc., (Vegalab) was not in the pesticide business until 2016 which was long after
Greenway ceased doing business. You do not and never will have any evidence to support your
claim that Vegalab tortuously interfered with any relationship between your client and Ecowin
and / or that it is or ever infringed on any Greenway mark(s). Despite the existence of many of
these defendants when Greenway was in business, you will also never be provided with
credible evidence of any infringement of a Greenway mark by any of them.

The truth is Mr. Escamilla has been a miserable failure at everything he has attempted to do.
The one time I met him in person was when he was in 2010 when he was just getting ready to
start Greenway University. He walked us through the building that would become its campus.
The tour lasted about 30 minutes. At the time it was to become the only school in the U.S. with a
state accreditation to teach about medical marijuana. I lost all confidence in him when the
accreditation was revoked as a result of his failure to disclose his felony conviction on the state
application.

As for your client, it contracted Fulfillment to purchase bottle and ship Ecowin products under
Greenway's label. Then it failed to pay the bill and Fulfillment had to liquidate the remaining
inventory to mitigate its damages. Later it sued and obtained a judgment in the amount of
$94,077.73 on October 7, 2014 that remains unsatisfied. In anticipation your firm has required
your client to pay a retainer I will be serving your firm with a writ of Garnishment. I will also be
serving your client with a writ of execution to take ownership of your client's mark(s) and its
claimed causes of action.

I have attached a copy of Judge Mara's order of dismissal and the referenced judgement for your convenience.

I have also attached an email sent by Mr. Escamilla in 2015 that threatened action against the Florida Bar because he was not happy with their resolution of his Bar complaint against my brother Tom. For what it's worth,  My brother Tom has never been a member or associate of my firm. This email is just one of many examples of bad behavior by your client.

I am available to discuss any or all of this by phone or in person.

Thank you in advance for your consideration of this information.

Sincerely,


James D. Ryan, Esq.
Florida Bar Board Certified in Business Litigation
jdr@ryanlawgroup.net  mobile:  561.889.1001
Ryan Law Group, PLLC
636 US Highway One, Suite 110
North Palm Beach Florida
Main:  561.881.4447  Fax:  561.889.4461
www.ryanlawgroup.net

# Exhibit 4

On Friday, September 14, 2018 3:33 PM, Gustavo <gescamilla@ymail.com> wrote:

September 14, 2018,

Re;  Greenway Nutrients, Inc. v. Selakovic et al.
     U.S. District Court S.D. Fla. Index No. 9:18-cv-81104-BB

Good afternoon Jon,

Thank you very much for the email and for advising us of James Ryan and The Ryan Law Group' concerns.

It is important to note that we take James Ryan' denials very seriously and understand that it is vitally important that we are able to support of allegations with supporting documentation.

It is regretful that James Ryan is attempting to distract counsel from the truth being disclosed while discrediting his former clients with information that has nothing to do with the overwhelming factual evidence that we have to support our allegations against the accused defendants in our case.

Because we do not wish to inundate and wanted to provide counsel with concise evidence, supporting documentation, and information as soon as possible, with your permission we will provide information two parts, first, is this email as it relates to Michael Ryan, James Ryan, and The Ryan Law Group.

Second, and later today, as we complete this portion for counsel and because we want to ensure that we resend and provide more concise evidence that will allow us to easily overcome and address any concerns regarding Michael J. Ryan' on behalf of The Ryan Law Group' obvious assistance with the formal drafting of the Greenway-Ecowin agreement and the fact that Greenway did in fact, not only introduce Ecowin into the US but also later did in fact, acquire the companies exclusive distribution rights with Ecowin for the entire US.

We will also address James Ryan assertions as they relate to FSS' default judgment that we had previously discussed as well.

James Ryan, Micheal Ryan, and The Ryan Law Group must be very concerned while clearly understanding that the US Supreme Court recently revisited and addressed the issue of the court potentially dismissing our complaint Greenway' complaint against the accused defendants due to US Supreme Court clarifying a plaintiff's standards in asserting claims during federal litigation proceedings in the Twombly pleading standard in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

We are truly unsure, however, due to our novice and limited research that we regretfully had to undertake previously, we were informed that the court interpreted Rule 8(a)(2)'s notice pleading standard to require that a complaint allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

It found that the factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555. The court reasoned that this standard "[did] not impose a probability requirement at the pleading stage." Id. at 556.

It also emphasized that a claim to relief must be plausible on its face and that while the "plausibility standard is not akin to a 'probability requirement,' [ ] it asks for more than a sheer possibility that a defendant acted unlawfully." Iqbal, 129 S. Ct. at 1949.

We also find it incredibly odd that James Ryan and The Ryan Law Group would be taking such drastic measures now, having never previously denied, contested, or responded to, any of evidence, information, or allegations in the companies Rule 11 motion against James Ryan and The Ryan Law Group that the company was able to submit to the court during our brief fumbling around or representation of the company as Pro-Se litigants that unfortunately took place during our prior Florida suit.

On **Wednesday, September 5, 2018, James Ryan wrote and stated the following** in his letter to counsel **"*Your allegation that my brother Michael, my firm or I ever represented Greenway Nutrients, Inc., (Greenway) is false. That never happened. Nor did we ever receive any confidential information from Greenway or any other entity operated by Mr. Escamilla.*"**

Therefore, thank you for allowing us the opportunity to provide documentation to contradict and easily demonstrate that James Ryan on behalf of the Ryan Law Group is once again, regretfully choosing to be totally untruthful and completely dishonest.

Liza and I will acquire actual bank copies of the initial **$50,000.00 and $5,000.00 wire transfer(s)** from our old Bank of Denver account that we have since closed but should still have hard copies of in storage that were in fact, made to Thomas F. Ryan, Mike Ryan, and The Ryan Law Group prior to performing any legal work on the companies Private Placement Memorandum (PPM) as evidenced in attached in exhibit #14 and described below.

At the time when we initially hired Michael J. Ryan and his brother Thomas F. Ryan to assist the company with the formal drafting of the companies PPM, we never thought to ask for a retainer agreement simply because prior to disclosing any of the companies confidential information to either Michael J. Ryan or Thomas F. Ryan we required that both of our former attorneys review and execute the companies non-disclosure agreement which they, both in fact, did.

More importantly, from on or about November 2010, through November 2012, that James Ryan and Michael Ryan' younger brother **Thomas F. Ryan also lived as a guest in our home Free of Charge in exchange for Thomas F. Ryan also serving as General counsel for Greenway Nutrients, Inc.**

In fact, Thomas F. Ryan (Tom Ryan) still lists his employment as Legal at Greenway Nutrients as demonstrated in Tom Ryan' online Linkedin profile below:

https://www.linkedin.com/in/tom-ryan-28a03846

Additionally, at all times during Thomas F. Ryan' tenure in our home, as well as during Mike Ryan' representation of Greenway BOTH Mike Ryan and Tom Ryan communicated with and utilized the same email address located at ryantlaw@aol.com.

Thomas F. Ryan had regular and ongoing conversations with Mike Ryan and James Ryan in order to keep his brothers apprised of the companies day to day business operations and financial dealings during the entire time Tom Ryan lived as a guest free of charge in our home as well.

Regretfully, Thomas F. Ryan also later refused to provide us with any of our past client paperwork and actually denied that he had ever represented Greenway Nutrients Inc., in any capacity which we were able to later factually disprove during our brief inquiry with the Florida Bar as to whether or not it was ethical for Greenway' former attorney Thomas F. Ryan to unlawfully share and disclose the companies confidential attorney-client privileged information while also making an appearance on behalf of the defendants in our prior Colorado suit.

We never wanted to cause harm to Thomas Ryan, we simply wanted Thomas Ryan to tell the truth and admit that he was being dishonest, and still to this day, Liza and I cannot believe that Thomas Ryan, Michael Ryan, or James Ryan would have been involved in doing like this to us.

We later dropped our Florida Bar inquiry into Thomas F. Ryan' unethical conduct and were also later informed by DHS authorities that Thomas F. Ryan' conduct would be thoroughly investigated by DHS which was untrue.

Please find the attachments regarding our payments to as well as Mike Ryan', James Ryan and The Ryan Law Group' representation of the company and the supporting email documentation to support our claims.

**Exhibit #1** - Is a copy of Greenway' PPM listing Mike Ryan as attorney of record for the company.

**Exhibit #2** - Is a copy of an email dated May 26, 2011, that was sent to Steve Blackburn with Greenway' attorney Mike Ryan acting on behalf of the Ryan Law group also being copied on regarding a potential investment in Greenway' business model.

**Exhibit #3** - Is a copy of emails that Mike Ryan acting on behalf of the Ryan Law Group sending us copies of our PPM as well as advising the company of the SEC regulations as far as making any public announcements.

**Exhibit #4** - Is a copy of an email that was sent to Mike Ryan on or about June 11, 2010, on behalf of the Ryan Law Group receiving the companies confidential information that Mike Ryan, The Ryan Law Group, as well as James Ryan later used to determine that the companies business model was valued at approximately twenty-five million dollars ($25,000,000.00) at that time.

**Exhibit #5** - *After determining that the companies business model was valued at approximately twenty-five million dollars ($25,000,000.00) at that time, James Ryan later sent his high-end wealthy clients a letter touting Greenway as an extraordinary investment and business opportunity while offering his (James Ryan' clients) a seventeen and a half percent equity stake for four and a half million dollar ($4,500,000.00) investment in the companies business model.*

**Quick question?**

**How did James Ryan, Michael Ryan, or The Ryan Law Group ever come to know of Greenway being an extraordinary investment, business opportunity, or any of the companies confidential information if as James Ryan regretfully suggests in his letter to counsel whereby James Ryan dishonestly stated, "Nor did we ever receive any confidential information from Greenway or any other entity operated by Mr. Escamilla."?**

**Exhibit #6** - Is a copy of an email that James Ryan sent to his brother Tom Ryan regarding the companies PPM and if any potential investment was made in Greenway as a result of James Ryan or The Ryan Law Group' efforts to assist the company that James Ryan and The Ryan Law Group were to receive 10% commission and 10% in stock if any of James Ryan or The Ryan Law Group clients decided to make an investment in Greenway.

**Exhibit #7** - is a copy of an email dated on or about September 27, 2010, with Mike Ryan on behalf of The Ryan Law Group, also working in conjunction with his brother Tom Ryan review Greenway Nutrients® distribution agreement with Sunlight Supply.

**Exhibit #8** - is a copy of an email dated on or about August 3, 2010, requesting that Greenway generate new confidential company passcodes for one of the companies SEC registrations.

**Exhibit #9** - is a copy of an email dated on or about on or about October 21, 2010, demonstrating that Mike Ryan on behalf of The Ryan Law Group worked in conjunction with Greenway' CPA for the preparation of the companies audited financials that the company was planning on utilizing in order to be able to later take the company public.

**Exhibit #10** - is a copy of an email dated on or about April 4, 2011, from Mike Ryan on behalf of the Ryan Law Group, in conjunction with his brother Tom Ryan setting up a conference call meeting with a gentleman by the name of Greg Nolan for a potential investment in the companies business model as well as taking the company public..

**Exhibit #11** - additionally, beginning some time on or about June of 2010, and after appearing or being featured on NBC, ABC, FOX, Wall Street Journal, and Forbes Magazine just to name a few, we began to take meetings with various qualified and non-qualified investors seeking investment in Greenway' highly successful business model with the sole purpose and intention of first preparing a PPM that would later be converted through a reverse merger while simultaneously taking the company public utilizing a publicly traded shell corp like HPC.

Greenway found immediate success and on or around July-August 2010, Michael J. Ryan and the Ryan Law Group, were aware that the company was able to attract as well as identify a publicly traded shell corp named STRATA CAPITAL CORPORATION and STRATA ACQUISITION CORP (collectively identified as "STRATA") through another contact of ours who introduced Strata' owner named Richard Astrom who was also based out of the West Palm Beach area who desperately wanted Greenway to complete a reverse merger with Strata at that time.

Greenway initially agreed to a binding LOI with Strata and proceeded to also take extra added measures to engage the legal services of Gottbetter & Partners, LLP. based out of New York City to also help represent Greenway during the companies due diligence and background process into Strata' viability as a suitable corporate vehicle in order for Greenway to later be able to complete a proposed reverse merger with Strata.

Greenway' counsel:

Paul C. Levites, Esq.
Gottbetter & Partners, LLP
488 Madison Ave., 12th Fl.
New York, NY 10022
T-212.400.6900
F-212.400.6937

E-pcl@gottbetter.com
W-www.gottbetter.com

Strata' owner Richard Astrom was represented by Laura E. Anthony ("ANTHONY"), Esq. with Legal & Compliance, LLC ("L&C") based in West Palm Beach Florida who's law firm specializes in SEC compliance and regulatory matters in order to provide Strata' due diligence documentation to Gottbetter on behalf of Greenway.

Laura E. Anthony, Esquire
Legal & Compliance, LLC
330 Clematis Street, Suite 217
West Palm Beach, FL 33401
Office: 561-514-0936
Fax: 561-514-0832
Lauraanthonypa@aol.com
www.legalandcompliance.com

The proposed reverse merger was never completed due to our later discovery of potentially false or misleading statements of Strata' viability and the various "stock promoters" that were affiliated with Mr. Astrom and the Strata who did not appear to have Greenway' best interest at heart.

*Ms. Anthony and L&C will be able to confirm that Mike Ryan was acting as Greenway' attorney provided company information to Ms. Anthony and L&C during the companies due diligence process of Strata.*

**Exhibit #12** - is a copy of the email from Mike Ryan to Liza informing the company that he ( Mike Ryan) had read and agreed to the terms of the exact same non-disclosure form that defendants New Epic and FSS also executed and agreed to keep the companies information completely confidential. The original email will also be provided.

**Exhibit #13** - Is a copy of a letter that **Thomas F. Ryan sent to another attorney requesting stating that Mike Ryan had contacted in order to also possibly serve as an escrow agent for the companies PPM**.

**Exhibit #14 - Is a copy of an email that Thomas F. Ryan sent to us indicating that he and Mike had received our initial $50,000.00 deposit and $5,000.00 wire.**

In closing, we would like to humbly thank you once again and as we take a quick break to prepare our evidence as it relates to defendants Ecowin and FSS, *we leave you with only one of defendant James Ryan' numerous and completely dishonest statements that he has already made to counsel in Mr. Ryan' letter dated September 5, 2018, wherein Mr. Ryan' own typed words stated the following: "Your allegation that my brother Michael, my firm or I ever represented Greenway Nutrients, Inc., (Greenway) is false. That never happened. Nor did we ever receive any confidential information from Greenway or any other entity operated by Mr. Escamilla."*

Thank you, Jonathan.

Respectfully submitted,

Gustavo
(818) 355-0062

Liza

(818) 263-6845

# Exhibit 5

DIVISION of
## CORPORATIONS

Department of State / Division of Corporations / Search Records / Detail By Document Number /

Previous On List     Next On List     Return to List                          Entity Name Search

Search

Events     **No Name History**

# Detail by Entity Name
Florida Limited Liability Company
RYAN & RYAN LAWYERS, LLC

## Filing Information

| | |
|---|---|
| **Document Number** | L10000109993 |
| **FEI/EIN Number** | NONE |
| **Date Filed** | 10/21/2010 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | ADMIN DISSOLUTION FOR ANNUAL REPORT |
| **Event Date Filed** | 09/23/2011 |
| **Event Effective Date** | NONE |

## Principal Address

631 U.S. HIGHWAY ONE
SUITE 100

NORTH PALM BEACH, FL 33408

## Mailing Address

631 U.S. HIGHWAY ONE
SUITE 100
NORTH PALM BEACH, FL 33408

## Registered Agent Name & Address

RYAN, JAMES D
631 U.S. HIGHWAY ONE
SUITE 100
NORTH PALM BEACH, FL 33408

## Authorized Person(s) Detail

**Name & Address**

Title MGRM

RYAN, JAMES D
2650 LAKE SHORE DRIVE, #103
RIVIERA BEACH, FL 33404

Title MGRM

RYAN, MICHAEL J
370 GOLFVIEW ROAD, #104
NORTH PALM BEACH, FL 33408

## Annual Reports

**No Annual Reports Filed**

# Exhibit 6

*Greenway Nutrients Inc. & US Strategy Inc.*
*Mutual Non-Disclosure and Non-Circumvent Agreement*
*Page 1 of 4*

## GREENWAY NUTRIENTS, INC. and US STRATEGY, INC.
## MUTUAL NON-DISCLOSURE and NON-CIRCUMVENTION AGREEMENT

This Mutual Non-Disclosure and Non-Circumvention Agreement (this Agreement) governs the disclosure of information by and between **Greenway Nutrients Inc.** (THE "CORPORATION") and **US Strategy Inc.** (The "Company"), together (The "Parties") as of $\underline{1 | 9 | 2013}$ ___ (the Effective Date).

As used herein, Confidential Information means any and all technical and non-technical information provided by either party to the other, including but not limited to information regarding (a) patent and patent applications, (b) trade secret, and (c) proprietary information, mask works, ideas, samples, media, techniques, sketches, drawings, works of authorship, models, inventions, know-how, processes, apparatuses, equipment, algorithms, software programs, software source documents, and formulae related to the current, future, and proposed products and services of each of the parties, and including, without limitation, their respective information concerning research, experimental work, development, design details and specifications, engineering, financial information, procurement requirements, purchasing, manufacturing, customer lists, investors, employees, business and contractual relationships, business forecasts, sales and merchandising, marketing plans and information the disclosing party provides regarding third parties.

1.     Each party agrees that it will hold in strict confidence and not disclose to any third party Confidential Information of the other, except as approved in writing by the other party to this Agreement, and will use the Confidential Information for no purpose other than evaluating or pursuing a business relationship with the other party to this Agreement.  Notwithstanding the above, the party to whom Confidential Information was disclosed (the Recipient) shall not be in violation of this Section 2 with regard to a disclosure that was in response to a valid order by a court or other governmental body, or pursuant to rules and regulations of any stock exchange or stock association in which securities of the Recipient or its representatives may be traded from time to time, provided that the Recipient provides the other party with prior written notice of such disclosure in order to permit the other party to seek confidential treatment of such information and the Recipient or its representatives only furnish that portion of the Confidential Information which, in the judgment of Recipient's counsel, Recipient is required to disclose.   Expressly subject to Section 4, any Confidential Information disclosed pursuant to this Section 2 shall remain treated as Confidential Information under this Agreement in all other respects.   Each party shall only permit access to Confidential Information of the other party to those of its employees or authorized representatives having a need to know and who have signed confidentiality agreements or are otherwise bound by confidentiality obligations at least as restrictive as those contained herein.

2.     Each party shall immediately notify the other in the event of any loss or unauthorized disclosure of any Confidential Information of the other party.

3.     Non Circumvention:  The "Parties" intending to be legally bound, hereby irrevocably agree, and guarantee each other they shall not, directly or indirectly interfere with, circumvent or attempt to circumvent, avoid, by-pass, or obviate each other's interest, or the interest or relationship between the "Parties" with producers, sellers, buyers, brokers, dealers, distributors, financial institutions, technology

Initals ___

owners, developers or manufacturers, to change, increase or avoid directly or indirectly payment of established or to be established fees, commissions, or continuance of pre-established relationship or intervene in non-contracted relationship with manufacturers or technology owners with intermediaries, entrepreneurs, legal counsel, or initiate buy/sell relationships, or transactional relationships that by-pass one of the "Parties" with any corporation, producer, technology owner, partnership, or individual revealed or introduced by one of the "Parties" to one another in connection with any on-going or future "transaction" or "project".

4.      Each party's obligations under this Agreement with respect to any portion of the other party's Confidential Information shall terminate when the Recipient can document that: (a) it was in the public domain at the time it was communicated to the Recipient by the other party; (b) it entered the public domain subsequent to the time it was communicated to the Recipient by the other party through no fault of the Recipient; (c) it was in the Recipient=s possession free of any obligation of confidence at the time it was communicated to the Recipient by the other party; (d) it was rightfully communicated to the Recipient free of any obligation of confidence subsequent to the time it was communicated to the Recipient by the other party; or (e) it was rightfully communicated to the Recipient free of any obligation of confidence subsequent to the time it was communicated to the Recipient by the other party; or (f) it was communicated by the other party to a third party free of any obligation of confidence.

5.      Upon termination or expiration of this Agreement, or upon written request of the other party, each party shall promptly return to the other all documents, notes and other tangible materials representing the other's Confidential Information and all copies thereof.

6.      The parties recognize and agree that nothing contained in this Agreement shall be construed as granting any property rights, by license or otherwise, to any Confidential Information of the other party disclosed pursuant to this Agreement, or to any invention or any patent, copyright, trademark, or other intellectual property right that has issued or that may issue, based on such Confidential Information. Neither party shall make, have made, use or sell for any purpose any product or other item using, incorporating or derived from any Confidential Information of the other party.

7.      Confidential Information shall not be reproduced in any form except as required to accomplish the intent of this Agreement.   Any reproduction of any Confidential Information of the other party by either party shall remain the property of the disclosing party and shall contain any and all confidential or proprietary notices or legends that appear on the original, unless otherwise authorized in writing by the other party.

8.      This agreement shall terminate two years after the Effective Date, or may be terminated by either party at any time upon 30 days written notice to the other party. The Recipient's obligations under this Agreement shall survive termination of this Agreement between the parties and shall be binding upon the Recipient's heirs, successors and assigns.   The Recipient's obligations hereunder shall continue in full force and effect with respect to non-technical sales, marketing, and financial Confidential Information for three years from the date of disclosure of such Confidential Information.   The Recipient's obligations with respect to all technical Confidential Information shall be terminated only pursuant to Section 5.


Initials

*Greenway Nutrients Inc. & US Strategy Inc.*
*Mutual Non-Disclosure and Non-Circumvent Agreement*
*Page 3 of 4*

9.      This agreement shall be governed by and construed in accordance with the laws of California without reference to conflict of laws principles.   Any disputes under this Agreement shall be brought in the state courts and the Federal courts located in Los Angeles County, California, and the parties hereby consent to the personal jurisdiction and venue of these courts.   Notwithstanding the foregoing, the disclosing party may seek injunctive relief from any court of competent jurisdiction to prevent a breach of this Agreement.   This Agreement may not be amended except by a writing signed by both parties hereto.

10.      Each party acknowledges that its breach of this Agreement will cause irreparable damage and hereby agrees that the other party shall be entitled to seek and receive injunctive relief under this Agreement without being required to post a bond or other security, as well as such further relief including but not limited to actual damages and costs and fees as may be granted by a court of competent jurisdiction.

11.      If any provision of this Agreement is found by a proper authority to be unenforceable or invalid, such unenforceability or invalidity shall not render this Agreement unenforceable or invalid as a whole and, in such event, such provision shall be changed and interpreted so as to best accomplish the objectives of such unenforceable or invalid provision within the limits of applicable law or applicable court decisions.

12.      Neither party shall communicate any information to the other in violation of the proprietary rights of any third party.

13.      Neither party will assign or transfer any rights or obligations under this Agreement without the prior written consent of the other party.

14.      Neither party shall export, directly or indirectly, any technical data acquired from the other pursuant to this Agreement or any product utilizing any such data to any country for which the U.S. Government or any agency thereof at the time of export requires an export license or other governmental approval without first obtaining such license or approval.

15.      All notices or reports permitted or required under this Agreement shall be in writing and shall be delivered by personal delivery, electronic mail, facsimile transmission or by certified or registered mail, return receipt requested, and shall be deemed given upon personal delivery, five days after deposit in the mail, or upon acknowledgment of receipt of electronic transmission. Notices shall be sent to the addresses set forth at the end of this Agreement or such other address as either party may specify in writing.

16.      Each of the parties agrees that the software programs of the other party contain valuable confidential information and each party agrees it will not modify, reverse engineer, decompile, create other works from, or disassemble any software programs contained in the Confidential Information of the other party without the prior written consent of the other party.

17.      This Agreement supersedes all prior discussions and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof.


Initals _____

*Greenway Nutrients Inc. & US Strategy Inc.*
*Mutual Non-Disclosure and Non-Circumvent Agreement*
*Page 4 of 4*

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the Effective Date.

**GREENWAY NUTRIENTS INC.**

Signature:

Name: Gustavo Escamilla

Title: President/CEO

Date:

Address:   12328 Gladstone Suite 2
            Sylmar CA 91342

**US STRATEGY INC.**

Signature:

Name: ERIC R. HANSON

Title: Chairm & CEO

Date: 1-9-12

Address: 301 Clematis St.
         Suite 3000
         W. Palm Beach, FLO.
         33401

Initials:

# Exhibit 7

Gustavo Escamilla
Liza Haworth
March 5, 2019
Page 2 of 4

against Ecowin if they remain in the case. because it would prejudice their defense to have a default taken as to Ecowin. The premise of the Complaint we filed as against the Ryan parties is that Greenway had a contract with Ecowin which was terminated as a result of the Ryan parties' conduct. Therefore. the Ryan parties would likely have a right to contest the default judgment against Ecowin. which would also be based on this premise. as prejudicing them. It is generally the rule in federal procedure that jointly liable defendants – or defendants who are not jointly liable but have closely related defenses – cannot be defaulted unless either all defendants have defaulted or there has been an adjudication of the claims on the merits against the remaining defendants. In other words. while Greenway could try to argue that the Ryans should not be allowed to interfere with the default against Ecowin. they will certainly try to do so. slowing things down. and there is a high likelihood that they would succeed.

Greenway can therefore derive significant value from removing the Ryan parties from the litigation at this time. Further. there is no marginal benefit to keeping them in the case. since the damages sought from the Ryan parties would be essentially the same as what Greenway seeks from Ecowin: namely. the benefit of Greenway's bargain in its broken contract with Ecowin. If we can get that from Ecowin. there is no point in pursuing the Ryan parties.

The downside of proceeding against the Ryan parties is also very significant. They have frequently and consistently threatened a malicious prosecution action or sanctions against both us and you for suing them without a sound basis. Even in the event such a suit were unsuccessful. it would be expensive to defend. and a waste of time for everyone involved.

The right strategic choice for Greenway is therefore to accept the Ryans' offer of a walk-away agreement. in order to eliminate malicious prosecution/sanctions risk and proceed unimpeded to seek a large judgment against Ecowin. As your attorneys – in particular. as attorneys whose financial incentives are aligned with Greenway's through our full-contingent arrangement and advancement of significant costs – we unhesitatingly and strongly recommend accepting this offer. We hope that we have gained your trust and that. consistent with your frequent praise of our work. that you will agree.

Additionally. please be advised we will not proceed with the claims against the Ryan parties on your behalf. After thorough investigation and review of the materials you provided in response to our September 14 letter. and per our numerous prior conversations with you. we believe them to be without evidentiary support. The few items you have sent us originating with any of the Ryan brothers which relate to Greenway Nutrients. as opposed to Greenway University. are from Tom Ryan. not Michael or James. and do not pertain to the firm you asked us to sue. the Ryan Law Group. PLLC. We have seen no evidence that James or Michael Ryan worked for Greenway Nutrients. including the private placement memorandum you have frequently referred to. which. although it does mention the concept of nutrient products. was prepared to solicit investment in Greenway University. We certainly have never been provided with any retainer agreement or express statement that any of the Ryan parties were acting as Greenway Nutrients' attorneys. And our reliance on your representations caused several assertions of fact to be included in the Complaint which later proved incorrect. for example that Michael Ryan drafted the Ecowin contract or that James Ryan introduced Eric Hanson to you.

Gustavo Escamilla
Liza Haworth
March 5, 2019
Page 3 of 4

Moreover, the attorney-client relationship between James or Michael Ryan or Ryan Law Group and Greenway Nutrients, which they have repeatedly denied exists and of which we do not have evidence, is the factual premise of all the claims against these parties. This includes the tortious interference with contract claims, as the 'unjustified' interference element of that tort requires breach of an attorney-client confidence in this context to distinguish it from non-actionable sharing of information.

At your insistence, we agreed to defer withdrawing the claims until after the Motion to Dismiss was decided, because it was possible these claims would be dismissed on the pleadings and therefore we would not be required to drop them outright.[1] Because we do not believe these claims to be supported, however, we will not pursue them on your behalf, as required by our ethical duties as attorneys. Although we strongly believe accepting the walkaway agreement is in Greenway's best interest, this is an independently sufficient reason not to pursue the claims. This decision is **final**; while we always appreciate the opportunity to speak with you, respectfully, we will not engage in further debate on this point, which we have discussed extensively in writing and over the phone.

Of course, as you know, it is always Greenway's decision how to proceed with its case. We cannot, and would not, accept the walk-away agreement for Greenway without your consent. However, should you, as you have frequently indicated, refuse to drop the claims against the Ryan parties, we will have a fundamental and irreconcilable disagreement about how to move forward with the case and will regretfully be forced to withdraw from this matter as your attorneys pursuant to our Engagement Agreement, Rule 1.16 of the New York Rules of Professional Conduct, and Rule 1.16 of the California Rules of Professional Conduct.

That is not the outcome we want. We have always proceeded in good faith in the hopes of a positive resolution of this matter. We would like nothing more than to seek a remunerative outcome – for Greenway and for our firm – by proceeding in default against Ecowin on Greenway's behalf.

Please inform us by 5:00 Pacific time on Thursday, March 7 how Greenway intends to proceed, so that, if we are forced to withdraw, we can give the court notice immediately and provide you adequate time to go forward as you see fit. If we do not hear definitively from you about whether to accept the walk-away agreement by that time we will have no choice but to unfortunately file papers requesting to be relieved as your counsel and provide you with your case file so that you may seek other representation.[2]

---

[1] That the Motion to Dismiss was denied as to the claims against the Ryan parties does not change this analysis. On a Motion to Dismiss, the court is required to accept the allegations in the complaint as true, whether or not they have probable cause or evidentiary support.

[2] You mentioned during the mediation session that other attorneys have been interested in taking up Greenway's case in the past. Should we be forced to withdraw we would be happy to work quickly to get any other attorney up to speed.

# Exhibit 8

On Wednesday, January 11, 2012 11:45 AM, Tom Ryan <ryantlaw@aol.com> wrote:

Please sign and return

Thanks

Tom

-----Original Message-----
From: Nance Guenther Peterson <NanceG@usstrategies.com>
To: ryantlaw <ryantlaw@aol.com>
Cc: Eric Hanson <ehanson@usstrategies.com>
Sent: Mon, Jan 9, 2012 9:40 am
Subject: NDA

Tom,

Good afternoon.

Attached is the NDA with Eric's initials – dated today.

We look forward to continued discussions on this exciting project.

My best,

Nance

**Nance Guenther Peterson**
Senior Vice President
US Strategies Corp.
301 Clematis Street
Suite 3000
West Palm Beach, FL  33401
(P) 561-833-8150
(F) 561-833-8501
www.usstrategies.com
nanceg@usstrategies.com

**From:** Tom Ryan <ryantlaw@aol.com>
**Date:** January 6, 2012 at 10:09:09 AM PST
**To:** gescamilla@ymail.com, azilcorp1@gmail.com
**Subject: Fwd: Meeting about Nutrients**


-----Original Message-----
From: Eric Hanson <ehanson@usstrategies.com>
To: Tom Ryan <ryantlaw@aol.com>
Cc: Mrm236 <Mrm236@aol.com>
Sent: Fri, Jan 6, 2012 1:54 am
Subject: Re: Meeting about Nutrients

Congratulations! Let's move to the next step and see what can be done. Please forward the non
compete etc.... We then should have a call with former Congressman Jerry Weller, who is with us,
map out a plan to move forward. My travel schedule at the moment is a bit fluid. At the moment looks
like I will be in DC the week of the 10th and perhaps the following week. Let's stay in touch and all
my best, Eric

Sent from my iPhone

On Jan 5, 2012, at 8:16 PM, "Tom Ryan" <ryantlaw@aol.com> wrote:


Eric and Nance

I enjoyed discussing what our company, Greenway Nutrients is doing. I am pleased to tell you the we have signed the contract for
the CO2 charged nutrients. I would like to forward a non-compete nor-disclosure agreement to you and then follow up with some
test results. I talked with Gus Escamilla and told him your thoughts on the hardwood trees and on the testing at the university of
Iowa. We can provide the samples along with data we have. If you are still planning on being here on the 16th of January we would
appreciate getting together with you. 2012 is going to be a great year.

Tom Ryan
(561) 723-5725

# Exhibit 9

**To:** Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com>
**Cc:** Liza Haworth <azilcorp1@gmail.com>
**Sent:** Monday, March 11, 2019, 3:33:38 PM PDT
**Subject:** Re: Moving forward

Good afternoon Jonathan,

Thank you, for the email and while it is very disappointing to hear that we may not have ample time to have an expert witness assist Greenway in determining the companies losses, thankfully, we are able to provide evidence that defendant Ecowin had started to unlawfully ship over 50,000 of gallons Ecowin' base powdery mildew products directly to Fulfillment Solutions Services, LLC., in Florida during the exact same time period that Ecowin was supposed to be supplying products to Greenway.

Moreover, If we recall, FSS was formed on or about June 20, 2011, in the state of Florida with the assistance of Tom and Mike Ryan, that was specifically created for providing distribution and order fulfillment services to Greenway Nutrients, Inc.' east coast operations at that time.

After defendant Ecowin unlawfully breached its contract with Greenway, on or about **October 19, 2012**, and decided to later cut Greenway off from being able to purchase any products from Ecowin any further, in **November of 2012, as we disclosed in our complaint,** Ecowin also took part in the defendants overall deception by attempting to intentionally mislead Greenway' senior management that David Park (Greenway' original contact) was no longer employed by Ecowin, that Greenway was also able to prove remains to be entirely untrue.

In addition to Greenway Nutrients continuing to dig through the companies records, and in order to assist in assessing the companies overall damages that were directly caused to Greenway business model by Ecowin' breach of its contract with Greenway, **attached are and website links below of two separate and unlawful bill of lading(s) and shipments of Ecowin' base powdery mildew products to Fulfillment Solutions Services, LLC ("FSS") dated June 2013, and November 2013.**

https://panjiva.com/Ecowin-Co-Ltd/40488379

https://panjiva.com/Ecowin-Co-Ltd/5491003

Therefore, and from what we are able to now locate on by publicly available shipping records, defendant Ecowin did, in fact, intentionally divert as well as deprive Greenway Nutrients of tens of millions of dollars in lost profits that Greenway would have enjoyed had Ecowin not unlawfully shipped its base powdery mildew products to our competitor in direct violation and in breach of its contract with Greenway.

Thankfully, those facts are indisputable. Here is why.

In order to support Greenway Nutrients, Inc' position, Vegalab' very first employee and former Vice President of North American Sales named David Heller ( we are able to resend if needed), provided a signed affidavit stating amongst many other things, the following:

1. **That during Mr. Heller's employment at Vegalab, that the only two products that Vegalab and Supreme Growers, LLC' employees had on hand that was bottled, properly labeled, and ready to sell were Greenway Nutrients, Inc' No Spider Mites and No**

**Powdery Mildew brand named products. Mr. Heller was employed by Vegalab from on or about June of 2012, through August of 2013.**

2. **That Vegalab was now Ecowin' exclusive distributor of Ecowin' products for the entire United States.**

3. **Mr. Heller also stated that after Selakovic, Blackburn, and their related corporate entities ran out of Greenway No Spider Mites and No Powdery Mildew product labels that he personally witnessed defendants Blackburn and Selakovic who had obviously misappropriated Greenway products, labels, caps, and raw product inventories, while acting on behalf of and through Fulfilment Solutions Services, LLC' instruct Vegalab and Supreme Growers employees to affix and continue to sell thousands of additional counterfeit versions bearing Greenway' No Spider Mites and No Powdery Mildew products labels.**

While Greenway' trademark infringement allegations may have been dismissed as it relates to the other defendants, Mr. Heller's statements, in conjunction with defendant **Ecowin' own documented and misleading statements, and shipping records should provide conclusive evidence that Ecowin knowingly and intentionally took part in causing harm to Greenway' distribution of its brand name products, while diverting millions of dollars in lost profits away from Greenway.**

In addition to this, while the defendants attempt to downplay the significance of their unlawful distribution of Greenway' NSM and NPM products, we are able to prove that had Ecowin not intentionally violated the terms of its contract with Greenway and proceeded to later **ship over 50,000 gallons of Ecowin' raw powdery mildew product to Selakovic, Blackburn, and FSS, that Greenway would not have ever had to sustain those losses it suffered as a result of defendant Ecowin' conduct.**

To also support Greenway' position if we recall, New Epic Media' former President named Paula Ryan also supplied Greenway with an email affidavit stating that Selaklovic was intending on defrauding Greenway Nutrients and later reverse engineering Greenway' products overseas which we are also able to prove Ecowin later publicly announced on or about January of 2014. (We are able to supply Ms. Ryan' email again if needed).

When we first discovered and brought EcoWin into the United States we acquired exceptional pricing.

**EcoWin' products are highly concentrated and carry a 1600-1 dilution ratio.**

**Meaning 1 ounce of EcoWin' products would make up to 1600 ounces or greater than 12 gallons of finished ready to use product.**

**Less than 1 ounce of raw product is what we use in our 32 ounce NPM 10 gallon concentrate that retails for $89.50.**

The two unlawful Ecowin shipments to FSS that are attached were 11,700 and 22,000 kilograms or 33, 700 kilograms in total weight respectively.

Each kilogram weighs 2.2 pounds. Ecowin' raw product shipments to FSS were in excess of 74,140 pounds.

Each gallon of product weighs approximately 8.34 lbs. Therefore, there are approximately 8,889 gallons of Ecowin' raw base powdery mildew product that were shipped to FSS as opposed to Greenway and while Ecowin was supposed to deliver those products to Greenway

There are approximately 128 ounces of product in each gallon.

Each gallon of Ecowin base powdery mildew product made approximately 128 bottles of our 10-gallon NPM concentrate that retails for $89.50.

**Greenway Nutrients, Inc' gross profit per each gallon of Ecowin' base powdery mildew product was approximately 128 x $89.50 = $11,456.00**

**According to what we are able to prove defendant Ecowin shipped to FSS, Greenway's losses at $11,456 per gallon x 8889 gallons from what we can uncover on our own, is well in excess of $50 million dollars and over $100 million in gross sales as a result.**

Had Greenway enjoyed the ability to have the 8,889 gallons of Ecowin' base product that Ecowin was contractually obligated to deliver to Greenway, Greenway would have never had to compete against itself nor would have Greenway lost millions of dollars in profits due to the defendants intentionally and illegally selling Greenway' own branded No Powdery Mildew and No Spider Mites products back to Greenway entire customer base at significantly reduced pricing for years.

**Most importantly, on or about October 19, 2012, Ecowin,  Vegalab, SA, and Selakaovic, all agreed and identified defendant Vegalab, Inc. as a suitable corporate vehicle that the defendants all later took part in utilizing to take Vegalab, Inc. public.**

**Not only did Vegalab, Inc. former representative named Eric Hanson intentionally breach the Ryan brothers prepared Greenway Nutrients, Inc, NDA, Ecowin also later conspired with Selakovic and Vegalab, SA to take part in taking Vegalab, Inc, publicly traded business model public that we did not discover had taken place with the assistance of our former attorneys until on or about March of 2017.**

This is a major multi-million dollar theft and fraud that was perpetrated against us by our former attorneys who introduced us to a known group of thieves who have repeatedly stolen other companies products in the very same fashion and that is why the defendants were so keen on stealing our relationship with Ecowin so that they could eventually take over our company for its well-established brand name products.

Greeneway lost profits as a result of defendants Ecowin are substantial given the harmful nature, background, and egregious conduct that Ecowin proceeded to employ against Greenway for no justifiable reason whatsoever other to compete against, take market share, as well as profits away from Greenway.

This was not lawful competition, and well outside the scope of a simple breach of contract case in what we assert was a well planned and deliberately orchestrated scheme and theft of our company for its valuable name brand products that Ecowin is at the direct center of simply because Ecowin has continued to supply all parties in our action with Ecowin' raw base products.

Thank you, so very much Jon, for allowing us to dig through things further and please advise as to how we should calculate Greenway' damages as a result of Ecowin' conduct a described above.

Respectfully submitted,

Gus
(818) 355-0062

Liza
(818) 263-6845

# Exhibit 10

**Evidence - stolen Greenway Nutrients® product shipment**                                    Tuesday, October 4, 2016 2:11 PM

**From:**  "Gustavo Escamilla" <gescamilla@ymail.com>

**To:**  "shawn.gibson@dhs.gov" <shawn.gibson@dhs.gov>   "Carlos Suarez" <carlos.suarez@dhs.gov>

Raw Message Printable View

6 Files   652KB   Download All



Save         Save           Save          Save          Save          Save

Dear Special Agents Gibson and Suarez,

I am hopeful that you are both doing well and are in good spirits. I received a phone call from a gentlemen named Glen who presented himself to me as the owner of Glen Mark Self-Storage which is located in Willits California.

http://www.glenmarkstorage.com/

Glen indicated that he, as well as his facility were in possession of 24 pallets of our US trademark protected No Spider Mites, as well as our No Powdery Mildew products. Glen also indicated that the renter of one of his storage units had received this illegal product shipment of Greenway Nutrients® products from Florida about 24 months ago.

Without me physically inspecting these goods, I can easily estimate the retail value of this stolen product shipment to be well in excess of $150,000.00. Sadly, Mr. Selakovic and Mr. Blackburn have literally stolen nearly everything from me and I do not even have anywhere near that much product left in my entire company.

I informed Glen that this property should be considered stolen and that I was going to report his information to the proper federal law enforcement authorities for further review.

As you can clearly see in the attached photos that I received from Glen , our product labels bearing our Greenway Nutrients® trademark (USPTO Serial Number 85142469) which is also affixed to all of our companies product labels is clearly visible in all of Glen's photos that I received today and that I am now forwarding to your agency.

Mr. Selakovic, as well as Mr. Blackburn have continued to knowingly illegally resell millions of dollars worth of Greenway' trademark protected products while continuing to cause untold financial ruin and emotional devastation to myself, my business, as well as my family.

Once again, I want you to know, trust, and understand that myself, as well as my entire family will never ever give up hope and we sincerely thank both you, as well as your entire team, for all of your ongoing efforts. I am also hopeful that this factual evidence will be of significant assistance in your agencies ongoing criminal investigation. I pray one day that your office will someday be able to successfully prosecute Mr. Selakovic and Mr. Blackburn who appear to have absolutely zero respect for any federal laws, and or any apparent fear from any type of federal criminal prosecution.

Thank you.

Sincerely,

Gus Escamilla
President
Greenway Nutrients®
135 East Olive Ave. #4103
Burbank, CA. 91503
(818) 355-0052 Direct


--- On Tue, 10/4/16, Glen Mark <glenmarkstorage@gmail.com> wrote:

> From: Glen Mark <glenmarkstorage@gmail.com>
> Subject: Re: Greenway Nutrients(R) Contact Information
> To: "Gustavo Escamilla" <gescamilla@ymail.com>
> Date: Tuesday, October 4, 2016, 12:57 PM
> Attached you will
> find photos of the items.





# Exhibit 11

On Monday, March 11, 2019, 9:38:14 AM PDT, Jonathan Sorkowitz
<jsorkowitz@piercebainbridge.com> wrote:
Gus:  We have a breach of contract claim against Ecowin, so the damages should be what
Greenway expected to get from the contract but didn't – *i.e.* the profits Greenway would've
seen from the contract for the remainder of its term after Ecowin breached.  That should be
measured by what you were making on the contract before the breach.  Regarding a damages
expert, the court only gave us two weeks to file a request for default judgment, so I don't think
we have time for an expert.  I can try to get more time but Judge Bloom runs a very tight
docket and it's unlikely she'll grant that.  The good news is, I don't think we need one.  If we
can submit documentation that demonstrates Greenway was making 100k+ in profit for the
months the contract was in place, we can make a sound application for a judgment of lost
profits for the remainder of the contract term – and while I think it's iffy that Bloom would grant
this, I will certainly include in the request that the court consider a second year of the Ecowin
contract since the contract has that line about signing again after a year.  So I think the place to
start would be whatever financial records for Greenway Nutrients exist from that time.  Tax
returns or financial statements would be great.  As far as lost business opportunities etc.,
unfortunately I think those claims would have been against defendants who've already been
dismissed by the court.  Jon

**From:** Gustavo <gescamilla@ymail.com>
**To:** Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com>
**Cc:** Liza Haworth <azilcorp1@gmail.com>
**Sent:** Monday, March 11, 2019, 3:33:38 PM PDT
**Subject:** Re: Moving forward


Good afternoon Jonathan,

Thank you, for the email and while it is very disappointing to hear that we may not have ample
time to have an expert witness assist Greenway in determining the companies losses,
thankfully, we are able to provide evidence that defendant Ecowin had started to unlawfully
ship over 50,000 of gallons Ecowin' base powdery mildew products directly to Fulfillment
Solutions Services, LLC., in Florida during the exact same time period that Ecowin was
supposed to be supplying products to Greenway.

Moreover, If we recall, FSS was formed on or about June 20, 2011, in the state of Florida with
the assistance of Tom and Mike Ryan, that was specifically created for providing distribution
and order fulfillment services to Greenway Nutrients, Inc.' east coast operations at that time.

After defendant Ecowin unlawfully breached its contract with Greenway, on or about **October
19, 2012**, and decided to later cut Greenway off from being able to purchase any products
from Ecowin any further, in **November of 2012, as we disclosed in our complaint,** Ecowin
also took part in the defendants overall deception by attempting to intentionally mislead
Greenway' senior management that David Park (Greenway' original contact) was no longer
employed by Ecowin, that Greenway was also able to prove remains to be entirely untrue.

In addition to Greenway Nutrients continuing to dig through the companies records, and in
order to assist in assessing the companies overall damages that were directly caused to
Greenway business model by Ecowin' breach of its contract with Greenway, **attached
are and website links below of two separate and unlawful bill of lading(s) and shipments
of Ecowin' base powdery mildew products to Fulfillment Solutions Services, LLC ("FSS")
dated June 2013, and November 2013.**

https://panjiva.com/Ecowin-Co-Ltd/40488379

https://panjiva.com/Ecowin-Co-Ltd/5491003

Therefore, and from what we are able to now locate on by publicly available shipping records, defendant Ecowin did, in fact, intentionally divert as well as deprive Greenway Nutrients of tens of millions of dollars in lost profits that Greenway would have enjoyed had Ecowin not unlawfully shipped its base powdery mildew products to our competitor in direct violation and in breach of its contract with Greenway.

Thankfully, those facts are indisputable. Here is why.

In order to support Greenway Nutrients, Inc' position, Vegalab' very first employee and former Vice President of North American Sales named David Heller ( we are able to resend if needed), provided a signed affidavit stating amongst many other things, the following:

1. **That during Mr. Heller's employment at Vegalab, that the only two products that Vegalab and Supreme Growers, LLC' employees had on hand that was bottled, properly labeled, and ready to sell were Greenway Nutrients, Inc' No Spider Mites and No Powdery Mildew brand named products. Mr. Heller was employed by Vegalab from on or about June of 2012, through August of 2013.**

2. **That Vegalab was now Ecowin' exclusive distributor of Ecowin' products for the entire United States.**

3. **Mr. Heller also stated that after Selakovic, Blackburn, and their related corporate entities ran out of Greenway No Spider Mites and No Powdery Mildew product labels that he personally witnessed defendants Blackburn and Selakovic who had obviously misappropriated Greenway products, labels, caps, and raw product inventories, while acting on behalf of and through Fulfilment Solutions Services, LLC' instruct Vegalab and Supreme Growers employees to affix and continue to sell thousands of additional counterfeit versions bearing Greenway' No Spider Mites and No Powdery Mildew products labels.**

While Greenway' trademark infringement allegations may have been dismissed as it relates to the other defendants, Mr. Heller's statements, in conjunction with defendant **Ecowin' own documented and misleading statements, and shipping records should provide conclusive evidence that Ecowin knowingly and intentionally took part in causing harm to Greenway' distribution of its brand name products, while diverting millions of dollars in lost profits away from Greenway.**

In addition to this, while the defendants attempt to downplay the significance of their unlawful distribution of Greenway' NSM and NPM products, we are able to prove that had Ecowin not intentionally violated the terms of its contract with Greenway and proceeded to later **ship over 50,000 gallons of Ecowin' raw powdery mildew product to Selakovic, Blackburn, and FSS, that Greenway would not have ever had to sustain those losses it suffered as a result of defendant Ecowin' conduct.**

To also support Greenway' position if we recall, New Epic Media' former President named Paula Ryan also supplied Greenway with an email affidavit stating that Selaklovic was intending on defrauding Greenway Nutrients and later reverse engineering Greenway' products overseas

which we are also able to prove Ecowin later publicly announced on or about January of 2014. (We are able to supply Ms. Ryan' email again if needed).

When we first discovered and brought EcoWin into the United States we acquired exceptional pricing.

**EcoWin' products are highly concentrated and carry a 1600-1 dilution ratio.**

**Meaning 1 ounce of EcoWin' products would make up to 1600 ounces or greater than 12 gallons of finished ready to use product.**

**Less than 1 ounce of raw product is what we use in our 32 ounce NPM 10 gallon concentrate that retails for $89.50.**

The two unlawful Ecowin shipments to FSS that are attached were 11,700 and 22,000 kilograms or 33, 700 kilograms in total weight respectively.

Each kilogram weighs 2.2 pounds. Ecowin' raw product shipments to FSS were in excess of 74,140 pounds.

Each gallon of product weighs approximately 8.34 lbs. Therefore, there are approximately 8,889 gallons of Ecowin' raw base powdery mildew product that were shipped to FSS as opposed to Greenway and while Ecowin was supposed to deliver those products to Greenway

There are approximately 128 ounces of product in each gallon.

Each gallon of Ecowin base powdery mildew product made approximately 128 bottles of our 10-gallon NPM concentrate that retails for $89.50.

**Greenway Nutrients, Inc' gross profit per each gallon of Ecowin' base powdery mildew product was approximately 128 x $89.50 = $11,456.00**

**According to what we are able to prove defendant Ecowin shipped to FSS, Greenway's losses at $11,456 per gallon x 8889 gallons from what we can uncover on our own, is well in excess of $50 million dollars and over $100 million in gross sales as a result.**

Had Greenway enjoyed the ability to have the 8,889 gallons of Ecowin' base product that Ecowin was contractually obligated to deliver to Greenway, Greenway would have never had to compete against itself nor would have Greenway lost millions of dollars in profits due to the defendants intentionally and illegally selling Greenway' own branded No Powdery MIldew and No Spider Mites products back to Greenway entire customer base at significantly reduced pricing for years.

**Most importantly, on or about October 19, 2012, Ecowin,  Vegalab, SA, and Selakaovic, all agreed and identified defendant Vegalab, Inc. as a suitable corporate vehicle that the defendants all later took part in utilizing to take Vegalab, Inc. public.**

**Not only did Vegalab, Inc. former representative named Eric Hanson intentionally breach the Ryan brothers prepared Greenway Nutrients, Inc, NDA, Ecowin also later conspired with Selakovic and Vegalab, SA to take part in taking Vegalab, Inc, publicly traded business model public that we did not discover had taken place with the assistance of our former attorneys until on or about March of 2017.**

This is a major multi-million dollar theft and fraud that was perpetrated against us by our former attorneys who introduced us to a known group of thieves who have repeatedly stolen other companies products in the very same fashion and that is why the defendants were so keen on stealing our relationship with Ecowin so that they could eventually take over our company for its well-established brand name products.

Greeneway lost profits as a result of defendants Ecowin are substantial given the harmful nature, background, and egregious conduct that Ecowin proceeded to employ against Greenway for no justifiable reason whatsoever other to compete against, take market share, as well as profits away from Greenway.

This was not lawful competition, and well outside the scope of a simple breach of contract case in what we assert was a well planned and deliberately orchestrated scheme and theft of our company for its valuable name brand products that Ecowin is at the direct center of simply because Ecowin has continued to supply all parties in our action with Ecowin' raw base products.

Thank you, so very much Jon, for allowing us to dig through things further and please advise as to how we should calculate Greenway' damages as a result of Ecowin' conduct a described above.

Respectfully submitted,

Gus
(818) 355-0062

Liza
(818) 263-6845

# Exhibit 12

**From:** Gustavo <gescamilla@ymail.com>
**Sent:** Monday, March 25, 2019 11:55 PM
**To:** John Pierce <jpierce@piercebainbridge.com>; Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com>; Carolynn Beck <cbeck@piercebainbridge.com>; Jim Bainbridge <jbainbridge@piercebainbridge.com>
**Cc:** Liza Haworth <azilcorp1@gmail.com>; Marc Kent <kentmarc@gmail.com>
**Subject:** Re; Ecowin' uncontested motion default judgment

Good evening John,

We sincerely apologize for our ongoing confusion, and we respectfully beg of you to please understand that we were not seeking to be a burden, nuisance, or to upset you in any way, John. ***Please.***

As we had attempted to express in our previous email(s), we understand how busy you must be and are very sorry for our having to reach out or even contact you and have repeatedly demonstrated our good faith and respect of your valuable time by not having done so previously in the past.

We desperately beg of you to please forgive us for having to reach out to you now.

While we wholeheartedly appreciate your firm' rapid growth, stellar success, as well as having an abundance of Ivy League attorneys at your disposal, you are Greenway Nutrients, Inc' lead attorney in our case, John, and you are the only reason why Greenway Nutrients, Inc' senior management chose to hire Pierce Bainbridge in the first place.

We will continue to be outstanding low maintenance clients who are saddened, in shock, and cannot believe that you would request that Greenway' senior management no longer contact you ***(our lead attorney)*** via email even though in the rare event that we ever needed your advice or legal opinion in the past.

**Even more confusing Is that prior to our meeting in your office on or about March 7, 2019, on or about March 6, 2019, Jonathan inexplicably had also informed Greenway' senior management that he and Pierce Bainbridge would require that Greenway Nutrients execute a mutual release and dismiss all claims against our former attorneys named James and Mike Ryan, (the Ryan brothers) and The Ryan Law Group, LLC., (the Ryan firm) going forward.**

Otherwise you, Jonathan, as well as Pierce Bainbridge would be abruptly withdrawing as counsel of record on behalf of Greenway Nutrients, Inc.

Even though the court has already ruled in Greenway' favor and against the Ryan brothers and the Ryan law firm as it relates to Greenway' tortious interference and breach of fiduciary duty claims that Jonathan insisted that Greenway Nutrients, Inc inexplicably dismiss against the Ryan brothers and the Ryan firm.

To further bolster Greenway' very well-documented case against the Ryan brothers, and the Ryan firm, on about March 6, 2019, Judge Bloom flat out denied and immediately rejected

defendant James Ryan' request to stay Greenway' uncontested motion for default judgment against Ecowin.

Even though James Ryan and the Ryan firm are supposedly not representing Ecowin.

If you recall, **one of the material considerations in Greenway decision to even entertain potentially releasing the Ryan brothers or the Ryan firm in the first place was due to your promise to Greenway that Greenway would be receiving the benefit of an expert witness to assist Greenway in assessing the companies overall damages against Ecowin going forward.**

That did not happen which has left us very confused, and the last thing we ever intended to do was to upset you in any way.**For that, we are genuinely sorry, John. We truly are.** *Please understand that.*

On or about January 9, 2019, Greenway sent Jonathan the companies supporting attachments that further demonstrated the Ryan brothers are the ***"direct proximate cause"*** that is responsible for the accused defendants being able to intentionally interfere with Greenway contract with Ecwoin that has continued to cause millions of dollars in financial losses to Greenway' business model.

Even more perplexing to us all, and after following Jonathan' advice to seek advice from outside counsel last week, previously on or **about September 5, 2018, when we initially served defendant James Ryan, Mike Ryan, and The Ryan Law Group, LLC., James Ryan wrote you and Jonathan and scathing letter stating amongst other things, the following untruths below** and attached for your convenience.

*"Your allegation that my brother Michael, my firm or I ever represented Greenway Nutrients, Inc., (Greenway) is false. That never happened. Nor did we ever receive any confidential information from Greenway or any other entity operated by Mr. Escamilla.*

*"The Ecowin "contract" attached to your complaint is not signed by Ecowin. I am informing you that the allegation that Greenway had such contract is false."*

*"You do not and never will have any evidence to support your claim that Vegalab tortuously interfered with any relationship between your client and Ecowin and / or that it is or ever infringed on any Greenway mark(s).*

*"The one time I met him in person was when he was in 2010 when he was just getting ready to start Greenway University. He walked us through the building that would become its campus. The tour lasted about 30 minutes.*

*For what it's worth,  My brother Tom has never been a member or associate of my firm."*

Greenway was able to immediately provide evidence to the contrary against the Ryan brothers attached as it relates to the remaining accused defendant's unlawful conduct that includes:

**1. James Ryan September 5. 2018, email to counsel,**

**2. Greenway' initial September 14, 2018, email and evidence folder that is also attached,**

**3. along with Greenway' January 9, 2019, email and evidence folder**

Moreover, included in defendant James Ryan' initial motion to dismiss, James and Mike Ryan already admitted and claimed to have both introduced **Greenway Nutrients to Eric Hanson who was representing Vegalab, Inc. at that time.**

Before Greenway Nutrients, Inc. ever entered into any discussions regarding a potential reverse merger with Eric Hanson or Vegalab, Inc. (then HPC) **Greenway Nutrients, Inc, required that Eric Hanson execute a non-disclosure agreement that also included an additional NON-CIRCUMVENT provision**.

The Greenway-HPC NDNCA also demonstrated Greenway' intentions of creating a publicly traded entity through a reverse merger with Vegalab, Inc. (then HPC) that manufactured, developed, and distributed organic plant-based pesticides and fungicide products that the Ryan brothers fist assisted in drafting then moving away from Greenway while also delivering Ecowin' exclusive distribution agreement with Greenway to both Vegalab Inc, (then HPC) and defendant Selakovic instead.

That is why Greenway' senior management was so confused when we received Jonathan' February 6, 2019 email indicating that Pierce Bainbridge would be abruptly withdrawing as counsel on behalf of Greenway if Greenway' senior management did not immediately agree to sign mutual releases as well as dismissing Greenway Nutrients, Inc' claims against the Ryan brothers and the Ryan firm altogether going forward.

Jonathan' proposed demand, mutual release, and dismissal of the Ryan brothers and the Ryan firm from any potential future liability are in fact, to the severe detriment of Greenway' best interests on numerous fronts as previously identified in Greenway' evidence packages attached.

Therefore, and regretfully, after careful thought, consideration, and only after reviewing all of Greenway' uncontested evidence against defendant' Ecowin, James Ryan, Mike Ryan, and the Ryan firm, Greenway' senior management respectfully and formally rejects Jonathan', your', and Pierce Bainbridge' demands included in Jonathan and Pierce Bainbridge' March 6, 2019, proposal to Greenway Nutrients, Inc.

Greenway Nutrients, Inc. should not be required and will not agree to execute a mutual release or dismissal of the Ryan brothers and the Ryan firm from any future liability without a legitimate legal basis or proper monetary consideration.

Greenway Nutrients is, however; entirely open to continue to be fair, equitable, and reasonable and would agree to release all remaining parties from any future liability with Greenway accepting to walk away with as little as Three Hundred Thousand Dollars US ("$300,000.00") net cash to Greenway Nutrients, Inc. all in that includes all attorney's fees and costs.

Like yourself, John, Greenway Nutrients senior management is exhausted and feels that Greenway' proposal is incredibly fair and is a very reasonable solution that allows everyone to move forward in a more positive direction.

Please, John, please, we are desperately begging of you, to please find it in your heart to forgive us for our confusion while seriously giving our fair and generous offer some serious thought and consideration and get back to us once the Ryan brothers have had ample time to review, digest, as well as reasonably think things through realistically.

Thank you.

Respectfully submitted,

Gus
(818) 355-0062

Liza
(818) 263-6845

# Exhibit 13

**From:** John Pierce <<u>jpierce@piercebainbridge.com</u>>
**Date:** March 25, 2019 at 4:44:57 AM PDT
**To:** Gustavo <<u>gescamilla@ymail.com</u>>
**Cc:** Liza Haworth <<u>azilcorp1@gmail.com</u>>, Carolynn Beck <<u>cbeck@piercebainbridge.com</u>>, PB
Partners <<u>partners@piercebainbridge.com</u>>
**Subject: Re: Ecowin' uncontested motion default judgment**


Carolynn or some partner you need to deal with this. I am closing massive deal this week. Gus,
litigation is a fluid process. It is intellectual combat. It is not conducted via CYA e-mails. You
need to stop. Candidly, I do not appreciate it in light of what I and this firm have done for you
after your threatening letter last year. And especially after what Jon Sorkowitz has done for you.

I assure you further threats will not receive such a warm response.

I have built and manage a global firm with 60 or 65 or 70 of the most elite litigators on the planet
that is still growing. I have been or will be in about 10 cities in two weeks or something like that.
I get thousands of emails a day and dozens of calls. I am not in the mood for your ten thousand
word e-mails with multiple fonts bolded with underlines and italics. It is juvenile.

Team, someone jump on this and ensure we are handling this properly. I cannot be the person
dealing with default judgment prove-up hearings.

Get <u>Outlook for Android</u>



From: Gustavo
Sent: Monday, March 25, 4:33 AM
Subject: Ecowin' uncontested motion default judgment
To: John Pierce
Cc: Liza Haworth


Good morning John,

Hope you had an excellent weekend!

As we have exhibited, Liza and I have continued to be exemplary clients of your firm by making
it a point to minimize our coming to you for any assistance, questions, or help, however; now
that we are attempting to calculate Greenway Nutrients, Inc' ("Greenway") uncontested
damages against defendant Ecowin Co. LTD. ("Ecowin"), we are now respectfully requesting a
few minutes your undivided attention simply because Liza and I have become even more
confused and are needing to hear your thoughts due to our lack of knowledge that we are
currently experiencing.

Since on or about March 14, 2019, Liza and I have been repeatedly attempted to reach you
regarding Greenway' uncontested motion for default judgment against defendant Ecowin that
was originally due to be submitted to the court on March 20, 2019, and is now due on March 28,

2019, and we have we still have yet to hear from you regarding our confusion or receive your input and professional assessment.

Reason being, on or about March 7, 2019, when Liza and I met with you at your office, you were kind enough to promise us that Greenway would be acquiring the professional assistance of an expert witness to help assess the companies damages against defendant Ecowin going forward.

A few days later, on or about March 12, 2019, Jonathan Sorkowitz abruptly informed Greenway' senior management that Greenway would not have ample time to acquire the assistance of an expert witness and that Greenway would have to prove the companies uncontested damages against defendant Ecowin on our own.

While that was very disappointing news, to say the least, we were not too concerned because thankfully, **Greenway was able to acquire additional evidence that Ecowin had in fact, unlawfully shipped an additional 8,889 gallons (*and we assert well over 50,000 gallons*)** of its raw base powdery mildew concentrate product directly to Fulfillment Solutions Services, LLC ("FSS")  during the same time period that Ecowin was contractually obligated to deliver its base powdery mildew product to Greenway Nutrients.

**Here is why Ecowin' unlawful shipments of 8,889 gallons of product to FSS is so very important and vital in assessing Greenway Nutrients, Inc' damages in our case.**

Jonathan asked us to provide evidence that **each gallon of Ecowin' base powdery mildew product makes 128 bottles of finished product that retail for $89.50 each that is worth a total of $11,456 per gallon to the defendant's** that Greenway had created in the market, which we also cc' you on.

As we had attempted to explain, **as a direct result of Ecowin unlawfully diverting product away from Greenway and intentionally delivering its valuable base powdery mildew product to FSS and others instead, Ecowin also intentionally deprived Greenway of well over $101,000,000 in potential gross revenues that Greenway would have had the opportunity to enjoy had Ecowin not "materially breached"** its contract with Greenway while unlawfully delivering its product to FSS.

Please understand that Greenway is not seeking some unrealistic damage figures against Ecowin in any way, we are simply wanting to gain some much-needed clarity as to how Ecowin' anti-competitive behavior and conduct could potentially affect Greenway potential damage award figures going forward and we still do not understand how Jonathan is arriving at Greenway' potential damage award figures.

As we had unsuccessfully attempted to repeatedly explain to Jonathan, the **single biggest reason why Ecowin' unlawful shipment of 8,889 gallons of its base powdery mildew product to FSS and others is so very important and vital in determining Greenway' uncontested damage award against Ecowin is that Greenway would have the ability to easily leverage Ecowin' default judgment and potentially be afforded millions of dollars litigation financing.**

If we recall, and pursuant FSS non-disclosure agreement, FSS, or anyone affiliated with FSS, was to not have any contact or provide any services to any of Greenway' raw product suppliers and especially Ecowin.

This oversight could potentially cost Greenway millions of dollars in further damages, and since then, Greenway' senior management has been attempting to reach you to cure our obvious confusion as it relates to Jonathan' fiduciary duty to properly assess and maximize Greenway' uncontested damages that the company may be entitled to receive against Ecowin.

**Additionally, Ecowin has clearly acted in very bad faith and pursuant to Ecowin' and Vegalab, SA' very own October 19, 2012, distribution agreement, you will also find that Ecowin is also responsible for moving Greenway' opportunity into a potential reverse merger deal with HPC Acqusisitions, Inc. (now Vegalab, Inc.) away from Greenway in conjunction with Selakovic, Vegalab, SA, and Vegalab, Inc. instead.**

*We were wondering how are we supposed to assess Greenway Nutrients, Inc' damages as a result of Ecowin' bad faith conduct?*

Moreover, had we provided with an expert witness like we were promised would occur, they would be able to substantiate that Greenway' former nearest competitors named NPK Industries in our same market space, that also carried similar competing powdery mildew and spider mite products, have enjoyed revenues in excess of $30-$40 million during that same time period as well.

Additionally, our former national distribution partners named Sunlight Supply' Vice President of Sales named Rod Davis, would be willing to provide Greenway Nutrients with an additional statement or testimony that Greenway Nutrients No Powdery Mildew and No Spider Mites brand name products were one of the top three up and coming organic pesticides and fungicide brand of products across the entire United States prior to Ecowin deciding to supply FSS as well as our competitors with Ecowin' products instead of Greenway.

*Had Ecowin not intentionally provided its products to FSS and others, Greenway would have never had to compete against itself and others and would have continued to experience a free unimpeded market place for its products while enjoying similar if not greater revenues much like our former competitors NPK Industries and since Ecowin' default judgment is now going uncontested how are we to know?*

**Greenway was also able to provide evidence to Jonathan that demonstrated that Greenway had sent FSS over 5,000 labels of each size of Greenway' No Powdery Mildew products size bearing the companies trademark that was worth over $1.9 million dollars** that it also appears that we are not taking into consideration as losses to Greenway and we do not understand why.

Lastly, please understand that Liza and I are not seeking to be a burden on you in any way, we are simply not assimilating how Jonathan is able to arrive at his determination of Greenway Nutrients, Inc' potential damage award calculations when Jonathan asked Greenway to prove the value of Ecowin' products to Greenway Nutrients, Inc. in the market only to later not take any of our documented evidence that we were able to provide that supports the value of our products in the market into consideration.

We also respectfully beg of you to please understand that we are not attempting to be a burden or nuisance in any way, John, **we love and respect you very much,** and its all good, it is just that Liza and I are simply seeking clarity on Greenway Nutrients being able to maximize any potential uncontested damage awards that the court may be willing to impose against Ecowin and we would really like to get your thoughts and professional assessment in figuring it out so we can both finally sleep better at night.

Liza and I, sincerely appreciate and respectfully thank you in advance for your valuable time and kind understanding, very much.

Respectfully submitted,

Gus
(818) 355-0062

Liza
(818) 263-6845

# Exhibit 14

----- Forwarded Message -----
**From:** Gustavo <gescamilla@ymail.com>
**To:** Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com>
**Cc:** John Pierce <jpierce@piercebainbridge.com>; Carolynn Beck
<cbeck@piercebainbridge.com>; Liza Haworth <azilcorp1@gmail.com>; Marc Kent
<kentmarc@gmail.com>
**Sent:** Wednesday, March 27, 2019, 7:38:19 AM EDT
**Subject:** Re: Re; Ecowin' uncontested motion default judgment


Jonathan,

Regretfully, your have had our companies tax returns information along with our companies
CPA' contact information since on or about March 7, 2019.

Why have you not contacted Greenway' CPA to acquire this information?

Furthermore, you are the professional and our current CPA stated that you as an attorney
should have known that you could have easily acquired our corporate tax information by
providing Greenway Nutrients with an IRS form 8821 or 4506.

Greenway' had already supplied you with the companies 2011, 2012, and now you are
requesting 2013' tax information that we are happy to provide.

We are curious as to what is included in Greenway' 2013 tax information that will assist you in
maximizing your clients uncontested motion for default judgement?

Why have not advised Greenway Nutrients, Inc of this or supplied Greenway Nutrients, Inc.
with an IRS form 8821 or 4506?

Please do so at your earliest convenience so that we may be able to acquire this infomation
that you should have already investigated and received.

Additionaly, you have deprived Greenway of an expert witness and the opportunity to properly
assess our companies damages.

Moreover, at this point, it is obvious that you are now competing your own CYA as John would
call it, and are now simply attempting to make its appear as if Greenway is somehow being non
compliant with your document production requests when nothing could possibly ever be
further from the truth.

You have allowed James Ryan and The Ryan firm to continue to commit a deliberate fraud
upon the court that we are going to everything humanly possible to ensure Judge Bloom is
made aware of.

Lastly, we DO NOT AND WILL NOT CONSENT TO PIERCE BAINBRIDGE abandoning
Greenway Nutrients, Inc or withdrawing as counsel of record and are requesting that you
immediately notify the the court to set an evidentiary hearing so that Greenway Nutrients may
apprise Judge Bloom of James Ryan and The Ryan firm gross malfeasance.

Failure to do so is adversarial and to the severe detriment of Greenway Nutrients, Inc' best
interests.

Thank you.

Respectfully submitted,

Gus
(818) 355-0062

# Exhibit 15

**John Pierce**

March 27, 2019 at 6:05 AM

Details



Re: Re; Ecowin' uncontested motion default judgment

**To:** Jonathan Sorkowitz,   Gus,   **Cc:** Carolynn Beck,   Netflix

Didn't I tell you to stop threatening me/us and to leave me off your emails? I do not "consent" to that. BTW, we will adhere to the ethical rules regardless of what you consent to. We will not pursue claims against parties without merit.

We are withdrawing due to your lack of cooperation and other issues. CB1, cite the relevant provisions of the engagement agreement. Until the withdrawal, we will continue to zealously represent your interests as required to do under the ethical rules.

Now leave me alone until you force me to be deposed and testify at trial. Othereise, I do not want to see you or hear your name even. This will not be a pleasant experience for you.

Get Outlook for Android

# Exhibit 16

**From:** Gustavo <gescamilla@ymail.com>
**Subject: Re: Re; Ecowin' uncontested motion default judgment**
**Date:** March 28, 2019 at 7:30:02 AM PDT
**To:** Jonathan Sorkowitz <jsorkowitz@piercebainbridge.com>, John Pierce
<jpierce@piercebainbridge.com>, Jim Bainbridge <jbainbridge@piercebainbridge.com>
**Cc:** Carolynn Beck <cbeck@piercebainbridge.com>, Liza Haworth <azilcorp1@gmail.com>,
Marc Kent <kentmarc@gmail.com>
**Reply-To:** Gustavo <gescamilla@ymail.com>

Good morning John,

We do not understand what you are attempting to convey or why you feel the need to get upset
with your clients John.

Your responses to our inquiries are simply unacceptable.

You are Greenway Nutrients, Inc' lead attorney and why is it somehow okay for you to be too
busy to make good on your promises, communicate,  or respond to your client's inquiries about
the conduct of Mike Ryan, James Ryan, or The Ryan Law Group, LLC, in our case or
Greenway' questions as it relates to the motion for default judgment against defendant Ecowin
Co. LTD?

Now we are feeling even more abandoned and even more confused because we are having a
very difficult time understanding what prompted you to get so upset or with your clients that
would warrant your threatening to abandon your clients and withdraw as counsel of record?

**Please provide your legal reasoning to your in writing behind your wanting to abandon
Greenway Nutrients, Inc., and withdraw as counsel of record for refusing to release
Greenway Nutrients, Inc.' former attorneys James Ryan, Mike Ryan, or the Ryan Law
Group, LLC from this litigation.** We want to know and are asking you to respond without
getting angry to defensive.

Moreover, on or about September 5, 2018, when we initially served defendant James Ryan,
Mike Ryan, and The Ryan Law Group, LLC., James Ryan wrote you and Jonathan and a
scathing letter stating amongst other things, the following untruths below and attached for your
convenience.

*"Your allegation that my brother Michael, my firm or I ever represented Greenway
Nutrients, Inc., (Greenway) is false. That never happened. Nor did we ever receive any
confidential information from Greenway or any other entity operated by Mr. Escamilla.*

*"The Ecowin "contract" attached to your complaint is not signed by Ecowin. I am
informing you that the allegation that Greenway had such contract is false."*

*"You do not and never will have any evidence to support your claim that Vegalab
tortuously interfered with any relationship between your client and Ecowin and / or that it
is or ever infringed on any Greenway mark(s).*

*"The one time I met him in person was when he was in 2010 when he was just getting ready to start Greenway University. He walked us through the building that would become its campus. The tour lasted about 30 minutes.*

*For what it's worth,  My brother Tom has never been a member or associate of my firm."*

Greenway was able to immediately provide you with evidence to the contrary against the Ryan brothers as it relates to the remaining accused defendant's unlawful conduct that includes:

1. James Ryan September 5. 2018, email to counsel,

2.  Greenway' initial September 14, 2018, email and evidence folder that is also attached,

3. along with Greenway' January 9, 2019, email and evidence folder

It is equally well-established that the court has the inherent power include the authority to dismiss the claims or defenses of or enter a default judgment against a litigant who engages in dishonest conduct, obstructs the discovery process, abuses the judicial process, or otherwise seeks to perpetrate a fraud on the court.

As a general rule, a litigant is deemed to have perpetrated a fraud on the court when "it can be demonstrated, clearly and convincingly, that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the [trier of fact] or unfairly hampering the presentation of the opposing party's claim or defense." Cox, 706 So. 2d at 46 (quoting  Aoude, 892 F. 2d at 1118).

Greenway Nutrients, Inc' senior management has repeatedly provided counsel with evidence that defendant James Ryan and the Ryan Firm have deliberately misled and have, in fact, continued to commit a deliberate fraud upon the court.

We are once again, respectfully requesting that you please communicate and respond to your client's inquiries at your earliest convenience.

Thank you.

Respectfully submitted,

Gus
(818) 355-0062

Liza
(818) 263-6845

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

*200 West Wilson, Glendale, CAlifornia 91203*

A true and correct copy of the foregoing document entitled (specify): *Plaintiffs motion to strike defendants pleadings for fraud on the court, spoilation, and alternative motion for othe Sanctions Pursuant to Rules 26 (g)(1),(3), And 1.54 (a)(b)(1),(2),(3), (4),(5) Relief from judgement decrees or orders*
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) *4-16-19* , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*John M. Pierce, 3555 - Grand Ave. Los Angeles, CA. 90071*
*Jonathan A. Sorkonwitz 277 Park Avenue, 45th Floor, New York, NY. 10172*
*James D. Ryan, 636 US Highway One Suite 110*
*Ronald Niconson, 4420 Beacon Circle, West Palm Beach, FL. 33407*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| *4-16-19* | *Michael McCormich* | |
| Date | Printed Name | Signature |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
Case No. 18-cv-81104-BB (BLOOM)

In re:

Greenway Nutrients, Inc.,

a Colorado corporation            /

Plaintiff

v.

ECOWIN CO., LTD.;
JAMES D. RYAN;
MICHAEL J. RYAN;
THE RYAN LAW GROUP, LLC.

Defendants            /

### DIRECT TESTIMONY OF GUSTAVO ESCAMILLA

1. My name is Gustavo Escamilla and I am one of Greenway Nutrients,
   Inc.' ("GREENWAY") principals and adversely affected party in this action.

2. Prior to me and my business partner Liza Haworth, ("LIZA") and Greenway
   engaging attorney John Pierce to represent Greenway, me and Liza
   personally provided John Pierce with evidence that on or about March 3,
   2015, I was first personally contacted on behalf of Greenway and then Liza
   and I later met face to face with federal law enforcement officials with the
   United States Department of Homeland Security ("DHS") who were referred
   to me and Greenway by Adobe Systems ("ADOBE") and The Microsoft
   Corporation ("MICROSOFT").

3. Me and my business partner Liza, repeatedly provided attorney(s) John M. Pierce, Jonathan A. Sorkowitz, as well as Ronald Niconson, with evidence that DHS officials had previously advised me and Greenway that defendants David Dragan Selakovic ("SELAKOVIC") and Steven Blackburn ("BLACKBURN"), and others closely affiliated with Selakovic and Blackburn, were the primary targets of a massive ongoing federal criminal investigation surrounding the unlawful theft, manufacturing, and distribution of several billion dollars worth of counterfeit, grey market, or unauthorized versions of Adobe', Microsoft' and now Greenway' brand name products illegally bearing each of the aforementioned companies valid US trademarks.

4. I personally provided John Pierce DHS officials were in possession of more than fifty thousand (50,000) emails that potentially contained crucial email records central Greenway' case that Adobe Systems had turned over to DHS after Adobe Systems, in conjunction with US Federal Marshall's, raided several of David Selakovic' West Palm Beach, Florida area warehouse facilities that Greenway' attorneys failed to investigate or follow up on.

5. Me and my business partner Liza, repeatedly provided attorney(s) John M. Pierce, Jonathan A. Sorkowitz, as well as Ronald Niconson, with evidence demonstrating that on or about March 8, 2017, that I personally became aware of and later shared with Liza that Greenway' former attorneys Michael J. Ryan, and later James D. Ryan had taken part in interfering with Greenway' exclusive distribution agreement with Ecowin, while taking an unlawful stock ownership position in Vegalab, Inc, in direct violation of

Greenway' non-disclosure / non-circumvent agreement that Mike Ryan had taken part drafting and preparing on behalf of Greenway and Eric Hanson who was representing Vegalab, Inc. (then HPC Acquisitions, Inc, "HPC") at that time.

6. On or about March 5, 2017, Greenway' attorney Jonathan Sorkowitz sent myself an email for reasons still yet to be explained to me or my business partners, advising me and Liza that if Greenway did not agree to immediately release defendants James Ryan, Mike Ryan, and The Ryan Firm from this action that Greenway' attorneys would be inexplicably notifying this court of Greenway' attorneys intentions to withdrawal as counsel of record on behalf of Greenway.

7. On March, 7, 2019, Myself and Liza Haworth met with face to face with attorney John Pierce who is Greenway' lead attorney and original contact with Pierce Bainbridge in our case.

8. During our March, 7, 2019, meeting John Pierce never took the time to explain why me or Liza should be required to release James Ryan, Mike Ryan, or the Ryan Law Group, LLC from the lawsuit, even though the court has ruled in Greenway' favor.

9. John Pierce proceeded to explain to me and Liza that if Greenway would consider entertaining possibly releasing Defendants James Ryan, Michael Ryan, and The Ryan Law Group, LLC., from this lawsuit, that Pierce Bainbridge would *"hire one of the best expert witnesses"* to assist Greenway prepare a damage report for the companies upcoming uncontested motion for Default judgement against Ecowin, Co. LTD.

10. On or about March 12, 2019, Pierce Bainbridge attorney Jonathan A.
    Sorkowitz, later informed myself and Liza that Pierce Bainbridge would be
    unable to provide Greenway with an expert witness due to the court not
    allowing Greenway ample time to hire and prepare an expert witness report
    on behalf of the company to establish Greenway losses against Defendant
    Ecowin.

11. From on or about March 14, 2019, through March 28, 2019, myself and Liza
    Haworth repeatedly attempted to inquire with Greenway' lead attorney John
    Pierce and Pierce Bainbridge attorney Jonathan Sorkowitz as to what did
    Plaintiff's counsel intend on submitting to the court specifically pertaining to
    Greenway' uncontested motion for default judgement against Ecowin.

12. On or about March 27, 2019, I personally advised Greenway attorneys John
    Pieerce, Jonathan Sorkowitz,who should have properly advised attorney
    Ronald Nicosnson, that Greenway would **NOT AGREE TO CONSENT** to
    Greenway attorneys abandoning Greenway and requested that Greenway'
    attorneys ask this court to conduct an evidentiary hearing so that me, Liza,
    or Greenway, would have been able to make your Honor aware of James
    Ryan', Mike Ryan' and The Ryan Firm highly unethical misconduct that has
    permeated these entire proceedings.

13. On or about March 29, 2019, Greenway' attorneys filed their motion to
    withdraw as counsel of record on behalf of Greenway never explaining their
    legal reasoning or basis for requiring the me, Liza, and Greenway to release

Defendants James Ryan, Mike Ryan, and The Ryan Firm from this action that has left me very confused, bewildered, baffled as to why.

Executed at Glendale, California, April 16, 2019.  I declare **under penalty of perjury** that the foregoing is true and correct.

/s/ Gustavo Escamilla

Gustavo Escamilla

April 16, 2019

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION
### Case No. 18-cv-81104-BB (BLOOM)

In re:

Greenway Nutrients, Inc.,

<u>a Colorado corporation           /</u>

Plaintiff

v.

ECOWIN CO., LTD.;
JAMES D. RYAN;
MICHAEL J. RYAN;
THE RYAN LAW GROUP, LLC.

<u>Defendants                    /</u>

### DIRECT TESTIMONY OF LIZA HAWORTH

1. My name is Liza Haworth and I am directly familiar and hand first hand knowledge of the events that have taken place all throughout Greenway Nutrients, Inc.' ("GREENWAY") proceedings in question. .

2. Prior to me and my business partner Gustavo Escamila, ("GUSTAVO") and Greenway engaging attorney John Pierce to represent Greenway, me and Gustavo personally provided John Pierce with evidence that on or about March 3, 2015, Gustavo was first personally contacted on behalf of Greenway and then Gustavo and I later met face to face with federal law enforcement officials with the United States Department of Homeland

Security ("DHS") who were referred to me and Greenway by Adobe Systems ("ADOBE") and The Microsoft Corporation ("MICROSOFT").

3. Me and my business partner Gus, repeatedly provided attorney(s) John M. Pierce, Jonathan A. Sorkowitz, as well as Ronald Niconson, with evidence that DHS officials had previously advised me and Greenway that defendants David Dragan Selakovic ("SELAKOVIC") and Steven Blackburn ("BLACKBURN"), and others closely affiliated with Selakovic and Blackburn, were the primary targets of a massive ongoing federal criminal investigation surrounding the unlawful theft, manufacturing, and distribution of several billion dollars worth of counterfeit, grey market, or unauthorized versions of Adobe', Microsoft' and now Greenway' brand name products illegally bearing each of the aforementioned companies valid US trademarks.

4. I was copied on numerous email providing Greenway' attorney John Pierce with evidence that DHS officials were in possession of more than fifty thousand (50,000) emails that potentially contained crucial email records central Greenway' case that Adobe Systems had turned over to DHS after Adobe Systems, in conjunction with US Federal Marshall's, raided several of David Selakovic' West Palm Beach, Florida area warehouse facilities that Greenway' attorneys failed to investigate or follow up on.

5. Me and my business partner Gustavo, repeatedly provided attorney(s) John M. Pierce, Jonathan A. Sorkowitz, as well as Ronald Niconson, with evidence demonstrating that on or about March 8, 2017, that Gustavo first became aware of and later shared with me that Greenway' former attorneys

Michael J. Ryan, and later James D. Ryan had taken part in interfering with Greenway' exclusive distribution agreement with Ecowin, while taking an unlawful stock ownership position in Vegalab, Inc, in direct violation of Greenway' non-disclosure / non-circumvent agreement that Mike Ryan had taken part drafting and preparing on behalf of Greenway and Eric Hanson who was representing Vegalab, Inc. (then HPC Acquisitions, Inc, "HPC") at that time.

6.  On or about March 5, 2017, Greenway' attorney Jonathan Sorkowitz sent Gustavo and later me an email for reasons still yet to be explained to me or Gustavo, advising me and Gustavo that if Greenway did not agree to immediately release defendants James Ryan, Mike Ryan, and The Ryan Firm from this action that Greenway' attorneys would be inexplicably notifying this court of Greenway' attorneys intentions to withdrawal as counsel of record on behalf of Greenway.

7.  On March, 7, 2019, me and Gustavo met with face to face with attorney John Pierce who is Greenway' lead attorney and original contact with Pierce Bainbridge in our case.

8.  During our March, 7, 2019, meeting John Pierce never took the time to explain why me or Gustavo should be required to release James Ryan, Mike Ryan, or the Ryan Law Group, LLC from the lawsuit, even though the court has ruled in Greenway' favor.

9.  John Pierce proceeded to explain to me and Gustavo that if Greenway would consider entertaining possibly releasing Defendants James Ryan, Michael Ryan, and The Ryan Law Group, LLC., from this lawsuit, that Pierce Bainbridge would "*hire one of the best*

*expert witnesses"* to assist Greenway prepare a damage report for the companies

upcoming uncontested motion for Default judgement against Ecowin, Co. LTD.

10. On or about March 12, 2019, Pierce Bainbridge attorney Jonathan A.

Sorkowitz, later informed myself and Gustavo that Pierce Bainbridge would

be unable to provide Greenway with an expert witness due to the court not

allowing Greenway ample time to hire and prepare an expert witness report

on behalf of the company to establish Greenway losses against Defendant

Ecowin.

11. From on or about March 14, 2019, through March 28, 2019, myself and

Gustavo repeatedly attempted to inquire with Greenway' lead attorney John

Pierce and Pierce Bainbridge attorney Jonathan Sorkowitz as to what did

Plaintiff's counsel intend on submitting to the court specifically pertaining to

Greenway' uncontested motion for default judgement against Ecowin.

12. On or about March 27, 2019, I was personally copied on an email advising

Greenway attorneys John Pieerce, Jonathan Sorkowitz, who should have

properly advised attorney Ronald Nicosnson, that Greenway would **<u>NOT</u>**

**<u>AGREE TO CONSENT</u>** to Greenway attorneys abandoning Greenway and

requested that Greenway' attorneys ask this court to conduct an evidentiary

hearing so that me, Gustavo, or Greenway, would have been able to make

your Honor aware of James Ryan', Mike Ryan' and The Ryan Firm highly

unethical misconduct that has permeated these entire proceedings.

13. On or about March 29, 2019, Greenway' attorneys filed their motion to

withdraw as counsel of record on behalf of Greenway never explaining their

legal reasoning or basis for requiring the me, Gustavo, and Greenway to release Defendants James Ryan, Mike Ryan, and The Ryan Firm from this action that has left me very confused, bewildered, baffled as to why.

Executed at Glendale, California, April 16, 2019.  I declare **under penalty of perjury** that the foregoing is true and correct.

/s/ Liza Haworth

Liza Haworth

April 16, 2019

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**PRIORITY ★ MAIL ★ EXPRESS™**

OUR FASTEST SERVICE IN THE U.S.

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

EP13F July 2013   OD: 12.5 x 9.5

PS10001000006

UNITED STATES POSTAL SERVICE®

**PRIORITY ★ MAIL EXPRESS®**

U.S. POSTAGE PAID
GLENDALE, CA
91201
APR 17, 19
AMOUNT
**$25.50**
R2303S102478-18

1007     33128

EL 233097B6 US

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 818 ) 355-5062

Gustavo Escamilla/Graphity Inc.
135 E. Olive Ave #1003
Burbank, CA 91503

**PAYMENT BY ACCOUNT (if applicable)**
USPS Corporate Acct. No.          Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required
☐ 10:30 AM Delivery Required

TO: (PLEASE PRINT)   PHONE ( 561 ) 503-5200
United States Southern District Court
Southern District of Florida
Office of the Clerk Room 8N09
400 N. Miami Ave
West Palm FL 33128-7716
Att Office of the Clerk
Room 8N09

**ORIGIN (POSTAL SERVICE USE ONLY)**

☑ 1-Day   ☐ 2-Day   ☐ Military

PO ZIP Code: 9201
Scheduled Delivery Date (MM/DD/YY): 4-18-19
Postage:

Date Accepted (MM/DD/YY): 4-17-19
Scheduled Delivery Time: ☐ 10:30 AM ☑ 3:00 PM ☐ 12 NOON
Insurance Fee:

Time Accepted: 11:55 ☑ AM ☐ PM
10:30 AM Delivery Fee:
Return Receipt Fee:

Weight: 1 lbs 6 ozs.   ☐ Flat Rate
Sunday/Holiday Premium Fee:
Total Postage & Fees: $25.50

Acceptance Employee Initials:

**DELIVERY (POSTAL SERVICE USE ONLY)**

Delivery Attempt (MM/DD/YY): Time: ☐ AM ☐ PM   Employee Signature

Delivery Attempt (MM/DD/YY): Time: ☐ AM ☐ PM   Employee Signature

* For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
* $100.00 insurance included.

LABEL 11-B, SEPTEMBER 2015   PSN 7690-02-000-9996   1-ORIGIN POST OFFIC

Att Clerks office
Room 8N09

NOON Delivery

VISIT U
ORDER F